**UNITED STATES DISTRICT COURT**     **EASTERN DISTRICT OF TEXAS**

**FILED**

| | | |
|---|---|---|
| RAY MART, INC. d/b/a Tri-Supply Company and WELDON VYBIRAL, | § § § | FEB 2 7 2006 |
| Plaintiffs, | § § § | CLERK, U.S. DISTRICT COURT WESTERN DISTRICT OF TEXAS BY_____ DEPUTY CLERK |
| *versus* | § § | CIVIL ACTION NO. 1:05-CV-855 |
| STOCK BUILDING SUPPLY OF TEXAS, L.P., | § § § | |
| Defendant. | § § | **W06CA063** |

## ORDER TRANSFERRING VENUE

In accordance with the court's Memorandum and Order signed February 14, 2006, granting

Defendant Stock Building Supply of Texas, L.P.'s Expedited Motion to Transfer Venue (#3), this

case is transferred to the Western District of Texas, Waco Division.

SIGNED at Beaumont, Texas, this 14th day of February, 2006.

*Marcia A. Crone*
_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

\

A TRUE COPY I CERTIFY
DAVID J. MALAND, CLERK
U S DISTRICT COURT
EASTERN DISTRICT, TEXAS
BY

FILED - CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT 2006 FEB 17 PM 2: 37
FOR THE EASTERN DISTRICT OF TEXAS TX EASTERN-BEAUMONT
BEAUMONT DIVISION

BY _____

| | |
|---|---|
| RAY MART, INC. D/B/A TRI-SUPPLY COMPANY and WELDON VYBIRAL §<br>§<br>§<br>*Plaintiffs*, §<br>§<br>v. §<br>§<br>STOCK BUILDING SUPPLY OF TEXAS, §<br>L.P., §<br>§<br>*Defendant.* § | CIVIL ACTION NO. 1:05-cv-855 |

**ORDER GRANTING JOINT MOTION TO WAIVE**
**CERTAIN REQUIREMENTS OF LOCAL RULE CV-83(b)**

(#25)

Having considered the Joint Motion to Waive Certain Requirements of Local Rule 83(b),

the Court GRANTS the Joint Motion.  It is hereby ORDERED that the clerk shall mail (1) a

certified copy of the court's order directing such action, and (2) the original of all pleadings and

other papers on file in the case to the Western District of Texas, Waco Division.

SIGNED AND ENTERED this 17th day of February, 2006, at Beaumont, Texas.

_____
JUDGE MARCIA A. CRONE
U.S. DISTRICT JUDGE

A TRUE COPY I CERTIFY
DAVID J. MALAND, CLERK
U S DISTRICT COURT
EASTERN DISTRICT, TEXAS
BY _____

AGREED:

HUNTON & WILLIAMS LLP

By      /s/ Bridget A. Blinn
        W. Stephen Cockerham
        State Bar No. 04463300
        Bridget A. Blinn
        State Bar No. 24045510

Energy Plaza, 30th Floor
1601 Bryan Street
Dallas, Texas 75201-3402
Tel. (214) 979-3000
Fax (214) 880-0011

**ATTORNEYS FOR DEFENDANT,
STOCK BUILDING SUPPLY
OF TEXAS, L.P.**

WELLS, PEYTON, GREENBERG
    & HUNT, L.L.P.

By    /s/ Bruce M. Partain
        Bruce M. Partain
        State Bar No. 15548400
        Gary J. Linthicum
        State Bar No. 00794174

P.O. Box 3708
Beaumont, Texas 77704-3708
Tel. (409) 838-2644
Fax. (409) 838-4713

**ATTORNEYS FOR PLAINTIFFS,
TRI-SUPPLY COMPANY, INC.
and WELDON VYBIRAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| RAY MART, INC. D/B/A TRI-SUPPLY COMPANY and WELDON VYBIRAL | § § § | |
| *Plaintiffs,* | § § § | CIVIL ACTION NO. 1:05-CV-855 |
| v. | § § | |
| STOCK BUILDING SUPPLY OF TEXAS, L.P., | § § § | |
| *Defendant.* | § § | |

## JOINT MOTION TO WAIVE CERTAIN REQUIREMENTS OF LOCAL RULE CV-83(b)

Plaintiffs Ray Mart, Inc. d/b/a Tri-Supply Company and Weldon Vybiral and Defendant Stock Building Supply of Texas, LP hereby file this Joint Motion to Waive Certain Requirements of Local Rule CV-83(b), and would respectfully show the Court as follows:

1.    Plaintiffs Ray Mart, Inc. d/b/a Tri-Supply Company ("Tri-Supply") and Weldon Vybiral ("Vybiral") (collectively, "Plaintiffs") filed their Original Petition for Declaratory Judgment and Damages on December 14, 2006 in the District Court of Jefferson County, Texas, 172nd Judicial District, alleging breach of contract arising out of Vybiral's Employment Agreement with Stock ("Employment Agreement") and seeking declaratory judgment regarding the enforceability of the non-compete provision in the Employment Agreement.  Defendant removed that action to this Court on December 19, 2005 pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

2.    On December 19, 2005, Stock also filed Defendant's Expedited Motion to Transfer Venue and Brief in Support ("Defendant's Motion").

3.     Plaintiffs filed their Motion to Remand on January 6, 2006.

4.     The Court granted Defendants' Motion to Transfer Venue and denied Plaintiff's Motion to Remand on February 14, 2006.  On that same day, the Court transferred this case to the Western District of Texas, Waco Division.

5.     The Parties agree to waive the requirement of Local Rule CV-83(b) that the clerk wait twenty days to transfer the required materials to the directed court.  Accordingly, the Parties request that the Court direct the clerk to mail the required materials to the directed court.

WHEREFORE, in light of the foregoing, the Parties requests that this Court grant this Joint Motion to Waive Requirements of Local Rule CV-83(b) and order the clerk to mail the required materials to the directed court.

Respectfully submitted,

**WELLS, PEYTON, GREENBERG & HUNT, LLP**

By:   /s/ Bruce M. Partain
    Bruce M. Partain
    State Bar No. 15548400
    Gary J. Linthicum
    State Bar No. 00794174

P.O. Box 3708
Beaumont, Texas 77704
409.838.2644
409.838.0416 Fax

**ATTORNEYS FOR PLAINTIFFS**

**HUNTON & WILLIAMS LLP**

By:      /s/ Bridget A. Blinn
    W. Stephen Cockerham
    State Bar No. 04463300
    Bridget A. Blinn
    State Bar No. 24045510

Energy Plaza, 30th Floor
1601 Bryan Street
Dallas, Texas  75201
214.979.3000
214.880.0011 Fax

**ATTORNEYS FOR DEFENDANT**

**UNITED STATES DISTRICT COURT**          **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| RAY MART, INC. d/b/a Tri-Supply | § | |
| Company and WELDON VYBIRAL, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| versus | § | CIVIL ACTION NO. 1:05-CV-855 |
| | § | |
| STOCK BUILDING SUPPLY OF TEXAS, | § | |
| L.P., | § | |
| | § | |
| Defendant. | § | |

### ORDER TRANSFERRING VENUE

In accordance with the court's Memorandum and Order signed February 14, 2006, granting

Defendant Stock Building Supply of Texas, L.P.'s Expedited Motion to Transfer Venue (#3), this

case is transferred to the Western District of Texas, Waco Division.

SIGNED at Beaumont, Texas, this 14th day of February, 2006.

*Marcia A. Crone*
_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**          **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| RAY MART, INC. d/b/a Tri-Supply | § | |
| Company and WELDON VYBIRAL, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:05-CV-855 |
| | § | |
| STOCK BUILDING SUPPLY OF TEXAS, | § | |
| L.P., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the court are Defendant Stock Building Supply of Texas, L.P.'s ("Stock")

Expedited Motion to Transfer Venue (#3) and Plaintiffs Ray Mart, Inc. d/b/a Tri-Supply Company

("Tri-Supply") and Weldon Vybiral's ("Vybiral") (collectively "Plaintiffs") Motion to Remand

(#11). Defendant seeks a transfer of venue under 28 U.S.C. § 1404(a) from the United States

District Court for the Eastern District of Texas, Beaumont Division, to the United States District

Court for the Western District of Texas, Waco Division. Plaintiffs seek remand to state court of

this declaratory judgment and breach of employment contract action against Stock, asserting that

this court lacks subject matter jurisdiction. Having reviewed the motions, the submissions of the

parties, the pleadings, and the applicable law, the court is of the opinion that Plaintiffs' motion

to remand should be denied and that Defendant's motion to transfer venue should be granted.

I.      Background

On December 14, 2005, Plaintiffs filed suit against Stock in the 172nd Judicial District

Court of Jefferson County, Texas, asserting a variety of claims stemming from Vybiral's

employment contract with Stock. Specifically, Plaintiffs seek a declaratory judgment that the

covenant-not-to-compete provision in Vybiral's employment contract with Stock is unenforceable. Vybiral also asserts a claim for breach of the employment contract, alleging that Stock failed to pay him certain work-related bonuses.  Plaintiff Vybiral is a citizen and resident of Moody, Bell County, Texas.  Tri-Supply is a Texas corporation with its principal place of business located in Jefferson County, Texas.  Defendant Stock is a Delaware limited partnership.  Its general partner, Stock Building Supply, Inc., is a citizen of North Carolina, and its limited partner, Stock Building Supply West, Inc., is a Utah corporation with its principal place of business in North Carolina.

From 1990 until 2003, Jeld-Wen, Inc. ("Jeld-Wen") employed Vybiral as the general manager of its Temple, Texas, door mill operation. In 2003, Stock purchased Jeld-Wen, including its door mill operation in Temple, which Stock now operates.  On January 13, 2003, Vybiral signed an employment agreement with Stock.   The employment contract contains a covenant against competition, which restricts Vybiral for two years after the termination of his employment from "engag[ing] in any business that the Employer currently conducts or enters into during the term of Employee's employment hereunder, within a 100 mile radius of Employer's Temple, Texas branch (the Branch)."  Vybiral alleges that, upon its acquisition of Jeld-Wen, Stock told him that his "compensation, including the calculation of [his] bonus, work duties, and conditions would remain the same as they had been with JELD-WEN, Inc."

On November 30, 2005, Vybiral notified Stock that he was resigning and gave a two-week notice.  The following day, Stock terminated his employment.  Vybiral received a letter from Stock's counsel dated December 9, 2005, which states that Stock has information leading it to believe that Vybiral may have engaged in conduct that violated his employment agreement by: "1) working for, or acting on behalf of, Tri-Supply; 2) soliciting Stock customers on behalf of Tri-

2

Supply; and 3) soliciting Stock employees to quit their employment with Stock and come work for Tri-Supply."

On January 1, 2006, Vybiral commenced employment at Tri-Supply, which operates a door mill and pre-hanging shop in Temple, Texas. The doors are sold to commercial builders, residential builders, and the public throughout the State of Texas.

In their original petition, Plaintiffs request: (1) a declaration that the covenant against competition provision in Vybiral's employment contract with Stock is unenforceable; (2) monetary damages for breach of Vybiral's employment contract because Stock did not pay him bonuses commensurate with bonuses he received when he was employed by Jeld-Wen; and (3) reasonable and necessary attorneys' fees, costs of court, and interest as permitted by Texas law. Plaintiffs do not allege a specific amount of damages, stating that the damages sought are within the jurisdictional limits of the court.

On December 19, 2005, Stock removed this case to federal court on the basis of diversity of citizenship, asserting that "there is complete diversity of citizenship between the parties, in that the parties are citizens and residents of different states and the amount in controversy is in excess of $75,000.00 exclusive of interest and costs." On the same day, Stock filed its motion to transfer venue to the Waco Division of the United States District Court for the Western District of Texas. Plaintiffs filed a motion to remand on January 6, 2006, maintaining that the claimed damages do not exceed the required federal jurisdictional minimum of $75,000.00. *See* 28 U.S.C. § 1332.

II.    Analysis

A.    Federal Jurisdiction in Removed Actions

"Federal courts are courts of limited jurisdiction." *Peoples Nat'l Bank v. Office of Comptroller of the Currency of United States*, 362 F.3d 333, 336 (5th Cir. 2004); *accord Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir.), *cert. denied*, 534 U.S. 993 (2001); *Bobo v. Christus Health*, 359 F. Supp. 2d 552, 554 (E.D. Tex. 2005).   "They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree.  It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (citations omitted); *see also Boone v. Citigroup, Inc.*, 416 F.3d 382, 388 (5th Cir. 2005).   Furthermore, "[i]t is often stated that a federal court cannot transfer a case if subject matter jurisdiction does not exist." *Reed v. Fina Oil & Chem. Co.*, 995 F. Supp. 705, 708 (E.D. Tex. 1998) (citing *Coons v. American Horse Show Ass'n, Inc.*, 533 F. Supp. 398, 400 (S.D. Tex. 1982) (citing 15 CHARLES A. WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3844, at 211 (2d ed. 1986))).   Hence, in the interests of judicial economy, the court will determine whether federal subject matter jurisdiction exists over this controversy before addressing Stock's motion to transfer venue. *See id.*

Federal courts have subject matter jurisdiction and are authorized to entertain causes of action only where a question of federal law is involved or where there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. §§ 1331, 1332; *Lincoln Prop. Co. v. Roche*, ___ U.S. ___, ___, 126 S. Ct.

4

606, 613 (2005); *McDonal v. Abbott Labs.*, 408 F.3d 177, 181 (5th Cir. 2005); *Howery*, 243 F.3d at 914-15; *Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir. 2000); *Moore v. Powers*, 279 F. Supp. 2d 821, 824 (E.D. Tex. 2003). In a removed action, a district court is required to remand the case to state court if, at any time before final judgment, it determines that it lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c); *McDonal*, 408 F.3d at 182. When considering a motion to remand, the removing party bears the burden of establishing federal jurisdiction and that removal was proper. *See Boone*, 416 F.3d at 388; *see also Garcia v. Koch Oil Co. of Tex., Inc.*, 351 F.3d 636, 638 (5th Cir. 2003); *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *accord Howery*, 243 F.3d at 919; *De Aguilar v. Boeing Co.* ("*De Aguilar II*"), 47 F.3d 1404, 1408 (5th Cir.), *cert. denied*, 516 U.S. 865 (1995); *Spill Textile Corp. v. Spilltech Envtl., Inc.*, 223 F. Supp. 2d 790, 792 (E.D. Tex. 2002).

    The existence of federal subject matter jurisdiction is determined at the time of removal from state court. *See Bissonnet Invs. LLC v. Quinlan (In re Bissonnet Invs. LLC)*, 320 F.3d 520, 525 (5th Cir. 2003) (citing *Arnold v. Garlock*, 278 F.3d 426, 434 (5th Cir. 2002)); *Wingate v. Kerr-McGee Rocky Mountain Corp.*, 353 F. Supp. 2d 779, 782 (E.D. Tex. 2005); *Jones v. American Home Prods. Corp.*, 344 F. Supp. 2d 500, 502 (E.D. Tex. 2004). In order to determine whether jurisdiction is present, the claims set forth in the state court petition are considered as of the date of removal. *See Manguno*, 276 F.3d at 723 (citing *Cavallini v. State Farm Mut. Auto. Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995) (stating that "a complaint amended post-removal cannot divest a federal court of jurisdiction")); *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000); *Madden v. Able Supply Co.*, 205 F. Supp. 2d 695, 699 (S.D. Tex. 2002). Any ambiguities are resolved against removal because the removal statute is strictly construed in

5

favor of remand. *See Bosky v. Kroger Tex., LP*, 288 F.3d 208, 211 (5th Cir. 2002); *Manguno*, 276 F.3d at 723; *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir.), *cert. denied*, 530 U.S. 1229 (2000); *Bobo*, 359 F. Supp. 2d at 554; *Spill Textile Corp.*, 223 F. Supp. 2d at 792.

The state court petition is usually consulted to determine the amount in controversy, and the sum claimed by the plaintiff controls if the claim is apparently made in good faith. *See Dow Agrosciences LLC v. Bates*, 332 F.3d 323, 326 (5th Cir. 2003), *cert. denied*, 542 U.S. 936 (2004); *Manguno*, 276 F.3d at 723 (citing *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998)); *De Aguilar II*, 47 F.3d at 1408 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)). "When the claim is one for declaratory relief, the amount in controversy is determined by 'the value of the right to be protected or the extent of the injury to be prevented.'" *Bates*, 332 F.3d at 326 (quoting *Greenberg*, 134 F.3d at 1252-53); *see also Aladdin's Castle, Inc. v. Mesquite*, 630 F.2d 1029, 1035 (5th Cir. 1980) (citing *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)); *Component Mgmt. Servs., Inc. v. America II Elecs., Inc.*, No. Civ. 3:03-CV-1210-P, 2003 WL 23119152, at *1 (N.D. Tex. Sept. 9, 2003); *Roberge v. Qualitek Int'l, Inc.*, No. Civ. 01-CV-5509, 2002 WL 109360, at *8 (N.D. Ill. Jan. 28, 2002). Texas law, however, prohibits plaintiffs from pleading for specific amounts in cases of unliquidated damages. *See* TEX. R. CIV. P. 47; *De Aguilar II*, 47 F.3d at 1410. Therefore, when the petition does not specify the amount in controversy, removal is proper if the removing party establishes by a preponderance of the evidence that the amount in controversy exceeds $75,000.00. *See Felton v. Greyhound Lines, Inc.*, 324 F.3d 771, 773 (5th Cir. 2003); *Manguno*, 276 F.3d at 723; *Gebbia*, 233 F.3d at 882; *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999); *Greenberg*, 134 F.3d at 1253.

"This requirement is met if (1) it is apparent from the face of the petition that the claims are likely to exceed $75,000.00, or, alternatively, (2) the defendant sets forth 'summary judgment type evidence' of facts in controversy that support a finding of the requisite amount." *Manguno*, 276 F.3d at 723 (citing *Simon*, 193 F.3d at 850); *accord Grant v. Chevron Phillips Chem. Co. L.P.*, 309 F.3d 864, 868 (5th Cir. 2002), *cert. denied*, 538 U.S. 945 (2003); *Gebbia*, 233 F.3d at 882-83; *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999). Unless it is apparent from the petition that the amount in controversy exceeds $75,000.00, the defendant may not rely on mere conclusory allegations in the notice of removal to satisfy its burden. *See Felton*, 324 F.3d at 774; *Simon*, 193 F.3d at 850-51. Rather, the defendant "ha[s] an affirmative burden to produce information, through factual allegations or an affidavit" that is sufficient to demonstrate the requisite jurisdictional amount. *Id.* at 851; *see Grant*, 309 F.3d at 869.

If it is facially apparent that the amount in controversy likely exceeds $75,000.00 or if the defendant produces sufficient evidence that the jurisdictional amount is satisfied, remand is not warranted unless the plaintiff establishes "to a legal certainty that the claim is really for less than the jurisdictional amount . . . ." *St. Paul Mercury Indem. Co.*, 303 U.S. at 289; *see Grant*, 309 F.3d at 869; *Manguno*, 276 F.3d at 724; *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995); *De Aguilar II*, 47 F.3d at 1412. "In other words, where the plaintiff's claims can be proved to be of the type that are worth more than [$75,000.00], they can be removed unless the plaintiff can show he is legally bound to accept less." *Allen*, 63 F.3d at 1335 n.14; *accord Williams v. State Farm Mut. Auto. Ins. Co.*, 931 F. Supp. 469, 471 n.3 (S.D. Tex. 1995). The plaintiff "may establish this by identifying a statute, or by filing a binding stipulation, that so limits [his] recovery." *Manguno*, 276 F.3d at 724 (citing *De Aguilar II*, 47 F.3d at 1412); *accord*

*Hogg v. Rust Indus. Cleaning Servs., Inc.*, 896 F. Supp. 655, 657 (E.D. Tex. 1995). The United States Court of Appeals for the Fifth Circuit has "emphasized that 'this is not a burden-shifting exercise'; rather, the 'plaintiff must make all information known at the time he files the complaint.'" *Grant*, 309 F.3d at 869 (quoting *De Aguilar II*, 47 F.3d at 1412).

The jurisdictional amount is determined at the time of removal; the plaintiff cannot avoid federal jurisdiction by later stipulating to an amount of damages below the jurisdictional minimum. *See St. Paul Mercury Indem. Co.*, 303 U.S. at 292; *Gebbia*, 233 F.3d at 883; *Greenberg*, 134 F.3d at 1253-54; *Allen*, 63 F.3d at 1335; *De Aguilar II*, 47 F.3d at 1412; *Cavallini*, 44 F.3d at 264-65; *De Aguilar v. Boeing Co. ("De Aguilar I")*, 11 F.3d 55, 57 n.3 (5th Cir. 1993); *Marcel v. Pool Co.*, 5 F.3d 81, 84 (5th Cir. 1993). As the Supreme Court noted in *St. Paul Mercury Indem. Co.*, "though, as here, the plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction." 303 U.S. at 292. An affidavit, however, may suffice to defeat removal if it merely clarifies, rather than reduces, the demand asserted in a previously ambiguous petition. *See Marcel*, 5 F.3d at 85 (citing *Asociacion Nacional De Pescadores v. Dow Quimica*, 988 F.2d 559, 565 (5th Cir. 1993), *cert. denied*, 510 U.S. 1041 (1994), *abrogated on other grounds*, *Marathon Oil Co. v. Ruhrgas, A.G.*, 145 F.3d 211, 215 (5th Cir. 1998)); *see also Matney v. Wenger Corp.*, 957 F. Supp. 942, 944 (S.D. Tex. 1997). "While post-removal affidavits may be considered in determining the amount in controversy at the time of removal, such affidavits may be considered only if the basis for jurisdiction is ambiguous at the time of removal." *Gebbia*, 233 F.3d at 883. Moreover, if it is facially apparent from the petition that the amount in controversy exceeds $75,000.00 at the time of removal, post-removal affidavits,

8

stipulations, and amendments reducing the amount do not deprive the district court of jurisdiction. *See id.*

In their state court petition in the instant case, Plaintiffs demand: (1) a declaration that Vybiral is not bound by the restrictive covenant contained in his employment agreement with Stock; (2) that the covenant against competition in his employment contract is unenforceable and void as a matter of law; (3) monetary damages as a result of Stock's alleged breach of contract; (4) reasonable and necessary attorneys' fees in the trial court and during appeal; (5) costs of court; and (6) interest as permitted by Texas law. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.001 *et seq.* (Vernon 1997). In an apparent attempt to avoid federal jurisdiction, Plaintiffs contend in their motion to remand that the amount in controversy does not exceed $75,000.00. This assertion is refuted, however, by the relief sought in their original petition. *See Component Mgmt. Servs., Inc.*, 2003 WL 23119152, at *1; *Roberge*, 2002 WL 109360, at *8. Vybiral and Tri-Supply cannot seek damages in state court that could reasonably be construed to exceed $75,000.00 and then attempt to avoid federal jurisdiction by later claiming an amount of damages below the jurisdictional minimum. *See St. Paul Mercury Indem. Co.*, 303 U.S. at 292; *Gebbia*, 233 F.3d at 883; *Cavallini*, 44 F.3d at 264-65; *De Aguilar I*, 11 F.3d at 57; *Marcel*, 5 F.3d at 84-85.

Plaintiffs submitted affidavits with their motion to remand, stating that "Stock failed to pay [Vybiral] the additional amount of $54,162.21 for bonuses due [him] under the Employment Agreement. . . ." and "that $15,000.00 would be a reasonable attorneys' fee award . . . ." According to Plaintiffs, the amount in controversy is $69,162.21, which is the sum of the bonuses allegedly due Vybiral plus attorneys' fees. Plaintiffs, however, fail to assign any value to the claim for declaratory judgment. *See Component Mgmt. Servs., Inc.*, 2003 WL 23119152, at *1.

9

The value of the declaratory judgment action is determined by appraising the worth of Vybiral's

employment during the time period the covenant against competition purports to cover. *See id.*

at *2. Vybiral was terminated on December 1, 2005. Thus, the two-year covenant against

competition extends until December 1, 2007. Hence, the declaratory judgment's worth is

equivalent to the value of Vybiral's employment during this time period. *See id.*; *Roberge*, 2002

WL 109360, at *8. According to the terms of his employment contract with Stock, Vybiral's

compensation and benefits encompassed: an annual base salary of $75,000.00; participation in

Stock's bonus program which was calculated based "upon an annual review and commensurate

with the programs made available to the Employer's other Branch Managers;" four weeks' annual

paid vacation; a monthly automobile or automobile allowance; and immediate vesting in benefits

programs including a 401(k) plan, investment retirement account plan, life insurance, health

insurance, and disability insurance. In light of the amount of compensation Vybiral would have

received during the two years at issue, the value of the declaratory judgment action far exceeds

$75,000.00. *See Component Mgmt. Servs., Inc.*, 2003 WL 23119152, at *2; *Roberge*, 2002 WL

109360, at *8.

  To warrant remand to state court on the grounds of an insufficient jurisdictional amount,

Plaintiffs must show that the amount in controversy at the time of removal appears with a legal

certainty to be $75,000.00 or less. *See Manguno*, 276 F.3d at 724; *Allen*, 63 F.3d at 1335 n.14;

*De Aguilar II*, 47 F.3d at 1412. In Texas, where state law does not prohibit an award of damages

in excess of the amount sought in the state court petition, "'[l]itigants who want to prevent

removal must file a binding stipulation or affidavit with their complaints; once a defendant has

removed the case, *St. Paul* makes later filings irrelevant.'" *De Aguilar II*, 47 F.3d at 1412

(quoting *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992)); *see Gebbia*, 233 F.3d at 883; *Allen*, 63 F.3d at 1335. In this case, prior to removal, Plaintiffs did not file a binding stipulation or affidavit in state court attesting that their damages do not exceed $75,000.00. Thus, Plaintiffs' affidavits, submitted with their motion to remand, claiming that their damages do not exceed $75,000.00, are insufficient to deprive this court of subject matter jurisdiction. *See Gebbia*, 233 F.3d at 883; *De Aguilar II*, 47 F.3d at 1413.

Therefore, in view of their multiple claims and the various types of damages sought, the court concludes that based on the original petition and the court's familiarity with the amount of attorneys' fees generally charged for this type of litigation, Plaintiffs' claims can reasonably be construed to exceed $75,000.00 and, hence, are adequate to support federal jurisdiction. Vybiral and Tri-Supply have failed to establish with a "legal certainty" that their claims at the time of removal were actually for less than the federal jurisdictional minimum, making remand inappropriate. Under these circumstances, Plaintiffs' action shall remain in a federal forum.

B.     Transfer of Venue

When the selected venue is proper, a motion to transfer venue from one district or division to another is governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *see In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004); *Action Indus., Inc. v. United States Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004); *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir.), *cert. denied*, 540 U.S. 1049 (2003); *Gleisner v. Presbyterian Hosp. of Plano, Inc.*, Civ. No. 2:05-CV-369, 2005 WL 2455819, at *1 (E.D. Tex. Oct. 5, 2005); *Lajaunie v. L & M Bo-*

*Truc Rental, Inc.*, 261 F. Supp. 2d 751, 753 (S.D. Tex. 2003); *Seabulk Offshore, Ltd. v. Dyn Marine Servs., Inc.*, 201 F. Supp. 2d 751, 754 (S.D. Tex. 2002). The purpose of this statute "is to prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses, and the public against unnecessary inconvenience and expense . . . .'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Continental Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 26-27 (1960)); *accord DataTreasury Corp. v. First Data Corp.*, 243 F. Supp. 2d 591, 593 (N.D. Tex. 2003); *Shoemake v. Union Pac. R.R. Co.*, 233 F. Supp. 2d 828, 829 (E.D. Tex. 2002).

Under § 1404(a), the movant has the burden of demonstrating that a change of venue is warranted. *See Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir.), *cert. denied*, 493 U.S. 935 (1989); *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966); *Brown v. Petroleum Helicopters, Inc.*, 347 F. Supp. 2d 370, 372 (S.D. Tex. 2004); *Lajaunie*, 261 F. Supp. 2d at 753; *Shoemake*, 233 F. Supp. 2d at 829; *Seabulk Offshore, Ltd.*, 201 F. Supp. 2d at 754. To prevail, the moving party must show that the balance of convenience and justice weighs heavily in favor of a transfer of venue. *See Salinas v. O'Reilly Auto., Inc.*, 358 F. Supp. 2d 569, 570 (N.D. Tex. 2005); *Von Graffenreid v. Craig*, 246 F. Supp. 2d 553, 563 (N.D. Tex. 2003); *DataTreasury Corp.*, 243 F. Supp. 2d at 593; *Shoemake*, 233 F. Supp. 2d at 829; *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000). "'Therefore, when assessing the merits of a § 1404(a) motion, [the] court must determine if a transfer would make it substantially more convenient for the parties to litigate the case.'" *Gardipee v. Petroleum Helicopters, Inc.*, 49 F. Supp. 2d 925, 928 (E.D. Tex. 1999) (quoting *Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co.*, 844 F. Supp. 1163, 1165 (S.D. Tex. 1994)).

The decision to transfer a pending case is committed to the sound discretion of the district court. *See Van Dusen*, 376 U.S. at 616; *In re Volkswagen AG*, 371 F.3d at 203; *Casarez v. Burlington N./Santa Fe Co.*, 193 F.3d 334, 339 (5th Cir. 1999); *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998), *cert. denied*, 526 U.S. 1157 (1999); *Shoemake*, 233 F. Supp. 2d at 829; *LeDoux v. Isle of Capri Casinos, Inc.*, 218 F. Supp. 2d 835, 836 (E.D. Tex. 2002). "[T]he trial court must exercise its discretion in light of the particular circumstances of the case." *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001) (citing *Radio Santa Fe, Inc. v. Sena*, 687 F. Supp. 284, 287 (E.D. Tex. 1988)); *accord Shoemake*, 233 F. Supp. 2d at 829 (citing *Robertson v. Kiamichi R.R. Co.*, 42 F. Supp. 2d 651, 655 (E.D. Tex. 1999)). "The first issue that a district court must address in ruling on a motion to transfer under § 1404(a) is the question of whether the judicial district to which transfer is sought qualifies under the applicable venue statutes as a judicial district where the civil action 'might have been brought.'" *In re Horseshoe Entm't*, 337 F.3d at 433; *accord In re Volkswagen AG*, 371 F.3d at 203; *Ramos v. Wal-Mart Stores East, Inc.*, Civ. No. 2:05-CV-478, 2006 WL 20780, at *1 (E.D. Tex. Jan. 4, 2006); *Salinas*, 358 F. Supp. 2d at 570; *Purdy v. Munden*, 356 F. Supp. 2d 658, 659 (E.D. Tex. 2005). In the case at bar, the parties do not dispute that venue is proper and that the case could have been brought in the Waco Division of the Western District of Texas.

When, as here, the movant meets this threshold requirement, motions to transfer are adjudicated by a district court through "individualized, case-by-case consideration[s] of convenience and fairness." *Van Dusen*, 376 U.S. at 622; *accord Jackson v. West Telemarketing Corp. Outbound*, 245 F.3d 518, 522 (5th Cir.), *cert. denied*, 534 U.S. 972 (2001); *Carney v. Ford Motor Co.*, Civ. No. 2:05-CV-122, 2005 WL 1993449, at *1 (E.D. Tex. Aug. 17, 2005); *Isbell*

13

*v. DM Records, Inc.*, No. Civ. A. 3:02-CV-1408-G, 2004 WL 1243153, at *13 (N.D. Tex. June

4, 2004); *Shoemake*, 233 F. Supp. 2d at 829-30.   "In considering a motion to transfer venue,

courts weigh factors relating to (1) the litigants' convenience and (2) the public interest in the fair

and efficient administration of justice."  *Langton v. Cbeyond Commc'n, L.L.C.*, 282 F. Supp. 2d

504, 509 (E.D. Tex. 2003); *see also Ramos*, 2006 WL 20780, at *1; *Mohamed*, 90 F. Supp. 2d

at 771.   A motion to transfer venue under § 1404(a) thus calls on the district court to weigh

various case-specific factors.  *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988);

*Jackson*, 245 F.3d at 522 n.9; *Ramos*, 2006 WL 20780, at *1; *Von Graffenreid*, 246 F. Supp. 2d

at 563.   "The determination of 'convenience' turns on a number of private and public interest

factors, none of which are given dispositive weight."   *In re Volkswagen AG*, 371 F.3d at 203

(citing *Action Indus., Inc.*, 358 F.3d at 340 (citing *Syndicate 420 at Lloyd's London v. Early Am.

Ins. Co.*, 796 F.2d 821, 827 (5th Cir. 1986))); *Eliserio v. Floydada Hous. Auth.*, 388 F. Supp.

2d 774, 776 (S.D. Tex. 2005); *Bolt v. Toyota Motor Corp.*, 351 F. Supp. 2d 597, 599 (E.D. Tex.

2004).

Private interest factors, which involve the preferences and conveniences of the parties and

witnesses, include:  (1) the relative ease of access to sources of proof; (2) the availability of

compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing

witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and

inexpensive.  *See In re Volkswagen AG*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454

U.S. 235, 241 n.6 (1981)); *Action Indus., Inc.*, 358 F.3d at 340 n.8 (citing *Syndicate 420 at

Lloyd's London*, 796 F.2d at 831); *Eliserio*, 388 F. Supp. 2d at 776; *Purdy*, 356 F. Supp. 2d at

659. The Fifth Circuit has held that "the convenience of counsel," which previously had been

considered, "is not a factor to be assessed in determining whether to transfer a case under § 1404(a)." *In re Volkswagen AG*, 371 F.3d at 206 (citing *In re Horseshoe Entm't*, 337 F.3d at 434 ("[t]he factor of 'location of counsel' is irrelevant and improper for consideration in determining the question of transfer of venue"); *see Carney*, 2005 WL 1993449, at *1; *Shoemake*, 233 F. Supp. 2d at 833-34. Accordingly, the location of Plaintiffs' counsel in Beaumont has no bearing on whether this case should remain in this forum.

The public interest factors address broader objectives, such as: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized disputes decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws in the application of foreign law. *See In re Volkswagen AG*, 371 F.3d at 203 (citing *Reyno*, 454 U.S. at 241 n.6); *Action Indus., Inc.*, 358 F.3d at 340 n.8 (citing *Syndicate 420 at Lloyd's London*, 796 F.2d at 831); *Eliserio*, 388 F. Supp. 2d at 776; *Salinas*, 358 F. Supp. 2d at 570-71; *Purdy*, 356 F. Supp. 2d at 659.

C.     Private Interest Factors

1.     The Relative Ease of Access to Sources of Proof

The relative convenience of the witnesses is often recognized as the most important factor to be considered when ruling on a motion under § 1404(a). *See Spiegelberg v. The Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 790 (S.D. Tex. 2005); *LeDoux*, 218 F. Supp. 2d at 837; *Seabulk Offshore, Ltd.*, 201 F. Supp. 2d at 755; *Woolf v. Mary Kay, Inc.*, 176 F. Supp. 2d 642, 650 (N.D. Tex. 2001), *cert. denied*, 125 S. Ct. 2530 (2005); *Houston Trial Reports, Inc. v. LRP Publ'ns, Inc.*, 85 F. Supp. 2d 663, 668 (S.D. Tex. 1999). "In terms of witnesses, venue is considered convenient in the district or division where the majority of witnesses are located."

*Shoemake*, 233 F. Supp. 2d at 832 (citing *Robertson,* 42 F. Supp. 2d at 657); *accord Mohamed*, 90 F. Supp. 2d at 775.

In considering the availability and convenience of witnesses, a court must concentrate primarily upon the availability and convenience of key witnesses. *See Shoemake*, 233 F. Supp. 2d at 832; *McGinnis v. Eli Lilly & Co.*, 181 F. Supp. 2d 684, 687 (S.D. Tex. 2002); *Houston Trial Reports, Inc.*, 85 F. Supp. 2d at 668; *Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 825 (S.D. Tex. 1993); *Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F. Supp. 1392, 1396-97 (S.D. Tex. 1992). Indeed, "'[t]he convenience of one key witness may outweigh the convenience of numerous less important witnesses.'" *Houston Trial Reports, Inc.*, 85 F. Supp. 2d at 668 (quoting *LeBouef v. Gulf Operators, Inc.*, 20 F. Supp. 2d 1057, 1060 (S.D. Tex. 1998)); *accord Continental Airlines, Inc.*, 805 F. Supp. at 1396; *see also Dupre*, 810 F. Supp. at 825. Moreover, it is the convenience of non-party witnesses, rather than of party witnesses, that is more important and is accorded greater weight in a transfer of venue analysis. *See Spiegelberg*, 402 F. Supp. 2d at 790-91; *Shoemake*, 233 F. Supp. 2d at 832 (citing *State St. Capital Corp. v. Dente*, 855 F. Supp. 192, 198 (S.D. Tex. 1994)); *LeDoux*, 218 F. Supp. 2d at 837; *Mohamed*, 90 F. Supp. 2d at 775. Where the key witnesses are employees of the party seeking a transfer, their convenience is entitled to less weight because the party is able to compel their attendance. *See Z-Tel Commc'ns, Inc. v. SBC Commc'ns, Inc.*, 331 F. Supp. 2d 567, 573 (E.D. Tex. 2004); *Continental Airlines, Inc.*, 805 F. Supp. at 1397. Hence, it is "the location of key, non-party witnesses that dominates." *Mohamed*, 90 F. Supp. 2d at 775.

"[W]hether transfer is sought for key party or non-party witnesses, the moving litigant must make more than a general allegation that the key witnesses are inconveniently located." *Id.*

16

(citing *Robertson*, 42 F. Supp. 2d at 657); *accord Eliserio*, 388 F. Supp. 2d at 777 n.2 (citing

*Dupre*, 810 F. Supp. at 825). "Conclusory allegations are not sufficient—the moving party must

identify the key witnesses to be called and present a generalized statement of what their testimony

would include." *Williams v. Southern Towing Co.*, No. Civ. A. 03-2688, 2004 WL 60314, at *2

(E.D. La. Jan. 8, 2004); *accord Salinas*, 358 F. Supp. 2d at 572; *Z-Tel Commc'ns, Inc.*, 331 F.

Supp. 2d at 574; *Holmes v. Energy Catering Servs., L.L.C.*, 270 F. Supp. 2d 882, 887 (S.D. Tex.

2003); *Mohamed*, 90 F. Supp. 2d at 775. In determining whether a particular venue is more

convenient to witnesses, the court should inquire into the nature and quality of the witnesses'

potential testimony with regard to the issues in dispute rather than limit its investigation to a

review of which party can produce the longer witness list. *See Isbell*, 2004 WL 1243153, at *14;

*Holmes*, 270 F. Supp. 2d at 887; *see also Barnett v. Kirby Inland Marine, Inc.*, 202 F. Supp. 2d

664, 668 (S.D. Tex. 2002); *Aquatic Amusement Assocs. Ltd. v. Walt Disney World Co.*, 734 F.

Supp. 54, 57 (N.D.N.Y. 1990). Courts have "'uniformly refused to let applications for transfer

become a battle of numbers.'" *Woolf*, 176 F. Supp. 2d at 650 (quoting *Dupre*, 810 F. Supp. at

826); *accord Fletcher v. Southern Pac. Transp. Co.*, 648 F. Supp. 1400, 1402 (E.D. Tex. 1986).

Along with Vybiral, the key party witnesses are David Corna ("Corna"), John Raykovich

("Raykovich"), Larry Busceme ("Busceme"), Reagan Reed ("Reed"), and Alicia Downy

("Downy"). Corna, a District Manager for Stock, resides in Austin, Texas—in the Western

District of Texas. Corna was Vybiral's supervisor during his employment with Stock. Corna has

knowledge of Vybiral's duties as a general manager for Stock, the customer relationships Stock

maintains in Temple, Vybiral's alleged breach of the employment agreement, his compensation

package at Stock, and the alleged damages caused by his departure from the company. Raykovich,

the President of Tri-Supply, maintains residences in Beaumont, Texas, and in Westlake, Texas.

At deposition, Raykovich testified that he owns homes in both cities but spends the majority of his

time in Westlake, Texas—in the Western District of Texas.  He hired Vybiral to work for Tri-

Supply and directs his activities on behalf of Tri-Supply.  Busceme is the only key witness who

resides exclusively in Beaumont, Texas.  Busceme is the Director of Human Resources for Tri-

Supply.  He will purportedly offer testimony refuting Stock's assertion that Vybiral solicited

employees to leave Stock and work for Tri-Supply.  Reed replaced Vybiral as the location manager

at Stock's Temple facility and resides in the Western District of Texas.  His testimony will focus

on the location of Stock's customer base.  Defendant maintains that Reed's testimony is pertinent

to the reasonableness of the temporal and geographic limitations contained in the covenant-not-to-

compete and whether those restrictions are necessary to protect Stock's goodwill and other

business interests.  Downy, the Payroll Director for Stock's general partner, lives in Raleigh,

North Carolina.  Downy will testify about the structure of Stock's bonus program and the actual

payments made to Vybiral.

In addition to the key party witnesses, the parties identify a number of potential witnesses

who may be called to testify at trial.  The majority of the named individuals reside in or within

close proximity to Temple, Texas.  Most of these potential witnesses are former Stock employees

who may now be employed by Tri-Supply.  These individuals purportedly have knowledge of

relevant facts regarding Vybiral's employment at Stock, including information regarding Stock's

customer relationships, which relates to the issue of the reasonableness of the covenant-not-to-

compete.  Because venue is considered convenient in the district or division where the majority

of witnesses are located and the vast majority of the persons listed as witnesses in this case reside

in the Western District of Texas, the convenience of the witnesses weighs strongly in favor of a

transfer.

Moreover, Temple, Texas, where Vybiral and the most of the witnesses in this case work

and/or reside, is approximately thirty-four miles from Waco, Texas.   In contrast, Temple is

approximately two hundred seventy miles from Beaumont, Texas.   Therefore, if venue were

maintained in the Eastern District of Texas, most of the witnesses would be required to travel to

Beaumont, Texas, and incur travel, food, and lodging expenses for trial.   As the Supreme Court

noted in *In re Volkswagen AG*:

> When the distance between an existing venue for trial of a matter and a proposed
> venue under § 1404(a) is more than 100 miles, the factor of inconvenience to
> witnesses increases in direct relationship to the additional distance to be traveled.
> Additional distance means additional travel time; additional travel time increases
> the probability for meal and lodging expenses; and additional travel time with
> overnight stays increases the time which these fact witnesses must be away from
> their regular employment.

371 F.3d at 204-05; *see also Eliserio*, 388 F. Supp. 2d at 777.

Overall, the convenience of the parties and witnesses would be served by a transfer of

venue.   A change of venue to the Western District of Texas would reduce the travel expenses for

all the parties and would not simply transfer costs from one party to another.   *See McCaskey v.*

*Continental Airlines, Inc.*, 133 F. Supp. 2d 514, 528 (S.D. Tex. 2001) (finding that reducing total

costs and not just transferring costs supports a transfer).   If the case remains in Beaumont, Texas,

every witness, aside from Busceme and possibly Raykovich, would be required to commute and

incur meal and lodging expenses.

2.      Availability of Compulsory Process

Another factor to be considered is the availability of compulsory process to insure the attendance at trial of unwilling or hostile witnesses. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 511 (1947); *Eliserio*, 388 F. Supp. 2d at 776-77; *Hess v. Gray*, 85 F.R.D. 15, 25 (N.D. Ill. 1979); *Morgan v. Illinois Cent. R.R. Co.*, 161 F. Supp. 119, 120 (S.D. Tex. 1958). In this instance, compulsory process would be available in the Western District of Texas for most of the witnesses, but not in this forum, as almost all the witnesses reside outside the court's 100-mile subpoena range. *See* FED. R. CIV. P. 45(c)(3)(A)(ii); *see also Eliserio*, 388 F. Supp. 2d at 777. Stock argues that transferring this case to the Western District of Texas is necessary because, otherwise, many witnesses will be outside the subpoena power of this court. In view of the fact that many of the individuals the parties have identified as potential witnesses at trial are employees of either Stock or Tri-Supply, however, compulsory process may not be needed in this case. Therefore, this factor is neutral with regard to transfer of this action.

3.      Cost of Obtaining the Attendance of Witnesses and Other Trial Expenses

As previously noted, the vast majority of witnesses with information relevant to this case reside in Temple, Texas, or in close proximity thereto. Thus, the witnesses would incur substantial costs, both in travel expenses and time away from work, in order to travel to Beaumont, Texas, from the Temple area for purposes of a trial. Because Vybiral and most of the persons designated as likely to have pertinent information in this matter are located in the Western District of Texas, reason dictates that the costs of obtaining the attendance of witnesses and other trial expenses would decrease for all parties if this action were transferred to that district. *See Spiegelberg*, 402 F. Supp. 2d at 791. Hence, this factor weighs in favor of a transfer.

20

4.    Other Practical Problems and Considerations

a.    Place of the Alleged Wrong

The place of the alleged wrong is a significant factor in the transfer analysis, and, here,
it weighs in favor of a transfer. *See id.*; *Hanby*, 144 F. Supp. 2d at 678; *Houston Trial Reports,
Inc.*, 85 F. Supp. 2d at 670; *Robertson v. M/V Cape Hunter*, 979 F. Supp. 1105, 1108 (S.D. Tex.
1997); *Henderson v. AT&T Corp.*, 918 F. Supp. 1059, 1067 (S.D. Tex. 1996); *Dupre*, 810 F.
Supp. at 827. In this instance, the Beaumont Division of the Eastern District of Texas lacks a
significant connection to the underlying dispute. *See Spiegelberg*, 402 F. Supp. 2d at 791; *Hanby*,
144 F. Supp. 2d at 678. According to Plaintiffs' petition, most of the alleged misrepresentations
regarding the employment contract were made to Vybiral in Temple, Texas, during his
employment as General Manager of Stock's mill operation there. The covenant against
competition contained in the employment contract restricts Vybiral from "engag[ing] in any
business that the Employer currently conducts or enters into during the term of Employee's
employment hereunder, within a 100 mile radius of Employer's Temple, Texas branch (the
Branch)." The distance contained in the restrictive covenant does not reach the Eastern District
of Texas. Thus, the alleged wrongs appear to have occurred primarily in the Western District of
Texas, rendering a trial of this action in Waco more appropriate than a trial in Beaumont, Texas.
This factor supports a transfer.

b.    Plaintiffs' Choice of Forum

In determining the propriety of a transfer of venue under § 1404(a), the plaintiffs' choice
of forum is not accorded the decisive weight it enjoyed under the doctrine of *forum non
conveniens*. *See Reyno*, 454 U.S. at 253-56; *Radio Santa Fe, Inc.*, 687 F. Supp. at 287. Today,

the choice of forum is "clearly a factor to be considered but in and of itself it is neither conclusive

nor determinative." *In re Horseshoe Entm't*, 337 F.3d at 434 (citing *Garner v. Wolfinbarger*, 433

F.2d 117, 119 (5th Cir. 1970)); *see Ramos*, 2006 WL 20780, at *2; *Shoemake*, 233 F. Supp. 2d

at 830-31. Nevertheless, "[t]he plaintiff's choice of forum is normally given deference, especially

when the forum is the plaintiff's 'home.'" *Houston Trial Reports, Inc.*, 85 F. Supp. 2d at 670;

*see also Time, Inc.*, 366 F.2d at 698; *accord Spiegelberg*, 402 F. Supp. 2d at 790; *Dearing v.

Sigma Chem. Co.*, 1 F. Supp. 2d 660, 665 (S.D. Tex. 1998); *Henderson*, 918 F. Supp. at 1067-

68; *Dupre*, 810 F. Supp. at 828. "'The preference for honoring a plaintiff's choice of forum is

simply that, a preference; it is not a right.'" *Isbell*, 2004 WL 1243153, at *16 (quoting *E.I.

Dupont de Nemours & Co. v. Diamond Shamrock Corp.*, 522 F. Supp. 588, 592 (D. Del. 1981));

*see also The Whistler Group, Inc. v. PNI Corp.*, Civ. No. 3:03-CV-1536, 2003 WL 22939214,

at *6 (N.D. Tex. Dec. 5, 2003).

     Plaintiffs' choice of forum is accorded less weight when most of the operative facts

occurred outside the district. *See Salinas*, 358 F. Supp. 2d at 571; *accord Spiegelberg*, 402 F.

Supp. 2d at 790; *Bolt*, 351 F. Supp. 2d at 600; *Isbell*, 2004 WL 1243153, at *13; *Minka Lighting,

Inc. v. Trans Globe Imps., Inc.*, Civ. No. 3:02-CV-2538, 2003 WL 21251684, at *4 (N.D. Tex.

May 23, 2003); *Shoemake*, 233 F. Supp. 2d at 831; *Hanby*, 144 F. Supp. 2d at 677. When the

chosen district has little factual nexus to the case, the plaintiffs' choice of forum is accorded less

deference if other factors weigh in favor of a transfer. *See Spiegelberg*, 402 F. Supp. 2d at 790;

*Isbell*, 2004 WL 1243153, at *16; *Shoemake*, 233 F. Supp. 2d at 830-31; *Conway v. Lenzing

Aktiengesellschaft*, 222 F. Supp. 2d 833, 834 (E.D. Tex. 2002); *Hanby*, 144 F. Supp. 2d at 677;

*Robertson*, 42 F. Supp. 2d at 656.

Although Plaintiffs argue that their chosen forum in the Eastern District of Texas is proper, Plaintiffs' choice of venue is not controlling in light of the substantial factors that favor a transfer of this case to the Western District of Texas. *See Horseshoe Entm't*, 337 F.3d at 434; *Spiegelberg*, 402 F. Supp. 2d at 790; *Isbell*, 2004 WL 1243153, at *16; *Shoemake*, 233 F. Supp. 2d at 830-31; *Hanby*, 144 F. Supp. 2d at 677; *Robertson*, 42 F. Supp. at 656. The pleadings in this case and the submissions of the parties reflect that most of the acts giving rise to Plaintiffs' claims arose in the Western District of Texas, where Vybiral resides and his employment contract was executed and performed. Plaintiffs' chosen venue has only a minimal factual nexus to the case. Under these circumstances, Plaintiffs' chosen forum need not be afforded great deference. *See Spiegelberg*, 402 F. Supp. 2d at 790; *Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 990-91 (E.D.N.Y. 1991); *General Accident Ins. Co. v. Travelers Corp.*, 666 F. Supp. 1203, 1206 (N.D. Ill. 1987).

> c.   Possibility of Delay and Prejudice if Case is Transferred

One practical problem to be considered with regard to a transfer of venue is the possibility of delay because "'[a] prompt trial . . . is not without relevance to the convenience of parties and witnesses and the interest of justice.'" *Dupre*, 810 F. Supp. at 827 (quoting *Fannin v. Jones*, 229 F.2d 368, 369-70 (6th Cir.), *cert. denied*, 351 U.S. 938 (1956)); *accord Houston Trial Reports, Inc.*, 85 F. Supp. 2d at 671-72. In *In re Horseshoe Entertainment*, the Fifth Circuit "recognize[d] that in rare and special circumstances a factor of 'delay' or of 'prejudice' might be relevant in deciding the propriety of transfer, but only if such circumstances are established by clear and convincing evidence." 337 F.3d at 434; *see also Spiegelberg*, 402 F. Supp. 2d at 792; *Shoemake*, 233 F. Supp. 2d at 834-35.

The record reflects that Plaintiffs' original state court petition was filed on December 14,

2005. Five days later, Defendant removed the case to federal court and filed its motion to transfer

venue. Under the scheduling order in force in this case, the deadlines for the parties to join new

parties, amend pleadings, designate expert witnesses, complete discovery, file motions, file a joint

pretrial order, and commence trial of this action extend well into the future. Indeed, the deadline

for completion of discovery is June 30, 2006, more than four months from the date of this order,

and the docket call in this case is set for January 7, 2007. Much work remains to be done before

this case can proceed to trial, including discovery and motion practice. *See The Whistler Group,*

*Inc.*, 2003 WL 22939214, at *6. The courts in the Western District of Texas should be able to

configure a similar schedule without causing any substantial delay in this proceeding. Hence, this

factor does not militate against the transfer of this action.

Accordingly, the totality of the private interests factors weigh in favor of transferring this

case to the Western District of Texas, Waco Division.

D.    Public Interest Factors

1.    Administrative Difficulties Flowing from Court Congestion

In addition to private interest considerations, the court must also consider public interest

factors in determining whether a case should be transferred. *See Gilbert*, 330 U.S. at 508; *In re*

*Volkswagen AG*, 371 F.3d at 203; *Purdy*, 356 F. Supp. 2d at 659. One element to be considered

stems from the administrative difficulties that arise when courts become congested with litigation

that should have been handled at its place of origin. *See Gilbert*, 330 U.S. at 508; *Langton*, 282

F. Supp. 2d at 511; *Mohamed*, 90 F. Supp. 2d at 766; *Rock Bit Int'l, Inc. v. Smith Int'l, Inc.*, 957

F. Supp. 843, 844 (E.D. Tex. 1997). The efficient administration of the court system is vital to

all litigants, as well as the public at large. *See Ferens v. John Deere Co.*, 494 U.S. 516, 529 (1990). Statistics maintained by the Administrative Office of the United States Courts reflect that there is no significant difference in the number of pending civil cases between the two courts in question. Although the Eastern District of Texas presently has a slightly shorter median time between filing and trial when compared to the Western District of Texas, courts should not retain cases based on the speed of disposition alone, particularly when a dispute has scant relationship to this district. *See Rock Bit Int'l, Inc.*, 957 F. Supp. at 844. Accordingly, this factor is accorded little weight in the transfer analysis.

### 2.  Local Interest in Having Localized Disputes Decided at Home

Another element to be considered is the local interest in having localized controversies decided at home. *See Gilbert*, 330 U.S. at 509; *In re Volkswagen AG*, 371 F.3d at 203; *Spiegelberg*, 402 F. Supp. 2d at 792; *Purdy*, 356 F. Supp. 2d at 659. This public interest factor favors a transfer, as Vybiral resides in the Western District of Texas and the majority of the events giving rise to this action occurred there.

Additionally, it is contrary to the public interest to encumber the citizens of this district with a case that has only a slight connection to, and little impact upon, the local community. *See In re Volkswagen AG*, 371 F.3d at 206; *Spiegelberg*, 402 F. Supp. 2d at 792; *Shoemake*, 233 F. Supp. 2d at 835; *Hanby*, 144 F. Supp. 2d at 679. "Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gilbert*, 330 U.S. at 508-09; *see In re Volkswagen AG*, 371 F.3d at 206; *Mohamed*, 90 F. Supp. 2d at 766. Accordingly, it is more appropriate to impose the burden of jury duty on citizens of the Western District of Texas than on persons residing in the Eastern District of Texas, as the Western District

25

has a strong local interest in businesses operating in that forum and the employees who work there, while the Eastern District has no similar interest. *See Spiegelberg*, 402 F. Supp. 2d at 792; *Shoemake*, 233 F. Supp. 2d at 835; *Hanby*, 144 F. Supp. 2d at 679; *see also Gilbert*, 330 U.S. at 508-09; *In re Volkswagen AG*, 371 F.3d at 206; *Robertson*, 42 F. Supp. 2d at 659. Thus, adjudicating this matter in the Western District of Texas would unburden a community with no strong local interest in this matter and would alleviate the concern of encumbering citizens of an unaffected forum with jury duty. *See In re Volkswagen AG*, 371 F.3d at 206; *Shoemake*, 233 F. Supp. 2d at 835; *Hanby*, 144 F. Supp. 2d at 679; *Robertson*, 42 F. Supp. 2d at 659; *Dupre*, 810 F. Supp. at 827.

       3.    Familiarity of the Forum with the Law and Avoidance of Unnecessary Problems of Conflict of Laws

There is no conflict of law problem presented, as both of the courts at issue are located in the same state and are governed by the same law. As such, this factor has no bearing on the transfer analysis.

Hence, on balance, the public interest factors favor a transfer of this case to the Western District of Texas, Waco Division.

III.    Conclusion

It is apparent from the original petition that the amount in controversy can reasonably be construed to exceed $75,000.00 and that there is complete diversity between the parties. Plaintiffs have not shown to a 'legal certainty' that the amount in controversy is below the jurisdictional minimum. Therefore, the removal of this case was proper, as it falls within this court's diversity jurisdiction, and remand is not warranted. Accordingly, Plaintiffs' Motion to Remand is DENIED.

Further, Plaintiffs do not contend that they would be denied a fair trial in the Western District of Texas.  In the absence of such a concern, Defendant has met its burden to show that a balance of the relevant factors and circumstances substantially favors a trial in the Western District of Texas.  Venue is proper in the Western District because that is where Vybiral and most of the witnesses reside, where Tri-Supply's and Stock's door mill operations are located, and where a substantial part of the events, as well as the alleged acts and omissions giving rise to Plaintiffs' claims, occurred.  Hence, the convenience of the parties and witnesses, along with the interest of justice, would best be served by transferring this case to the Western District of Texas, Waco Division.  Accordingly, Defendant's motion to transfer venue is GRANTED.

SIGNED at Beaumont, Texas, this 14th day of February, 2006.

*Marcia A. Crone*

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| **RAY MART, INC. D/B/A TRI-SUPPLY COMPANY and WELDON VYBIRAL** | § | |
| | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | **CIVIL ACTION NO. 1:05-CV-855** |
| **v.** | § | |
| | § | |
| **STOCK BUILDING SUPPLY OF TEXAS, L.P.,** | § | |
| | § | |
| | § | |
| *Defendant.* | § | |

## DEFENDANT'S SUPPLEMENTAL BRIEFING
## IN SUPPORT OF ITS MOTION TO TRANSFER VENUE

Pursuant to the Court's order of January 31, 2006, Defendant Stock Building Supply of Texas, L.P. ("Stock") hereby files the briefing requested by the Court. Defendant states as follows:

## I. BACKGROUND

1. Plaintiffs Ray Mart, Inc. d/b/a Tri-Supply Company ("Tri-Supply") and Weldon Vybiral ("Vybiral") (collectively, "Plaintiffs") filed their Original Petition for Declaratory Judgment and Damages on December 14, 2006 in the District Court of Jefferson County, Texas, 172nd Judicial District, alleging breach of contract arising out of Vybiral's Employment Agreement with Stock ("Employment Agreement") and seeking declaratory judgment regarding the enforceability of the non-compete provision in the Employment Agreement. Defendant removed that action to this Court on December 19, 2005 pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

2. On December 19, 2005, Stock also filed Defendant's Expedited Motion to Transfer Venue and Brief in Support ("Defendant's Motion"). Plaintiffs filed Plaintiffs'

ORIGINAL ANSWER OF DEFENDANT - PAGE 1

Response in Opposition to Defendant's Expedited Motion to Transfer Venue ("Plaintiffs' Response") on January 9, 2006. Defendant filed its Reply in Support of Its Motion to Transfer Venue ("Defendant's Reply") on January 17, 2006. Plaintiffs filed Plaintiffs' First Supplement to Their Response in Opposition to Defendant's Expedited Motion to Transfer Venue ("Plaintiffs' Supplemental Response") on January 20, 2006. By order dated January 31, 2006, the Court requested additional briefing identifying the names and addresses of the key witnesses in the case explaining the significance of their testimony.

## II.   KEY WITNESSES

Plaintiffs have alleged two causes of action, both arising from the Employment Agreement, which governed Vybiral's employment with Stock at its Temple, Texas millwork and lumberyard facility.

### A.   Enforceability of the Non-Compete Provision

In order to evaluate the enforceability of the non-compete provision, the Court will apply Texas Business & Commerce Code § 15.50(a), which states as follows:

> [A] covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

Accordingly, the Court first must determine whether the non-compete was "ancillary to or part of an otherwise enforceable agreement at the time it was made." (*Id.*) The key witnesses regarding this prong of the analysis will be Dave Corna, Vybiral's immediate supervisor during his employment with Stock, and Vybiral himself.

Once it determines that the non-compete is ancillary to an otherwise enforceable agreement, the Court must examine whether the non-compete contains "limitations as to time,

DEFENDANT'S SUPPLEMENTAL BRIEFING IN SUPPORT OF ITS MOTION TO TRANSFER VENUE - PAGE 2

geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." *Id.* This inquiry requires the Court to examine the specific restrictions of the non-compete provision to determine whether they are reasonable and whether they impose a greater restraint than is necessary to protect Stock's goodwill or other business interests.

Stock's key witnesses regarding facts underlying the temporal, geographic, and scope limitations analysis will be Dave Corna, Vybiral's immediate supervisor during his employment with Stock, and Reagan Reed, the new location manager at Stock's Temple, Bell County, Texas facility, who took over Vybiral's job duties. Vybiral would be Plaintiffs' key witness with respect to these matters.

Mr. Reed will testify regarding Stock's customer base, including where customers serviced out of the Temple location are located and how Stock's relationships with those customers are managed. This testimony will provide the background information necessary for the Court to analyze whether the temporal and geographic limitations in the non-compete are reasonable and whether those restrictions impose greater restraint than is necessary to protect Stock's goodwill or other business interest. Mr. Reed's office is located at 2501 North General Bruce Dr., Temple, Bell County, Texas 76503. Mr. Reed is in the process of relocating his family to Temple, Bell County, Texas from his former residence in Wolfforth, Lubbock County, Texas. He plans to close on a house at 5808 Aberdeen Court, Temple, Bell County, Texas, 76502 on February 17, 2006, and he is currently residing at the La Quinta Inn, located at 1604 West Barton Ave., Temple, Bell County, Texas 76504. Mr. Reed's current residence and his house are both located within 100 miles of the federal courthouse in Waco.

DEFENDANT'S SUPPLEMENTAL BRIEFING IN SUPPORT OF ITS MOTION TO TRANSFER VENUE - PAGE 3

Mr. Corna will testify regarding Vybiral's job duties as the general manager at Stock's Temple, Texas location and regarding the customer relationships Stock maintains at that location. This testimony will provide the background information necessary for the Court to analyze whether the restrictions in the non-compete provision are reasonable and whether those restrictions impose greater restraint than is necessary to protect Stock's goodwill or other business interest. Mr. Corna's office is located at 5401 Burleson Road, Austin, Travis County, Texas 78744, and his residence is located at 10817 Range View Drive, Austin, Travis County, Texas 78730. Mr. Corna's residence is located less than 100 miles from the federal courthouse in Waco, Texas.

Additionally, the former Stock employees who worked at the Temple millwork and lumberyard facility (including Mason Allen, Albert Brown, Bill Conlon, Glenn Covington, Arturo Donoso, Alan Ellis, Randy Goeke, David Gommert, Jeremy Gommert, Walter Gommert, Shauna Griffin, Glen Kattner, Sheryl Lingo, Kevin Lynch, Eric Vybiral, and Logan Wint) listed in Defendant's and Plaintiffs' Initial Disclosures, attached as Exhibits A and B to Defendant's Reply, live in or very near to Temple, Bell County, Texas, and may be called up on to testify about the key issues of customer relationships, including geography and the time-related considerations of those relationships. Stock's current employees, who may testify to the same topics, also live in or near Temple, Bell County, Texas (including Mary McClellan, Michael Poncik, Tommy Rankin, and Beth Hymer). Each of these individuals lives within 100 miles of the federal courthouse in Waco.

### B.     Breach of Contract Claim

Plaintiffs also allege that Stock failed to pay Vybiral bonuses due him under the Employment Agreement. Stock's key witnesses as to this claim will be Dave Corna and Alicia

Downy, the Payroll Director for Stock Building Supply, Inc.  Mr. Corna will provide testimony regarding the structure of the bonus program at Stock as it applied to Mr. Vybiral.  Ms. Downey will provide testimony regarding the actual payments made to Vybiral.

Ms. Downey's office located at 8020 Arco Corporate Drive, Raleigh, North Carolina. Her residence is also in North Carolina.

### C.     None of Tri-Supply's Employees Are Key Witnesses.

As set forth more fully in Defendant's Motion to Transfer Venue, Plaintiffs' claims arise out of Vybiral's Employment Agreement with Stock as the general manager of Stock's Temple, Texas millwork and lumberyard facility.  Tri-Supply is not a party to that contract.  None of its employees should have any knowledge regarding the bonus structure or payment of bonuses at Stock.  Furthermore, unless Vybiral has already breached his common law and contractual obligations not to disclose confidential information regarding Stock's customers, none of Tri-Supply's employees has any information that would be relevant to the Court's consideration of the enforceability of the non-compete provision of the Employment Agreement.

Additionally, Tri-Supply's President John Raykovich lives in Westlake, Travis County, Texas at his home, located at 17 Sugar Shack Drive, Austin, Texas 78746, which is located just over 100 miles from the federal courthouse in Waco.  Although he owns a home in or near Beaumont, Raykovich spends most of his time in or near Austin.  *See* Deposition Testimony of John Raykovich pp. 15:23-16:28, attached as Exhibit A.

### III. CONCLUSION

WHEREFORE, Defendant requests that this Court grant Defendant's Motion to Transfer Venue.

Respectfully submitted,

**HUNTON & WILLIAMS LLP**


By:   /s/ Bridget A. Blinn
      W. Stephen Cockerham
      State Bar No. 04463300
      Bridget A. Blinn
      State Bar No. 24045510

Energy Plaza, 30th Floor
1601 Bryan Street
Dallas, Texas  75201
214.979.3000
214.880.0011 Fax

**ATTORNEYS FOR DEFENDANT**


**<u>CERTIFICATE OF SERVICE</u>**

    I hereby certify that I have served a true and exact copy of the foregoing Defendant's Supplemental Briefing in Support of its Motion to Transfer Venue, via U.S. Mail return receipt requested, this 6th day of February, 2006, addressed as follows:

        Bruce M. Partain
        WELLS, PEYTON, GREENBERG & HUNT, LLP
        550  Fannin, Sixth Floor, Century Tower
        Beaumont, Texas 77704-3708

            /s/ Bridget A. Blinn
            Bridget A. Blinn

Page 1

UNITED STATES DISTRICT COURT
THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

RAY MART, INC. D/B/A      °
TRI-SUPPLY COMPANY AND     °
WELDON VYBIRAL          °
                         °
VS.                  °      CIVIL ACTION NUMBER
                         °        1:05-CV-855
STOCK BUILDING SUPPLY     °
OF TEXAS, L.P.          °

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL AND VIDEOTAPED DEPOSITION OF

JOHN RAYKOVICH

JANUARY 17, 2006

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL AND VIDEOTAPED DEPOSITION OF JOHN RAYKOVICH,

produced at the instance of the Defendant, Stock

Building Supply of Texas, L.P., in the above-styled and

numbered cause on the 17th day of January, 2006, at

8:58 A.M., before Micheal A. Johnson, Certified

Shorthand Reporter in and for the State of Texas,

reported by machine shorthand, at the offices of

Fredericks-Carroll Reporting & Litigation Services, 7719

Wood Hollow Drive, Suite 156, Austin, Texas, pursuant to

Notice of Oral Deposition, and in accordance with the

Federal Rules of Civil Procedure.

EXHIBIT
A

Page 4

1                    P R O C E E D I N G S

2                    THE VIDEOGRAPHER:  We're on the record

3    January 17th, 2006.  The time is 8:58 a.m.  This is the

4    beginning of tape No. 1.

5                    This is the videotaped deposition of John

6    Raykovich taken in the matter of Ray Mart, Inc., d/b/a

7    Tri-Supply Company, and Weldon Vybiral versus Stock

8    Building Supply of Texas, L.P. in the United States

9    District Court, the Eastern District of Texas, Beaumont

10   Division.  The civil action number is 1:05-CV-855.  Will

11   counsel please identify themselves for the record.

12                    MR. COCKERHAM:  This is Stephen Cockerham

13   with Hunton & Williams on behalf of the defendant Stock.

14                    MR. PARTAIN:  And Bruce Partain on behalf

15   of the plaintiffs Ray Mart, Inc., doing business as

16   Tri-Supply Company, and Weldon Vybiral.

17                    THE VIDEOGRAPHER:  Will the court reporter

18   please swear in the witness.

19                    JOHN RAYKOVICH,

20   having been first duly sworn, testified as follows:

21                    MR. COCKERHAM:  And same agreements as

22   yesterday?

23                    MR. PARTAIN:  Sure.

24                    MR. COCKERHAM:  All right.  And we also

25   agreed yesterday to continue consecutively numbering the

Page 15

1      Q.  All right.  And are there any affiliated or

2  related companies?

3      A.  No, sir.

4      Q.  And are you president of Ray Mart, Inc.?

5      A.  That's correct.

6      Q.  Do you have any other titles besides that?

7      A.  No, sir.

8      Q.  Not CEO or something like that?

9      A.  No, sir.

10     Q.  All right.  And who else is on your management

11  team?

12     A.  Pete Kohler.

13     Q.  How do you spell his last name?

14     A.  K-o-h-l-e-r.

15     Q.  And what's his position?

16     A.  Oh, he don't have -- I mean, basically, he's

17  kind of over the mills and things.  Works the wood part

18  of the business more than all the other product lines.

19     Q.  And -- okay.  And where is he located?

20     A.  Beaumont.

21     Q.  All right.  And you work out of the Beaumont

22  office?

23     A.  No, I'm up here most of the time.

24     Q.  Okay.  Where do you live?

25     A.  At 17 Sugar Shack Drive.

Page 16

1      Q.  Where is -- what --

2      A.  That's in West Lake.

3      Q.  Is that near Austin?

4      A.  Yes, sir.

5      Q.  How far?

6      A.  Oh, it's right next door.  I mean, it's --

7  you -- you can mail it to Austin and it would get there.

8      Q.  How long have you lived in West Lake?

9      A.  About the -- let's see.  April of 2005.  I have

10  a residence in both towns, but I -- you're asking where

11  I spend my predominant amount of time, it's up here.

12      Q.  Okay.  And the other town you have a residence

13  is in Beaumont?

14      A.  Yes, sir.

15      Q.  Why did you move -- and I take it you moved

16  from Beaumont to being primarily here in April 2005; is

17  that correct?

18      A.  That's correct.

19      Q.  And what -- what was the reason for that?

20      A.  I was trying to get some mill -- millwork

21  business going in central Texas.

22      Q.  Okay.  Who are the -- who else is on your

23  management team?

24      A.  Jeff Foreman.

25      Q.  Jeff Foreman?

Page 183

1                    C E R T I F I C A T E

2

3           I, Micheal A. Johnson, Certified Shorthand

4    Reporter in and for the State of Texas, certify that on

5    the 17th day of January, 2006, I reported the Oral and

6    Videotaped Deposition of JOHN RAYKOVICH, after the

7    witness had first been duly cautioned and sworn to

8    testify under oath; said deposition was subsequently

9    transcribed by me and under my supervision and contains

10   a full; true and complete transcription of the

11   proceedings had at said time and place.

12          I further certify that I am neither counsel

13   for nor related to any party in this cause and am not

14   financially interested in its outcome.

15

16          GIVEN UNDER MY HAND AND SEAL of office on this

17   _27_ day of _January_____, 2006.

18

19

20          _Micheal A. Johnson_____
            Micheal A. Johnson, Texas CSR 5891
21          Expiration Date:  12/31/2006
            Firm Registration No. 82
22          Fredericks-Carroll Reporting &
            Litigation Service, Inc.
23          7719 Wood Hollow Drive, Suite 156
            Austin, Texas  78731
24

25   JOB NO. 1348

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

RAY MART, INC. D/B/A TRI-SUPPLY      §
COMPANY and WELDON VYBIRAL,          §
              *Plaintiffs*          §
                          §          **CIVIL ACTION NO. 1:05-cv-855**
v.                                   §          **(Judge M. Crone)**
                          §
STOCK BUILDING SUPPLY OF TEXAS,      §
L.P.,                                §
              *Defendant*          §

## PLAINTIFFS' SECOND SUPPLEMENT TO THEIR RESPONSE IN OPPOSITION TO DEFENDANT'S EXPEDITED MOTION TO TRANSFER VENUE

PURSUANT TO the court's January 31, 2006 Order instructing the parties to submit

briefing to the court identifying the name and address of the key witnesses in this case and

explaining the significance of their testimony, Plaintiffs, Ray Mart, Inc. D/b/a Tri-Supply

Company ("Tri-Supply") and Weldon Vybiral ("Vybiral") submit the following:

1.   Weldon Vybiral
    14120 Guyton
    Moody, Texas 76557
    (254) 771-3500

    Mr. Vybiral is a plaintiff in this lawsuit. His oral deposition was taken in this litigation on January 16, 2006. As described by Mr. Vybiral in his oral deposition, on January 1, 2006, he became employed by Tri-Supply as the supervisor of Tri-Supply's door manufacturing mill operations for the state of Texas. Although his home is in Moody, Texas, he travels to the Tri-Supply headquarters in Beaumont, Texas and Tri-Supply's door manufacturing mill operations sites in Conroe, Temple, Austin, and San Antonio. Since his employment by Tri-Supply, Mr. Vybiral has traveled to Beaumont, Texas and Tri-Supply's headquarters on at least two occasions during the period of time between his employment (January 1, 2006) and the date of his deposition (January 16, 2006). Mr. Vybiral's responsibilities at Tri-Supply include obtaining the proper equipment for the door mill, getting the equipment assembled and running efficiently and supporting the different general managers at the door manufacturing mills.

2.  Mr. John Raykovich
    7220 Eastex Freeway
    Beaumont. Texas 77707
    (409) 835-4744

    President of Ray Mart, Inc. d/b/a Tri-Supply Company. Mr. Raykovich's oral
    deposition was taken January 17, 2006 in this litigation. During his oral
    deposition, Mr. Raykovich testified that he was the person on behalf of Tri-
    Supply who hired Mr. Vybiral. Mr. Vybiral reports directly to Mr. Raykovich.
    Mr. Raykovich directs Mr. Vybiral's activities on behalf of Tri-Supply from his
    office in Beaumont, Texas. Mr. Raykovich has a home and his office in
    Beaumont, Texas. Shortly after December 9, 2005, Tri-Supply received a letter
    from Stock's lawyer advising Tri-Supply that Mr. Vybiral had an employment
    contract with Stock. The letter from Stock's lawyer was addressed to Tri-
    Supply's headquarters in Beaumont. Texas. Tri-Supply's accounting, payroll,
    and human resource department is located in Beaumont, Texas. Mr. Vybiral's
    payroll check from Tri-Supply is prepared in Beaumont. Texas.

3.  Mr. David Corna
    c/o W. Stephen Cockerham
    Hunton & Williams, L.L.P.
    1601 Bryan, 30th Floor
    Dallas, Texas 75201

    Mr. Corna is the District Manager for Stock Building Supply of Texas, L.P. He
    was Weldon Vybiral's supervisor while Mr. Vybiral was employed by Stock. Mr.
    Corna's duties include the supervision of Stock's Texas locations which include
    Houston, McAllen, Austin, Temple, Lubbock, San Antonio and Grand Prairie. As
    set forth in Stock's Original Answer, Stock admits that it is transacting business
    in Texas, including Beaumont, Jefferson County, Texas. *See paragraph 4 of
    Defendant's Answer and Affirmative Defenses.* As the District Manager, Mr.
    Corna supervises Stock's activities in Beaumont, Jefferson County, Texas. It is
    anticipated that Mr. Corna will testify about the harm, if any, and the damages, if
    any, to Stock's good will or business interest as a result of Mr. Vybiral's
    employment with Tri-Supply.

4.  Larry Busceme
    7220 Eastex Freeway
    Beaumont, Texas 77707
    (409) 835-7966

    Mr. Busceme is the Director of Human Resources for Tri-Supply. Mr. Busceme
    has information regarding Tri-Supply's efforts to recruit employees for its door
    mill operations in Texas, including Waco and Temple. Mr. Busceme will offer
    testimony to refute Stock's assertion that Mr. Vybiral solicited Stock employees
    to leave Stock and begin working for Tri-Supply.

#### Summary

From the Plaintiffs' perspective, these four individuals are the key witnesses in this case. The other individuals identified by Plaintiffs in their Initial Disclosures have knowledge of certain facts. However, the primary sources of factual information in this case will be the testimony of the four individuals listed above.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, RAY MART, INC., D/B/A TRI-SUPPLY COMPANY and WELDON VYBIRAL, respectfully request that this court deny Defendant's Expedited Motion to Transfer Venue.

Respectfully submitted,

By_____

Bruce M. Partain
Texas Bar No. 15548400
Gary J. Linthicum
Texas Bar No. 00794174

ATTORNEY IN CHARGE FOR PLAINTIFFS,
RAY MART, INC. D/B/A TRI-SUPPLY
COMPANY and WELDON VYBIRAL

OF COUNSEL:

WELLS, PEYTON, GREENBERG
& HUNT, L.L.P.
P.O. Box 3708
Beaumont, Texas 77704-3708
Tel. (409) 838-2644
Fax. (409) 838-0416

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Plaintiffs' Second

Supplement to Their Response in Opposition to Defendant's Expedited Motion to Transfer

Venue has been sent as follows:

**VIA E-FILE NOTIFICATION and**
**FAX NO. (214) 880-0011**
Mr. W. Stephen Cockerham
Ms. Bridget A. Blinn
Hunton & Williams LLP
Energy Plaza, 30th Floor
1601 Bryan Street
Dallas, Texas 75201-3402
*Attorney for Defendant,*
*Stock Building Supply of Texas, L.P.*

DATED this _6th_ day of February, 2006.

Bruce M. Partain

**UNITED STATES DISTRICT COURT          EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| RAY MART, INC. d/b/a Tri-Supply Company and WELDON VYBIRAL, | § § § | |
| Plaintiffs, | § § | |
| *versus* | § § | CIVIL ACTION NO. 1:05-CV-855 |
| STOCK BUILDING SUPPLY OF TEXAS, L.P., | § § § | |
| Defendant. | § § | |

**ORDER**

Currently, pending before the court is Defendant Stock Building Supply of Texas, L.P.'s Expedited Motion to Transfer Venue.  On or before February 6, 2006, the parties shall submit briefing to the court identifying the name and address of the key witnesses in this case and explaining the significance of their testimony.

SIGNED at Beaumont, Texas, this 31st day of January, 2006.

*Marcia A. Crone*
_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| RAY MART, INC. D/B/A TRI-SUPPLY COMPANY and WELDON VYBIRAL, *Plaintiffs* | § § § § | |
| v. | § § | CIVIL ACTION NO. 1:05-cv-855 (Judge M. Crone) |
| STOCK BUILDING SUPPLY OF TEXAS, L.P., *Defendant* | § § § § | |

## PLAINTIFFS' FIRST SUPPLEMENT TO THEIR RESPONSE IN OPPOSITION TO DEFENDANT'S EXPEDITED MOTION TO TRANSFER VENUE

I.
Additional Time Needed to Complete Oral Deposition
of Stock's Representative, Mr. David Corna

During the January 13, 2006 Status Conference, the court requested that the parties submit by January 20, 2006 any additional materials concerning the Defendant's Motion to Transfer Venue. Although counsel worked diligently on January 16 and 17, 2006, during the oral depositions of Weldon Vybiral, and John Raykovich, President of Tri-Supply, the parties ran out of time before Stock's counsel had to return to Dallas, Texas for the birth of his child. Therefore, the oral deposition of Mr. David Corna, the representative of the Defendant, Stock Building Supply of Texas, L.P., could not be taken on January 16 or 17, 2006. Mr. Corna's deposition has been rescheduled by agreement for January 30, 2006. Since Mr. Corna's affidavit was submitted in support of Defendant's Expedited Motion to Transfer Venue, Plaintiffs request that the court defer ruling on the Defendant's Motion to Transfer Venue until the completion of Mr. Corna's oral deposition on January 30, 2006. This will enable Plaintiffs to supplement their Response in Opposition to Defendant's Expedited Motion to Transfer Venue.

II.

### Plaintiffs' Initial Disclosure

As also requested by the court, Tri-Supply and Vybiral submit their Initial Disclosures as *Exhibit 1* to this first supplement. As set forth in Plaintiffs' Initial Disclosures, Tri-Supply and Vybiral identify forty (40) individuals likely to have discoverable information that the disclosing party may use to support its claims or defenses. Mr. David Corna (No. 5) and Ms. Beverly Malone (No. 39) are believed to be current Stock employees. Twelve of the individuals listed by Plaintiffs are currently employed by Tri-Supply. As set forth in its Initial Response, Tri-Supply will make each of these individuals available for oral deposition at a location convenient to Defendant's attorney, and for trial in Beaumont, Texas. The remaining individuals listed in Plaintiff's Initial Disclosures are former Stock employees. These individuals are located in Austin, San Antonio, Houston, Pasadena, or Grand Prairie, Texas. As disclosed by Mr. Vybiral in his oral deposition, Mr. Vybiral has spoken with several of these individuals. These individuals are willing to testify on Mr. Vybiral's behalf and will cooperate and make themselves available for oral depositions and trial. Therefore, Stock cannot complain that it will be unable to obtain oral depositions or compel the witnesses to attend the trial of this case in Beaumont, Texas.

III.

### Defendant's Initial Disclosures

Included with the Defendant's Reply in Support of its Motion to Transfer Venue as Exhibit A is the Defendant's Initial Disclosure. Stock identifies twenty-four (24) individuals likely to have discoverable information that Stock may use to support its claims or defenses. Seventeen (17) of the twenty-four (24) individuals are now employed by Tri-Supply. As noted

-2-

above. Tri-Supply will make each of these individuals available for oral depositions at a location convenient to Stock's counsel, and for the trial of this case in Beaumont, Texas. The other seven (7) individuals identified in Defendant's Initial Disclosure are currently employed by Stock. Two of these seven (7) individuals, Mr. Corna (No. 4) and Reagan Reed (No. 21) are identified with the Dallas, Texas address of Stock's counsel.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, RAY MART, INC., D/B/A TRI-SUPPLY COMPANY and WELDON VYBIRAL respectfully request that this court defer ruling on the Defendant's Expedited Motion to Transfer Venue until after the January 30, 2006 oral deposition of Mr. David Corna, Stock's Representative, and that this court deny Defendant's Expedited Motion to Transfer Venue.

Respectfully submitted,

By _____

Bruce M. Partain
Texas Bar No. 15548400
Gary J. Linthicum
Texas Bar No. 00794174

ATTORNEY IN CHARGE FOR PLAINTIFFS,
RAY MART, INC. D/B/A TRI-SUPPLY
COMPANY and WELDON VYBIRAL

OF COUNSEL:

WELLS, PEYTON, GREENBERG
& HUNT, L.L.P.
P.O. Box 3708
Beaumont, Texas 77704-3708
Tel. (409) 838-2644
Fax. (409) 838-0416

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Plaintiffs' First

Supplement to Their Response in Opposition to Defendant's Expedited Motion to Transfer

Venue has been sent as follows:

**VIA E-FILE NOTIFICATION and**
**FAX NO. (214) 880-0011**
Mr. W. Stephen Cockerham
Ms. Bridget A. Blinn
Hunton & Williams LLP
Energy Plaza, 30th Floor
1601 Bryan Street
Dallas, Texas 75201-3402
*Attorney for Defendant,*
*Stock Building Supply of Texas, L.P.*

DATED this _20th_ day of January, 2006

Bruce M. Partain

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

RAY MART, INC. D/B/A TRI-SUPPLY    §
COMPANY and WELDON VYBIRAL,    §
                *Plaintiffs*    §
                      §
v.                     §    CIVIL ACTION NO. 1:05-cv-855
                    §        (Judge M. Crone)
STOCK BUILDING SUPPLY OF TEXAS,    §
L.P.,                   §
             *Defendant*    §

## PLAINTIFFS' INITIAL DISCLOSURES

TO:   Defendant, STOCK BUILDING SUPPLY OF TEXAS, L.P., by and through its attorney
of record, W. Stephen Cockerham, Hunton & Williams, L.L.P., 1601 Bryan, 30th Floor,
Dallas, Texas 75201, via Federal Express

COME NOW, Plaintiffs, RAY MART, INC., d/b/a TRI-SUPPLY COMPANY ("Tri-

Supply") and WELDON VYIRAL ("Vybiral"), and pursuant to Rule 26(a)(1), F.R.C.P., make

their Initial Disclosure as follows:

A)    The name, and if known, address and telephone number of each individual likely to
have discoverable information that the disclosing party may use to support its claims or
defenses, unless solely for impeachment, identifying the subjects of the information.

    1.    Weldon Vybiral
       14120 Guyton
       Moody, Texas 76557
       (254) 771-3500
       *Plaintiff in this lawsuit. See Mr. Vybiral's discovery responses and affidavit in*
       *support of Plaintiffs' Motion to Remand.*

    2.    John Raykovich
       7220 Eastex Freeway
       Beaumont, Texas 77707
       (409) 835-4744
       *President of Ray Mart, Inc. d/b/a Tri-Supply Company. Knowledge of Tri-Supply*
       *Company's efforts to establish door mills in Texas, and Mr. Vybiral's association*
       *with Tri-Supply Company.*



EXHIBIT
1

3.   Larry Busceme
     7220 Eastex Freeway
     Beaumont, Texas 77707
     (409) 835-7966
     *Director of Human Resources for Tri-Supply. Mr. Busceme has information
     regarding Tri Supply's efforts to recruit employees for its door mill operations in
     Texas, including Waco and Temple.*

4.   John Wilkerson
     1 Tall Oaks Trail
     Austin, Texas 78737
     (512) 832-8746
     *Former Stock employee. For a period of time after January 2003, he was Mr.
     Tybiral's supervisor. Mr. Wilkerson had an Employment Contract with Stock and
     went to work for Trio Tech, a customer of Stock.*

5.   Dave Corna
     *District Manager for Stock. Mr. Corna communicated with Mr. Weldon Tybiral
     about Mr. Tybiral's resignation from Stock. See affidavit of Mr. Corna filed with
     Stock's Expedited Motion to Transfer Venue.*

6.   Mike Perkins
     2550 Heather Path
     San Antonio, Texas 78232
     (210) 496-0255
     *Former General Manager for Stock's San Antonio, Texas store. Mr. Perkins had
     an Employment Contract with Stock. After being dismissed by Stock, Mr. Perkins
     went to work for a competitor of Stock.*

7.   Joe Gehring
     (832) 368-7102
     *Former General Manager of Stock's Houston, Texas facility. Mr. Gehring signed
     an Employment Agreement Contract with Stock.*

8.   Kelly Read
     208 Eagle Court
     Bedford, Texas 76021
     (817) 577-8460
     *Former General Manager of Stock's Grand Prairie, Texas facility. After leaving
     Stock, Ms. Read went to work for a competitor of Stock.*

9.   Bill Bryant
     (972) 262-1331
     *Former General Manager of Stock's Grand Prarie, Texas facility. After leaving
     Stock, Mr. Bryant went to work for a competitor of Stock.*

-2-

10.  Dale Jorgensen
     3823 Quitman
     Pasadena, Texas 77505
     (281) 998-7361
     *Former lumber manager of Stock's Houston, Texas facility. After leaving Stock,*
     *Mr. Jorgensen went to work for a competitor of Stock.*

11.  Lee Raspberry
     *Former Stock salesman in San Antonio, Texas*

12.  Beau Hall
     *Former Stock salesman in San Antonio, Texas*

13.  Danny Quiroz
     *Former Stock salesman in San Antonio, Texas*

14.  Tommy Hunt
     *Former Stock salesman in San Antonio, Texas*

15.  Johnny Moore
     *Former Stock salesman in San Antonio, Texas*

16.  Greg Maus
     *Former Stock General Manager in San Antonio, Texas*

17.  Ted Eickelburg
     *Former Stock General Manager in San Antonio, Texas*

18.  Tim Crouer
     *Former Stock General Manager in Houston, Texas*

19.  Kevin Foe
     *Former Stock Market Manager in Houston, Texas*

20.  David Stroud
     19906 Shavon Springs Drive
     Spring, Texas 77388
     (281) 355-0164
     *Former Stock Purchasing Manager in Houston, Texas*

21.  Jay Lucas
     149 Chaparrall Estates
     Shady Shores, Texas 76208
     (972) 670-9134
     *Former Stock General Manager in Grand Prairie, Texas*

-3-

22.   Logan Ferguson
      *Former Stock Salesman in Grand Prairie, Texas*

23.   Chris Matan
      *Former Stock Salesman in Grand Prairie, Texas*

24.   Sean Collard
      *Former Stock Marketing Manager in Grand Prairie, Texas*

25.   Joe Marmon
      *Former Stock Sales Manager in Austin, Texas*

26.   Wayne Mohr
      *Former Stock Production Manager in Austin, Texas*

27.   Jerry Dunkleys
      *Former Stock Salesman in Austin, Texas*

28.   Jeff Foust
      *Former Stock Salesman in Austin, Texas*

29.   Jay Anderson
      *Former Stock Salesman in Austin, Texas*

30.   Steve Fisher
      *Former Stock Salesman in Austin, Texas*

31.   Sheryl Lingo
      500 East Ridge
      Temple, Texas 76502
      (254) 771-5114
      *Former Stock employee who is now employed by Tri-Supply.*

32.   Alan Ellis
      500 East Ridge
      Temple, Texas 76502
      (254) 771-5114
      *Former Stock employee who is now employed by Tri-Supply.*

33.   Logan Wint
      500 East Ridge
      Temple, Texas 76502
      (254) 771-5114
      *Former Stock employee who is now employed by Tri-Supply*

-4-

34.     Bill Conlon
        500 East Ridge
        Temple, Texas 76502
        (254) 771-5114
        *Former Stock employee who is now employed by Tri-Supply.*

35      Randy Goeke
        500 East Ridge
        Temple, Texas 76502
        (254) 771-5114
        *Former Stock employee who is now employed by Tri-Supply.*

36.     Glenn D. Covington
        500 East Ridge
        Temple, Texas 76502
        (254) 771-5114
        *Former Stock employee who is now employed by Tri-Supply.*

37.     Mason Allen
        500 East Ridge
        Temple, Texas 76502
        (254) 771-5114
        *Former Stock employee who is now employed by Tri-Supply.*

38.     Eric Vybiral
        500 East Ridge
        Temple, Texas 76502
        (254) 771-5114
        *Former Stock employee who is now employed by Tri-Supply.*

39.     Beverly Malone
        *Stock Human Resources Department Representative   See Weldon Vybiral's
        Response to Interrogatory No. 21 regarding Malone*

40.     Bruce M. Partain
        Wells, Peyton, Greenberg & Hunt, L.L.P.
        550 Fannin, Suite 600
        Beaumont, Texas 77701
        (409) 838-2644
        *Attorney for Plaintiffs, Ray Mart, Inc. d/b/a Tri-Supply Company and Weldon
        Vybiral*

-5-

B)   A copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment.

:   The January 13, 2003 Employment Agreement made the basis of this lawsuit.

2.   Stock check no. 02874 payable to Weldon Vybiral dated 3/21/03 for $48,500.00, miscellaneous payment from Jeld Wen bonus to Mr. Vybiral.

3.   Stock check no 312152 payable to Weldon Vybiral dated 9/24/04 for $31,526.00 bonus payment

4.   Stock check no. 531993 payable to Weldon Vybiral dated 10/7/05 for $11,311.79 bonus payment.

5.   Correspondence dated December 9, 2005 from S. Cockerham, attorney for Stock, addressed to Weldon Vybiral.

6.   Correspondence dated December 9, 2005 from S. Cockerham, attorney for Stock, to Tri-Supply Company.

7.   Newspaper advertisements for employment positions at Tri-Supply door mill operations.

C)   A computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered.

Mr. Weldon Vybiral seeks damages for additional compensation in the form of bonuses for the years 2004 and 2005. An amount of $16,974 for the fiscal year ending July 31, 2004 which should have been paid to Weldon Vybiral by Stock. This amount is the difference between the $48,500 paid to Mr. Vybiral by JELD-WEN and the $31,526 amount paid to him by Stock. For the fiscal year ending July 31, 2005, Stock should have paid Mr. Vybiral an additional $37,188.21 ($48,500 - $11,311.79(amount paid)). See Weldon Vybiral's Affidavit in Support of Plaintiffs' Motion to Remand.

D)   For inspection and copying as under rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action to indemnify or reimburse for payments made to satisfy the judgment.

None.

-6-

Respectfully submitted,

WELLS, PEYTON, GREENBERG
& HUNT, L.L.P.

By: _____
Bruce Partain
Texas State Bar # 15548400
Terrence Allison
Texas State Bar #24043533
550 Fannin, Suite 600
Beaumont, Texas 77701
(409) 838-2644
Fax: (409) 838-0416

ATTORNEYS FOR PLAINTIFFS,
RAY MART, INC. D/B/A TRI-SUPPLY
COMPANY AND WELDON VYBIRAL

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Plaintiffs' Initial

Disclosures has been sent as follows:

**VIA FEDERAL EXPRESS**
W. Stephen Cockerman
Bridget Blinn
Energy Plaza, 30th Floor
1601 Bryan Street
Dallas, Texas 75201
*Attorneys for Defendant*
*Stock Building Supply of Texas, L.P.*

DATED this _11th_ day of January, 2006

_____
Bruce M. Partain

-7-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| RAY MART, INC. D/B/A TRI-SUPPLY COMPANY and WELDON VYBIRAL | § § § | |
| *Plaintiffs*, | § § | |
| | § | CIVIL ACTION NO. 1:05-cv-855 |
| v. | § § | |
| STOCK BUILDING SUPPLY OF TEXAS, L.P., | § § § | |
| *Defendant.* | § § § | |

## DEFENDANT'S REPLY IN SUPPORT OF
## ITS MOTION TO TRANSFER VENUE

Defendant Stock Building Supply of Texas, L.P. ("Stock") hereby files its Reply in Support of its Motion to Transfer Venue ("Defendant's Motion") to the Western District of Texas, Waco Division. In support of this transfer, Defendant would show the court as follows:

### I. BACKGROUND

Plaintiffs' Petition contains two causes of action, both arising out of the Employment Agreement which governed Vybiral's employment with Stock in Temple, Bell County, Texas: (1) a declaratory judgment action establishing Vybiral's rights and obligations to Stock under the Employment Agreement, including a non-compete provision restraining Vybiral from working for or being involved with a competitive business within a 100 mile radius of Defendant's Temple facility and (2) a breach of contract action related to the alleged underpayment of certain bonuses. It is in the interest of justice that this case be transferred to the Western District of Texas, where the suit might have been brought and where the events underlying the cause of action took place.

## II. ARGUMENT

This court may transfer this case to any other district in which it might have been brought for the convenience of the parties and witnesses, in the interests of justice. 28 U.S.C. 1441(a). Stock's Motion to Transfer Venue contains a lengthy discussion of multiple factors used by this district in weighing in favor of transferring venue. Plaintiffs raised no issues in their Response to Defendant's Motion suggesting that it is contrary to the interest of justice for this case to be transferred, nor did they refute Defendant's argument that the convenience of the witnesses will be best served by transferring the case. Of the nine factors enumerated by the Eastern District of Texas, six weigh heavily in favor of transferring venue, as set forth in Defendant's Expedited Motion to Transfer Venue and Brief in Support ("Defendant's Motion"). Only plaintiff's choice of forum weighs against transfer. As explained below, this factor is clearly outweighed by the others.[1]

### A. Other Considerations Clearly Outweigh Plaintiffs' Choice of Forum.

The Eastern District has repeatedly noted that where none or few of the operative facts underlying the cause of action occur within the forum chosen by the plaintiff, that forum is entitled to less consideration. *TV-3, Inc. v. Royal Insurance Company of Am.*, 28 F.Supp. 2d 407, 411 (E.D. Tex. 1998) (citing *Fletcher v. Exxon Shipping Co.*, 727 F. Supp. 1086, 1087 (E.D. Tex. 1989); *Fletcher v. Southern Pacific Transp. Co.*, 648 F. Supp. 1400, 1404 (E.D. Tex. 1986)). Plaintiffs assert in their Original Petition (and cite to the same in their Response) that

---

[1] Plaintiff's choice of forum is not controlling when it is clearly outweighed by other considerations. Plaintiffs' reliance on *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253 (11th Cir. 1996) is misplaced. In *Robinson*, the district court determined that transferring the case would merely shift inconvenience from one party to the other, and the Eleventh Circuit upheld the decision not to transfer, noting that the court must have found that plaintiff's choice of forum was not outweighed by other factors. *Id.* at 260. *Robinson* provides no support for plaintiff's position in this case where plaintiff's choice of forum is clearly outweighed by other factors.

"this lawsuit arises from facts and events occurring in Beaumont, Jefferson County, Texas." Plaintiff's Original Petition, p. 2. However, Plaintiffs fail to identify any operative <u>facts</u> underlying the cause of action which occurred in plaintiff's chosen forum. Rather, Plaintiffs assert that Stock has a connection to Beaumont, Jefferson County, Texas because it transacts some business there. This fact is completely irrelevant to the question of the best venue for this case—Stock's business in Beaumont is not implicated in either cause of action by Plaintiffs. Not one of the facts underlying the case took place there.

Even a cursory read of Plaintiffs' Original Petition reveals that the underlying facts took place in Temple, Bell County, Texas, which is located in the Western District of Texas, Waco Division. The Employment Agreement in question governed Vybiral's employment as the general manager of Stock's Temple, Bell County, Texas facility. Plaintiffs' Petition, pp. 2-4. Vybiral had worked for JELD-WEN, inc. in Temple, Texas for thirteen years prior to his employment with Stock. Plaintiff's Petition, p. 2. Plaintiffs allege that Stock micromanaged the Temple, Texas facility and failed to adequately compensate Vybiral for his work there. *Id.* at 3. Aside from the statement on page 1 regarding the parties, and the venue and jurisdiction statement on page 2, Beaumont, Jefferson County, Texas, appears nowhere in Plaintiff's Petition. Events occurring in Temple, Bell County, Texas—in the Western District—appear throughout the factual background of the Petition.

As detailed more fully in Defendant's Motion, the other factors enumerated by the Eastern District clearly outweigh plaintiffs' choice of forum in this case.

**B. The Convenience of the Witnesses of Both Parties Will Be Best Served by Transfer to the Western District.**

Plaintiffs' Initial Disclosures identified nine witnesses who reside in or near Temple, Texas according to the addresses disclosed.[2]  *See* Plaintiffs' Initial Disclosure attached as Exhibit A.  All but a handful of Defendant's witnesses reside in or near Temple, Texas, and none of them reside in Jefferson County.  *See* Defendant's Initial Disclosure, attached as Exhibit B. Plaintiffs acknowledge that the key witnesses in this case are "former Stock employees who may now be employed by Tri-Supply."  Plaintiffs' Response, p. 3.  Both Plaintiffs and Defendant identified many such employees in their Initial Disclosures, which were served after Defendant's Motion, and the vast majority of these employees live in the Western District of Texas.

Although Plaintiffs can require those former employees it now employs to travel, this ability speaks to the convenience of Plaintiffs, not the convenience of the witnesses, who would be required to leave their families and personal lives to travel to the Eastern District of Texas, over 200 miles[3] from their families, for trial.

Additionally, Plaintiffs' Response entirely ignores the second and third factors the court should consider:  (2) the availability of compulsory process for unwilling witnesses and (3) the cost of making willing witnesses available at trial.  If Tri-Supply chose not to make its

---

[2] Plaintiffs listed many witnesses without disclosing their last known address in their Initial Disclosures.

[3] Plaintiffs misplace their reliance on *Crystal Semiconductor Corp. v. OPTi, Inc.*, 44 U.S.P.Q.2d 1497 (W.D. Tex. 1997) in which the Western District of Texas declined to transfer a patent case to California, noting that the "measly" three hour plane ride from California to Austin did not justify transfer when some of the witnesses would be flying from halfway around the world, and the plaintiff who had filed the patent lawsuit (and the patent inventors) resided in Austin.  In that case, either the plaintiffs would by flying to California, or the defendants would be flying to Austin, and one witness was flying from Singapore regardless.  *Crystal Semiconductor* is simply not on point.  In this case, most of the witnesses for both parties reside in the Western District.

employees available, these witnesses would be outside the court's subpoena range, and Stock would be unable to compel their attendance at trial.   Additionally, there is no question that bringing these witnesses to the Eastern District is more expensive than having the trial in the Western District, where the majority of them live.[4]

### III. CONCLUSION

Wherefore, in consideration of the foregoing, Defendant respectfully requests that the Court grant its Expedited Motion to Transfer Venue and that the Court expedite its consideration of this motion.

---

[4] In addition to witnesses in Temple, witnesses located in San Antonio and Austin also reside in the Western District and are more likely to be within the Western District's subpoena range.

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO TRANSFER VENUE - PAGE 5

Respectfully submitted,

**HUNTON & WILLIAMS LLP**

By:_____/s/ Bridget A. Blinn_____
        W. Stephen Cockerham
        Lead Attorney
        State Bar No. 04463300
        Bridget A. Blinn
        State Bar No. 24045510

Energy Plaza, 30th Floor
1601 Bryan Street
Dallas, Texas  75201
214.979.3000
214.880.0011 Fax

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

  I hereby certify that I have served a true and exact copy of the foregoing Defendant's

Reply in Support of Its Motion to Transfer Venue via fax and U.S. mail this 17th day of January,

2006, addressed as follows:

                Bruce M. Partain
                WELLS, PEYTON, GREENBERG & HUNT, LLP
                550 Fannin, Sixth Floor, Century Tower
                Beaumont, Texas 77704-3708


                ____/s/ Bridget A. Blinn_____
                Bridget A. Blinn

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| RAY MART, INC. D/B/A TRI-SUPPLY | § | |
| COMPANY and WELDON VYBIRAL, | § | |
| *Plaintiffs* | § | |
| | § | CIVIL ACTION NO. 1:05-cv-855 |
| | § | (Judge M. Crone) |
| v. | § | |
| | § | |
| STOCK BUILDING SUPPLY OF TEXAS, | § | |
| L.P., | § | |
| *Defendant* | § | |

## PLAINTIFFS' INITIAL DISCLOSURES

TO:    Defendant, STOCK BUILDING SUPPLY OF TEXAS, L.P., by and through its attorney
of record, W. Stephen Cockerham, Hunton & Williams, L.L.P., 1601 Bryan, 30th Floor,
Dallas, Texas 75201, via Federal Express

COME NOW, Plaintiffs, RAY MART, INC., d/b/a TRI-SUPPLY COMPANY ("Tri-

Supply") and WELDON VYIRAL ("Vybiral"), and pursuant to Rule 26(a)(1), F.R.C.P., make

their Initial Disclosure as follows:

A)    The name. and if known, address and telephone number of each individual likely to
have discoverable information that the disclosing party may use to support its claims or
defenses, unless solely for impeachment, identifying the subjects of the information.

   1.    Weldon Vybiral
          14120 Guyton
          Moody, Texas 76557
          (254) 771-3500
          *Plaintiff in this lawsuit. See Mr. Vybiral's discovery responses and affidavit in
          support of Plaintiffs' Motion to Remand.*

   2.    John Raykovich
          7220 Eastex Freeway
          Beaumont, Texas 77707
          (409) 835-4744
          *President of Ray Mart, Inc. d/b/a Tri-Supply Company. Knowledge of Tri-Supply
          Company's efforts to establish door mills in Texas, and Mr. Vybiral's association
          with Tri-Supply Company.*



EXHIBIT
B

3.    Larry Busceme
      7220 Eastex Freeway
      Beaumont, Texas 7707
      (409) 835-7966
      *Director of Human Resources for Tri-Supply. Mr. Busceme has information regarding Tri-Supply's efforts to recruit employees for its door mill operations in Texas, including Waco and Temple.*

4.    John Wilkerson
      1 Tall Oaks Trail
      Austin, Texas 78737
      (512) 832-8746
      *Former Stock employee. For a period of time after January 2003, he was Mr. Vybiral's supervisor. Mr. Wilkerson had an Employment Contract with Stock and went to work for Trim Tech, a customer of Stock.*

5.    Dave Corna
      *District Manager for Stock. Mr. Corna communicated with Mr. Weldon Vybiral about Mr. Vybiral's resignation from Stock. See affidavit of Mr. Corna filed with Stock's Expedited Motion to Transfer Venue.*

6.    Mike Perkins
      2550 Heather Path
      San Antonio, Texas 78232
      (210) 496-0255
      *Former General Manager for Stock's San Antonio, Texas store. Mr. Perkins had an Employment Contract with Stock. After being dismissed by Stock, Mr. Perkins went to work for a competitor of Stock.*

7.    Joe Gehring
      (832) 368-7402
      *Former General Manager of Stock's Houston, Texas facility. Mr. Gehring signed an Employment Agreement Contract with Stock.*

8.    Kelly Read
      208 Eagle Court
      Bedford, Texas 76021
      (817) 577-8460
      *Former General Manager of Stock's Grand Prairie, Texas facility. After leaving Stock, Ms. Read went to work for a competitor of Stock.*

9.    Bill Bryant
      (972) 262-1331
      *Former General Manager of Stock's Grand Prarie, Texas facility. After leaving Stock, Mr. Bryant went to work for a competitor of Stock.*

-2-

10.   Dale Jorgensen
      3823 Quitman
      Pasadena, Texas 77505
      (281) 998-7361
      *Former lumber manager of Stock's Houston, Texas facility. After leaving Stock,*
      *Mr. Jorgensen went to work for a competitor of Stock.*

11.   Lee Raspberry
      *Former Stock salesman in San Antonio, Texas*

12.   Beau Hall
      *Former Stock salesman in San Antonio, Texas*

13.   Danny Quiroz
      *Former Stock salesman in San Antonio, Texas*

14.   Tommy Hunt
      *Former Stock salesman in San Antonio, Texas*

15.   Johnny Moore
      *Former Stock salesman in San Antonio, Texas*

16.   Greg Maus
      *Former Stock General Manager in San Antonio, Texas*

17.   Ted Eickelburg
      *Former Stock General Manager in San Antonio, Texas*

18.   Tim Crouer
      *Former Stock General Manager in Houston, Texas*

19.   Kevin Foe
      *Former Stock Market Manager in Houston, Texas*

20.   David Stroud
      19906 Shavon Springs Drive
      Spring, Texas 77388
      (281) 355-0164
      *Former Stock Purchasing Manager in Houston, Texas*

21.   Jay Lucas
      149 Chaparrall Estates
      Shady Shores, Texas 76208
      (972) 670-9134
      *Former Stock General Manager in Grand Prairie, Texas*

22.   Logan Ferguson
      *Former Stock Salesman in Grand Prairie, Texas*

23.   Chris Martin
      *Former Stock Salesman in Grand Prairie, Texas*

24.   Sean Collard
      *Former Stock Marketing Manager in Grand Prairie, Texas*

25.   Joe Marmon
      *Former Stock Sales Manager in Austin, Texas*

26.   Wayne Mohr
      *Former Stock Production Manager in Austin, Texas*

27.   Jerry Dunkleys
      *Former Stock Salesman in Austin, Texas*

28.   Jeff Foust
      *Former Stock Salesman in Austin, Texas*

29.   Jay Anderson
      *Former Stock Salesman in Austin, Texas*

30.   Steve Fisher
      *Former Stock Salesman in Austin, Texas*

31.   Sheryl Lingo
      500 East Ridge
      Temple, Texas 76502
      (254) 771-5114
      *Former Stock employee who is now employed by Tri-Supply.*

32.   Alan Ellis
      500 East Ridge
      Temple, Texas 76502
      (254) 771-5114
      *Former Stock employee who is now employed by Tri-Supply.*

33.   Logan Wint
      500 East Ridge
      Temple, Texas 76502
      (254) 771-5114
      *Former Stock employee who is now employed by Tri-Supply.*

-4-

34.    Bill Conlon
       500 East Ridge
       Temple, Texas 76502
       (254) 771-5114
       *Former Stock employee who is now employed by Tri-Supply.*

35.    Randy Goeke
       500 East Ridge
       Temple, Texas 76502
       (254) 771-5114
       *Former Stock employee who is now employed by Tri-Supply.*

36.    Glenn D. Covington
       500 East Ridge
       Temple, Texas 76502
       (254) 771-5114
       *Former Stock employee who is now employed by Tri-Supply.*

37.    Mason Allen
       500 East Ridge
       Temple, Texas 76502
       (254) 771-5114
       *Former Stock employee who is now employed by Tri-Supply.*

38.    Eric Vybiral
       500 East Ridge
       Temple, Texas 76502
       (254) 771-5114
       *Former Stock employee who is now employed by Tri-Supply.*

39.    Beverly Malone
       *Stock Human Resources Department Representative. See Weldon Vybiral's
       Response to Interrogatory No. 21 regarding Malone.*

40.    Bruce M. Partain
       Wells, Peyton, Greenberg & Hunt, L.L.P.
       550 Fannin, Suite 600
       Beaumont, Texas 77701
       (409) 838-2644
       *Attorney for Plaintiffs, Ray Mart, Inc. d/b/a Tri-Supply Company and Weldon
       Vybiral*

Respectfully submitted,

WELLS, PEYTON, GREENBERG
   & HUNT, L.L.P.

By: _____
Bruce Partain
Texas State Bar #15548400
Terrence Allison
Texas State Bar #24043531
550 Fannin, Suite 600
Beaumont, Texas 77701
(409) 838-2644
Fax: (409) 838-0416

ATTORNEYS FOR PLAINTIFFS,
RAY MART, INC. D/B/A TRI-SUPPLY
COMPANY AND WELDON VYBIRAL

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Plaintiffs' Initial

Disclosures has been sent as follows:

**VIA FEDERAL EXPRESS**
W. Stephen Cockerman
Bridget Blinn
Energy Plaza, 30th Floor
1601 Bryan Street
Dallas, Texas 75201
*Attorneys for Defendant*
*Stock Building Supply of Texas, L.P.*

DATED this _11th_ day of January, 2006.

_____
Bruce M. Partain

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| RAY MART, INC. D/B/A TRI-SUPPLY COMPANY and WELDON VYBIRAL | § § § | |
| *Plaintiffs,* | § § | CIVIL ACTION NO. 1:05-cv-855 |
| v. | § § | |
| STOCK BUILDING SUPPLY OF TEXAS, L.P., | § § § | |
| *Defendant.* | § | |

## DEFENDANT'S INITIAL DISCLOSURE

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, Defendant Stock Building Supply Company, L.P. hereby serves its Initial Disclosure. Defendant will not produce any documents or other information that is privileged or that is otherwise protected from discovery or disclosure and objects to producing any such documents or information. Such documents or information that will not be disclosed include, but are not limited to, attorney-client communications, attorney work product, and any other documents or information privileged or protected from discovery or disclosure.

1.     **F.R.C.P. 26(a)(1)(A):  The name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information.**

**RESPONSE:**   The following persons are likely to have discoverable information relevant to disputed facts alleged with particularity in the pleadings. Each Possible Subject(s) of Information section represents only those broad areas of knowledge each individual is believed to possess, and necessarily may not be exhaustive or totally inclusive in its nature or scope.



EXHIBIT

A

| No. | Person / Last Known Address | Possible Subject(s) of Information |
|-----|------------------------------|-------------------------------------|
| (1) | Mason Allen<br>13911 Guyton Rd.<br>Moody, Texas 76557<br>254.853.3603 | Vybiral's[1] employment at Stock and subsequent involvement with Tri-Supply,[2] and his own resignation from Stock and subsequent employment with Tri-Supply. |
| (2) | Albert Brown<br>1703 N. Washington<br>Cameron, Texas 76520 | Vybiral's employment at Stock and subsequent involvement with Tri-Supply, and his own resignation from Stock and subsequent employment with Tri-Supply. |
| (3) | Bill Conlon<br>4916 Airport Trail<br>Temple, Texas 76504<br>254.773.8916 | Vybiral's employment at Stock and subsequent involvement with Tri-Supply, and his own resignation from Stock and subsequent employment with Tri-Supply. |
| (4) | Dave Corna<br>c/o Hunton & Williams LLP<br>1601 Bryan Street<br>30th Floor, Energy Plaza<br>Dallas, Texas 75201<br>214.979.3000 | Vybiral's employment with Stock, the effects of Vybiral's breach of his Employment Agreement, Vybiral's compensation, the resignation of Stock employees, and damages incurred by Stock. |
| (5) | Glenn Covington<br>3109 E. Nugent<br>Temple, Texas 76501<br>254.778.6539 | Vybiral's employment at Stock and subsequent involvement with Tri-Supply, and his own resignation from Stock and subsequent employment with Tri-Supply. |
| (6) | Arturo Donoso<br>Stock Building Supply Company, L.P.<br>2501 N. General Bruce<br>Temple, Texas 76503<br>254.778.1325 | Vybiral's employment at Stock and subsequent involvement with Tri-Supply. |
| (7) | Alan Ellis<br>308 E. Nugent<br>Temple, Texas 76501<br>254.771.2749 | Vybiral's employment at Stock and subsequent involvement with Tri-Supply, and his own resignation from Stock and subsequent employment with Tri-Supply. |

---

[1] For purposes of this Initial Disclosure, "Vybiral" refers to Plaintiff Weldon Vybiral, and not to his son Eric Vybiral.

[2] For purposes of this Initial Disclosure, "Tri-Supply" refers to Plaintiff Ray Mart, Inc. d/b/a Tri-Supply Company.

| (8)  | Randy Goeke<br>5518 Travis Ct.<br>Temple, Texas 76502<br>254.773.5643 | Vybiral's employment at Stock and subsequent involvement with Tri-Supply, and his own resignation from Stock and subsequent employment with Tri-Supply. |
|------|------------------------------------------------------------------------|------------------------------------------------------------------------------------------------------------------------------------------------------|
| (9)  | David Gommert<br>5408 West Ridge Blvd.<br>Temple, Texas 76502 | Vybiral's employment at Stock and subsequent involvement with Tri-Supply, and his own resignation from Stock and subsequent employment with Tri-Supply. |
| (10) | Jeremy Gommert<br>2606 San Jacinto<br>Temple, Texas 76502 | Vybiral's employment at Stock and subsequent involvement with Tri-Supply, and his own resignation from Stock and subsequent employment with Tri-Supply. |
| (11) | Walter Gommert<br>2606 San Jacinto<br>Temple, Texas 76502 | Vybiral's employment at Stock and subsequent involvement with Tri-Supply, and his own resignation from Stock and subsequent employment with Tri-Supply. |
| (12) | Shauna Griffin<br>1112 Comay<br>Belton, Texas 76513 | Vybiral's employment at Stock and subsequent involvement with Tri-Supply, and his own resignation from Stock and subsequent employment with Tri-Supply. |
| (13) | Beth Hymer<br>Stock Building Supply Company, L.P.<br>2501 N. General Bruce<br>Temple, Texas 76503<br>254.778.1325 | Vybiral's employment with Stock and subsequent departure. |
| (14) | Glen Kattner<br>3421 Imperial Drive<br>Gatesville, Texas 76528 | Vybiral's employment at Stock and subsequent involvement with Tri-Supply, and his own resignation from Stock and subsequent employment with Tri-Supply. |
| (15) | Sheryl Lingo<br>110 Comay<br>Belton, Texas 76513<br>254.939.6658 | Vybiral's employment at Stock and subsequent involvement with Tri-Supply, and her own resignation from Stock and subsequent employment with Tri-Supply. |
| (16) | Kevin Lynch<br>7960 Ivy Road<br>Moody, Texas 76557 | Vybiral's employment at Stock and subsequent involvement with Tri-Supply, and his own resignation from Stock and subsequent employment with Tri-Supply. |

| (17) | Mary McClellan<br>Stock Building Supply Company, L.P.<br>2501 N. General Bruce<br>Temple, Texas 76503<br>254.778.1325 | Vybiral's employment with Stock and subsequent departure. |
|---|---|---|
| (18) | Michael Poncik<br>Stock Building Supply Company, L.P.<br>2501 N. General Bruce<br>Temple, Texas 76503<br>254.778.1325 | Vybiral's employment at Stock and subsequent involvement with Tri-Supply. |
| (19) | Tommy Rankin<br>Stock Building Supply Company, L.P.<br>2501 N. General Bruce<br>Temple, Texas 76503<br>254.778.1325 | Vybiral's offer of employment to him on behalf of Tri-Supply. |
| (20) | John Raykovich<br>c/o Wells, Peyton, Greenberg & Hunt, LLP<br>550 Fannin, Sixth Floor, Century Tower<br>Beaumont, Texas 77704-3708<br>409.838.2644 | Vybiral's activities on behalf of Tri-Supply and agreements, understandings, and/or negotiations between Vybiral and Tri-Supply. |
| (21) | Reagan Reed<br>c/o Hunton & Williams LLP<br>1601 Bryan Street<br>30th Floor, Energy Plaza<br>Dallas, Texas 75201<br>214.979.3098 | The effects of Vybiral's breach of his Employment Agreement. |
| (22) | Eric Vybiral<br>14128 Guyton Rd.<br>Moody, Texas 76557<br>254.853.0268 | Vybiral's employment at Stock and subsequent involvement with Tri-Supply, and his own employment with Tri-Supply. |
| (23) | Weldon Vybiral<br>c/o Wells, Peyton, Greenberg & Hunt, LLP<br>550 Fannin, Sixth Floor, Century Tower<br>Beaumont, Texas 77704-3708<br>409.838.2644 | His employment at Stock and departure therefrom, and subsequent involvement with Tri-Supply |
| (24) | Logan W. Wint III<br>P.O. Box 835<br>Rogers, Texas 78569 | Vybiral's employment at Stock and subsequent involvement with Tri-Supply, and his own resignation from Stock and subsequent employment with Tri-Supply. |

Defendant also lists all individuals, if any, listed by Plaintiffs in Plaintiffs' Initial Disclosure, in any Witness List, in response to discovery requests, or as otherwise disclosed in discovery. Defendant reserves the right to supplement or amend this list as appropriate.

the activities of Vybiral in his acting on behalf of Tri-Supply.  If such computation becomes

possible through discovery and further fact investigation, Defendant will supplement.

4.    **F.R.C.P. 26(a)(1)(D):  For inspection and copying as under Rule 34, any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.**

   <u>RESPONSE:</u>  Defendant has no knowledge of any such policy.

   Respectfully submitted,

   HUNTON & WILLIAMS LLP

   By:_____
   W. Stephen Cockerham
   Lead Attorney
   State Bar No. 04463300
   Bridget A. Blinn
   State Bar No. 24045510

   Energy Plaza, 30th Floor
   1601 Bryan Street
   Dallas, Texas  75201
   214.979.3000
   214.880.0011 Fax

   **ATTORNEYS FOR
   DEFENDANT/COUNTERCLAIMANT**

**UNITED STATES DISTRICT COURT**          **EASTERN DISTRICT OF TEXAS**

DIVISION:          1 (Beaumont)          DATE:      January 13, 2006
DISTRICT JUDGE:  Hon. Marcia A. Crone    TIME:      2:05 p.m. – 2:35 p.m.

| | | |
|---|---|---|
| RAY MART, INC. d/b/a Tri-Supply<br>Company and WELDON VYBIRAL,<br><br>        Plaintiffs,<br><br>*versus*<br><br>STOCK BUILDING SUPPLY OF TEXAS,<br>L.P.,<br><br>        Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 1:05-CV-855 |

ATTORNEYS FOR PLAINTIFFS:      Bruce  Partain  and  Terrance  Allison of Wells,
                               Peyton, Greenberg & Hunt

ATTORNEY FOR DEFENDANT:        William S. Cockerham of Hunton & Williams

THIS DAY CAME THE PARTIES BY THEIR ATTORNEYS AND THE FOLLOWING

PROCEEDINGS WERE HAD:

    Counsel convened in chambers on January 13, 2006, to inform the court of the facts and

issues in this employment contract cause of action.  The parties discussed Defendant's motion to

transfer venue and Plaintiffs' motion to remand.  Counsel shall provide additional evidence and

briefing to the court pertaining to the pending motions on or before January 20, 2006.  The court

and counsel agreed to a scheduling order which will govern all future proceedings.


    SIGNED at Beaumont, Texas, this 17th day of January, 2006.


                                    *Marcia A. Crone*
                                  _____
                                        MARCIA A. CRONE
                                  UNITED STATES DISTRICT JUDGE

FILED - CLERK
U.S. DISTRICT COURT

2006 JAN 13   PM 3: 19

TX EASTERN-BEAUMONT

BY _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

RAY MART, INC. D/B/A TRI-SUPPLY §
COMPANY and WELDON VYBIRAL §
§
§
*Plaintiffs,* §
§
v. §
§
STOCK BUILDING SUPPLY OF TEXAS, §
L.P., §
§
§
*Defendant.* §

CIVIL ACTION NO. 1:05-cv-855

## AGREED SCHEDULING ORDER

The following schedule shall be followed.  All communications concerning the case shall be directed in writing to Debbie Collazo, Court Administrator for Judge Crone, P.O. Box 1470, Beaumont, TX 77704.  For urgent matters, Ms. Collazo may be contacted at (409) 654-2880.

1. April 3, 2006    NEW PARTIES shall be joined, without leave of court, by this date.

2. April 3, 2006    The pleadings shall be AMENDED, without leave of court, by this date.

3. May 1, 2006    PLAINTIFF shall designate EXPERT WITNESSES in writing and provide expert reports by this date.

4. May 19, 2006    DEFENDANT shall designate EXPERT WITNESSES in writing and provide expert reports by this date.

5. June 30, 2006    DISCOVERY shall be completed by this date.

6. July 28, 2006    MOTION CUT-OFF.   Aside from motions in limine, no motion, including motions to exclude or limit expert testimony, shall be filed after this date except for good cause shown.  Without leave of court, a party may file only one summary judgment motion.  (This date must be at least 2 weeks after the discovery completion date.)

7. December 1, 2006    The JOINT PRETRIAL ORDER, including motions in limine and a proposed charge or proposed findings of fact and conclusions of law, shall be filed and proposed trial exhibits shall be exchanged on or before this date.  (This date must be at least 12 weeks after the motion cut-off.)

8.  December 8, 2006    OBJECTIONS TO proposed exhibits, witnesses, and deposition excerpts, as well as responses to motions in limine, shall be filed by this date. (This date must be no more than 1 week after the Joint Pretrial Order is due.)

9.  January 5, 2006     DOCKET CALL at 10:00 a.m. (Select a date from the attached list, which must be at least 2 weeks after the Joint Pretrial Order is due.) The case will be set for Final Pretrial Conference and Trial at the docket call. The parties should be prepared to try the case on the date of the docket call.

10.  ____4____        Estimated time to try before a jury/the court. (Underline one.)

In addition the standard scheduled items, the following items are scheduled:

11. January 11, 2006    INITIAL DISCLOSURES under Rule 26(a)(1) to be submitted by both parties.

12.  ___14___         Days in which the parties are to respond to Interrogatories and Requests for Production unless otherwise agreed by the parties.

13. January 17, 2006    The parties will work in good faith to schedule the depositions of Plaintiff Vybiral, Plaintiff Tri-Supply's corporate representative, and Defendant's corporate representative by this date. These depositions will be held in Austin, Texas.

SIGNED at Beaumont, Texas, on this __13th__ day of __January__, 200_6_.

_Marcia A. Crone_
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

FILED - CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT 2006 JAN 13  PM 3: 18
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION  TX EASTERN-BEAUMONT

BY _____

| | |
|---|---|
| RAY MART, INC. D/B/A TRI-SUPPLY COMPANY and WELDON VYBIRAL | § § § |
| *Plaintiffs,* | § § |
| v. | § § |
| STOCK BUILDING SUPPLY OF TEXAS, L.P., | § § § § |
| *Defendant.* | § |

CIVIL ACTION NO. 1:05-cv-855

## AGREED PROTECTIVE ORDER

Having determined that discovery in this case may involve disclosure of confidential and/or proprietary information, and that such documents and information are unrelated to matters that have any adverse effect upon general public health or safety, or the administration of public office, or the operation of government,

It is hereby ORDERED that:

1.      All Classified Information produced or exchanged in the course of this litigation shall be used solely for the purpose of preparation and trial of this litigation and for no other purpose whatsoever, and shall not be disclosed to any person except in accordance with the terms hereof.

2.      "Classified Information," as used herein, means any information of any type, kind or character that is designated as "Confidential" or "Attorneys' Eyes Only" by Plaintiffs or Defendant whether it be a document, information contained in a document, information revealed during a deposition, information produced in response to a document request, information revealed in an interrogatory answer, or otherwise.  In designating information as "Confidential"

or "Attorneys' Eyes Only," Plaintiffs and Defendant will make such designation only as to that information that they or it in good faith believes contains confidential information. Information or material that is available to the public, including catalogues, advertising materials, and the like shall not be "Classified Information."

      3.      "Qualified Persons," as used herein means:

      (a)      Attorneys for Plaintiffs and Defendant in this litigation and employees of theirs to whom it is necessary that the material be shown for purposes of this litigation.

      (b)      Actual or potential independent technical experts or consultants, who have been designated in writing by notice to all counsel prior to any disclosure of "Confidential" or "Attorneys' Eyes Only" information to such person, and who have signed a document in the form attached as Exhibit 1 so stating (such signed document to be filed with the Clerk of this Court by the attorney retaining such person) except that Plaintiff Ray Mart, Inc. d/b/a Tri-Supply Company ("Plaintiff Tri-Supply") cannot designate its owners, partners, officers, employees, representatives, agents, or consultants or persons in such a position for a competitor of Defendant or Plaintiff Tri-Supply as an expert or consultant that would be a Qualified Person under this subsection and except that Defendant cannot identify itself, or owners, partners, officers, employees, representatives, consultants, agents, consultants or persons  or of another competitor of Defendant or Plaintiff Tri-Supply as an expert that would be a Qualified Person under this subsection;

      (c)      Plaintiffs or Defendant or their designated representative (in cases where the party is a legal entity) who shall be designated in writing prior to any disclosure of "Confidential" information to such person and who shall sign a document in the form attached as

<u>Exhibit 1</u> so stating (such signed document to be filed with the Clerk of this Court by the party designating such person);

      (d)    Court personnel, deponents, and court reporters/videographers; and,

      (e)    Any other person designated as a Qualified Person by order of this Court, after notice and hearing to all parties.

      4.    Documents produced in this action may be designated by Plaintiffs or Defendant as "Confidential" or "Attorneys' Eyes Only" information by marking the document(s) or by so indicating by letter.

      In lieu of marking the original of a document, if the original is not produced, the designating party may mark the copies that are produced or exchanged.  Originals shall be preserved for inspection.

      5.    Information disclosed at a deposition may be designated by Plaintiffs or Defendant as "Confidential" or "Attorneys' Eyes Only" information by indicating on the record at the deposition that the testimony is "Confidential" or Attorneys' Eyes Only" and is subject to the provisions of this Protective Order.

      Plaintiffs or Defendant may also designate information disclosed at such depositions as "Confidential" or "Attorneys' Eyes Only" thereafter.  Plaintiffs or Defendant shall attach a copy of such written notice or notices to the face of the transcript and each copy thereof in his possession, custody or control.

      To the extent possible, the court reporter shall segregate into separate transcripts information designated as "Confidential" or "Attorneys' Eyes Only," with blank, consecutively numbered pages being provided in a non-designated main transcript.  The separate transcript

containing "Confidential" or "Attorneys' Eyes Only" information shall have page numbers that correspond to the blank pages in the main transcript.

6.    (a)    "Confidential" information shall not be disclosed or made available by the receiving party to persons other than Qualified Persons.  Information designated as "Attorneys' Eyes Only" shall be restricted in circulation to Qualified Persons described in Paragraphs 3(a) and (b) above.

(b)    Any documents produced in this litigation, regardless of classification, that are provided to Qualified Persons of Paragraph 3(b) above, shall be maintained only at the office of such Qualified Person and only working copies shall be made of any such documents. Copies of documents produced under the Protective Order may be made, or exhibits prepared by independent copy services, printers, or illustrators for the purpose of this litigation.

(c)    Attorneys for Plaintiffs and Defendant shall maintain a log of all copies of "Attorneys' Eyes Only" documents that are delivered to any one or more Qualified Person described in Paragraph 3 above.

7.    Documents unintentionally produced without designations as "Confidential" or "Attorneys' Eyes Only" may be retroactively designated by notice in writing of the designated class of each document by Bates number and shall be treated appropriately from the date written notice of the designation is provided to the receiving party.  Documents to be inspected shall be treated as "Attorneys' Eyes Only" during inspection.  At the time of copying for the receiving parties, such inspected documents shall be stamped prominently "Confidential" or "Attorneys' Eyes Only" by the producing party.  Counsel shall have right to object to the designation of documents.

Nothing herein shall prevent disclosure beyond the terms of this Protective Order if the party designating the information as "Confidential" or "Attorneys' Eyes Only" consents to such disclosure or, if the Court, after notice to all affected parties, orders such disclosure. Nothing herein shall prevent any counsel of record from utilizing "Confidential" or "Attorneys' Eyes Only" information in the examination or cross-examination of any person who is indicated on the document as being an author, source or recipient of the "Confidential" or "Attorneys' Eyes Only" information, irrespective of the source of such information.

8.       In the event that Plaintiffs or Defendant disagree at any stage of these proceedings with the designation of any information as "Confidential" or "Attorneys' Eyes Only," or the designation of any person as a Qualified Person, Plaintiffs and Defendant shall first try to resolve such dispute in good faith on an informal basis, such as production of redacted copies. If the dispute cannot be resolved, the objecting party may invoke this Protective Order by objecting in writing to the party who has designated the document or information as "Confidential" or "Attorneys' Eyes Only." The designating party shall be required to move the Court for an order preserving the designated status of such information within fourteen (14) days of receipt of the written objection, and failure to do so shall constitute a termination of the restricted status of such item.

Plaintiffs and Defendant may, by written and signed stipulation signed by both parties, provide for exceptions to this Protective Order and either Plaintiffs or Defendant may seek an order of this Court modifying this Protective Order.

9.       Nothing shall be designated as "Attorneys' Eyes Only" information except information of the most sensitive nature, which if disclosed to persons of expertise in the area would reveal significant technical or business advantages of the producing or designating party,

and which includes as a major portion subject matter that is believed to be unknown to the opposing party, or any of the employees of the opposing party.  Nothing shall be regarded as "Confidential" or "Attorneys' Eyes Only" information if it is information that either:

(a)    is in the public domain at the time of disclosure, as evidenced by a written document;

(b)    becomes part of the public domain through no fault of the other party, as evidenced by a written document;

(c)    the receiving party can show by written document that the information was in its rightful and lawful possession at the time of disclosure; or

(d)    the receiving party lawfully receives such information at a later date from a third party without restriction as to disclosure, provided such third party has the right to make the disclosure to the receiving party.

10.    In the event that Plaintiffs or Defendant wish to use any "Confidential" or "Attorneys' Eyes Only" information in any affidavits, briefs, memoranda of law, or other papers filed in Court in this litigation, the disclosing party (if not the designated party) will give the designating party or attorney representing the designating party no fewer than ten (10) business days advance notice when practicable so that the party who's information is to be disclosed to be filed or an order excluding from the courtroom any person not authorized to receive such documents or information during the period such documents or information will be disclosed.  If ten (10) business days advance notice is not practicable, the disclosing party shall give as much notice as is practicable.

11.    Unless otherwise agreed to in writing by Plaintiffs and Defendant or ordered by the Court, all proceedings involving or relating to documents or any other information shall be subject to the provisions of this Protective Order.

12.    Within one hundred twenty (120) days after conclusion of this litigation and any appeal thereof, any document and all reproductions of documents produced by Plaintiffs or Defendant in the possession of any of the persons qualified under Paragraphs 3(a) through (d), shall be returned to the producing party, except as this Court may otherwise order. As far as the provisions of any protective orders entered in this action restrict the communication and use of the documents produced thereunder, such orders shall continue to be binding after the conclusion of this litigation, except (a) that there shall be no restriction on documents that are used as exhibits in court unless such exhibits were filed under seal, and (b) Plaintiffs or Defendant may seek the written permission of the producing party or order of the Court with respect to dissolution or modification of such protective orders.

13.    This Protective Order shall not bar any attorney for Plaintiffs or Defendant herein in the course of rendering advice to his or her client with respect to this litigation from conveying his or her evaluation in a general way of "Confidential" or "Attorneys' Eyes Only" information produced or exchanged herein; provided, however that in rendering such advice and otherwise communicating with his or her client, the attorney shall not disclose the specific contents of any "Confidential" or "Attorneys' Eyes Only" information produced by a party, which disclosure would be contrary to the terms of this Protective Order.

14.    Plaintiffs and Defendant shall have the duty to reasonably ensure that persons designated as Qualified Persons observe the terms of this Protective Order and shall be

responsible upon breach of such duty for the failure of any such person to observe the terms of this Protective Order.

15.    That the parties have agreed to this Protective Order is in no way an admission that any of the information the parties exchange is in fact proprietary, confidential information or a trade secret.

SIGNED AND ENTERED this *13th* day of *January*, 2006, at Beaumont, Texas.

_____
JUDGE PRESIDING

AGREED:

HUNTON & WILLIAMS LLP

WELLS, PEYTON, GREENBERG
& HUNT, L.L.P.


By _____/s/ Bridget A. Blinn_____
     W. Stephen Cockerham
     State Bar No. 04463300
     Bridget A. Blinn
     State Bar No. 24045510
     Energy Plaza, 30th Floor
     1601 Bryan Street
     Dallas, Texas 75201-3402
     Tel. (214) 979-3000
     Fax (214) 880-0011

**ATTORNEYS FOR DEFENDANT,
STOCK BUILDING SUPPLY
OF TEXAS, L.P.**

By ____/s/ Bruce M. Partain_____
     Bruce M. Partain
     State Bar No. 15548400
     Gary J. Linthicum
     State Bar No. 00794174
     P.O. Box 3708
     Beaumont, Texas 77704-3708
     Tel. (409) 838-2644
     Fax. (409) 838-4713

**ATTORNEYS FOR PLAINTIFFS,
TRI-SUPPLY COMPANY, INC.
and WELDON VYBIRAL**

## EXHIBIT 1

### DECLARATION REGARDING CONFIDENTIAL DOCUMENTS SUBJECT TO PROTECTIVE ORDER

The undersigned hereby acknowledges that he or she has read the Protective Order filed in the Eastern District of Texas, Beaumont Division, civil action number 1:05-cv-855, styled *Ray Mart, Inc. D/B/A Tri-Supply Company and Weldon Vybiral v. Stock Building Supply of Texas*, and understands its terms and agrees to be bound by it.

The undersigned further acknowledges that he or she understands that "Classified Information" as defined in paragraph 2 of the Protective Order may not be disclosed to anyone, except as authorized in the Protective Order, and may not be used for any purpose other than the preparation and trial of the above-referenced action.

This declaration is not an admission by the declarant that any documents are proprietary, confidential, or a trade secret.

Executed this ____ day of _____, 2006.


_____
Signature


_____
Printed Name

48117.004067 DALLAS 180898v2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| RAY MART, INC. D/B/A TRI-SUPPLY COMPANY and WELDON VYBIRAL | § § § | |
| *Plaintiffs,* | § § | CIVIL ACTION NO. 1:05-cv-855 |
| v. | § § | |
| STOCK BUILDING SUPPLY OF TEXAS, L.P., | § § § | |
| *Defendant.* | § § | |

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Defendant Stock Building Supply of Texas, L.P. ("Stock") hereby files its response to the Motion to Remand filed by Plaintiffs Ray Mart, Inc. d/b/a Tri-Supply Company ("Tri-Supply") and Weldon Vybiral ("Vybiral") (collectively, "Plaintiffs"), as follows:

### I.  FACTUAL BACKGROUND

1.      On December 14, 2005, Plaintiffs filed an Original Petition for Declaratory Judgment and Damages ("Plaintiffs' Petition") in the 172nd Judicial District in Jefferson County, Texas.  Plaintiffs' Petition alleged two causes of action against Stock—a declaratory judgment action and an action for breach of the Employment Agreement between Vybiral and Stock ("Employment Agreement").

2.      Plaintiffs' breach of contract action is based on Vybiral's claim that Stock failed to pay him bonuses due him under the Employment Agreement.  Vybiral claims that damages for the bonuses he is seeking total $54,162.21.

3.      Plaintiffs' declaratory judgment action seeks declaratory judgment that the Covenant Against Competition ("Non-Compete") contained in the Employment Agreement is

unenforceable.  The Employment Agreement specifies that Vybiral's base annual salary was

$75,000 per year.  *See* Schedule A attached to Employment Agreement ("Schedule A"), which is

Exhibit A to Plaintiffs' Petition.  Vybiral was additionally eligible for participation in Stock's

annual bonus program, which resulted in payment to him of $11,311.79 in 2005 and $31,526 in

2004 in bonuses.  *See* Schedule A; Affidavit of Weldon Vybiral ¶¶ 5-7, Exhibit 1 to Plaintiff's

Motion to Remand ("Vybiral Affidavit").

    4.      Plaintiffs' Petition also seeks to recover attorneys fees.  Plaintiffs' attorneys assert

that their fees in this matter will not exceed $15,000.

    5.      In their Motion to Remand, Plaintiffs assign no value at all to the declaratory

judgment action for purposes of calculating the amount in controversy.[1]

## II. ARGUMENT AND AUTHORITIES

    Removal is proper based on diversity when the parties are diverse and the amount in

controversy exceeds $75,000.  28 U.S.C. §1332(a), 1441(a).  Plaintiff does not contest that the

parties are completely diverse in their citizenship.  Accordingly, only the amount in controversy

is relevant to Plaintiffs' Motion to Remand.

    The party removing the action must prove the amount in controversy by a preponderance

of the evidence.  *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999).  Defendant

---

[1] Plaintiffs' Motion to Remand contains an extensive factual background section which recites the same facts as Plaintiffs' Petition.  Some of these facts are inaccurate and have been previously denied in Defendant's Answer.  Moreover, most of these facts are irrelevant to the question of whether removal was proper in this case.  The only facts relevant to the question of whether removal is proper based on diversity are (1) the citizenship of the parties and (2) the amount in controversy.  For these reasons, Defendant does not specifically deny irrelevant facts in Plaintiffs' Motion to Remand that are inaccurate, without waiving its right to do so in the future.

may make this showing by "demonstrating that it is facially apparent that the claims are likely above $75,000."[2] *Id.*

**A. The amount in controversy exceeds $75,000.**

> *1. It is apparent on the face of Plaintiff's Petition that the amount in controversy is likely to be above the $75,000 minimum amount.*

The declaratory judgment action alone meets the amount in controversy requirement for federal diversity jurisdiction. Plaintiff's Motion to Remand focuses entirely on Plaintiffs' breach of contract action and on their claim for attorneys' fees, completely ignoring the value of the declaratory judgment action.

Plaintiffs' Petition seeks declaratory judgment that the Non-Compete is unenforceable. In actions for declaratory relief, the amount in controversy is measured by the object of the litigation. *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977); *Aladdin's Castle, Inc. v. Mesquite*, 630 F.3d 1029, 1035 (5th Cir. 1980). In a suit for declaratory judgment relating to the enforceability of a non-compete, the object of the litigation is the non-compete, the value of which can be measured by the value of the employee's employment while the non-compete is in effect. *See Component Management Services, Inc. v. America II Electronics, Inc.*, No. Civ. A. 3:03-CV-1210-P, 2003 WL 23119152 at *2 (N.D. Tex. Sept. 9, 2003) (citing *Amtech Inc. v. Qualitek Int'l Inc.*, 2002 U.S. Dist. LEXIS 1217 at *21-23 (January 28, 2002).[3] In *Component Management Servs, Inc.*, Defendants sought to remove an a

---

[2] Defendant can also meet its burden by "set[ting] forth the facts in controversy that support a finding of the requisite amount." *Luckett*, 171 F.3d at 298.

[3] In *Amtech*, the court described the object of the litigation as follows: "The central dispute in this motion to dismiss is the value of the compensation [the employee] was potentially required to forego as a result of the restrictive covenant contained in the Employment Contract." *Amtech, Inc.*, 2002 U.S. Dist. LEXIS at *23.

declaratory judgment action asserting that a non-compete provision of an employment contract was unenforceable. *Id.* at *1. The court measured the value of the object of the litigation—the non-compete—as "at least the value of [the employee's] employment while the no-compete clause was still in effect." *Id.* Similarly, the value of the declaratory judgment piece of this suit must be "at least" equal to the value of Vybiral's employment while the Non-Compete is in effect.

Vybiral's employment, according to the terms of his Employment Agreement with Stock, is worth at least $75,000 per year. *See* Schedule A (laying out Vybiral's base salary). During the three years that Vybiral was employed at Stock, he earned $ $161,137.67 (2003), $ 116,890.72 (2004), and $ 100,623.37 (2005) respectively including bonuses. *See* Affidavit of Alicia Downey, attached as Exhibit A. Vybiral's salary at Stock is a reasonable measure of the value of his employment at a competitor. Vybiral was replaced as the general manager in Temple, Texas by Reagan Reed ("Reed"). Reed earns $68,800 base salary per year. *See* Affidavit of Alicia Downey, attached as Exhibit A.

Although Plaintiffs allege that Vybiral was not employed by Tri-Supply at the time the Original Petition was filed, Tri-Supply's only possible interest in this case is its desire to employ Vybiral. As of January 1, 2006, Vybiral began employment at Tri-Supply as its Operations Manager of Tri-Supply's Texas door mill operations, earning a salary of $105,000 per year. *See* Plaintiff, Weldon Vybiral's Answers to Defendant's First Set of Interrogatories, Interrogatory No. 3, attached as exhibit B.

By its own terms, the Non-Compete is enforceable for two years. *See* Employment Agreement, ¶ 7(a). Therefore, the amount in controversy related to the Non-Compete exceeds $210,000 (Vybiral's $105,000 salary over two years, plus any bonuses he would receive). This

amount in controversy is apparent from the face of Plaintiff's Petition, which attached the Employment Agreement without any additional evidence.

   *2.  Even if the Court valued the Non-Compete at less than Vybiral's full salary for two years, the amount in controversy is likely to exceed $75,000.*

   Plaintiffs' Motion to Remand places a value on the breach of contract action for $54,162.21 and on Plaintiffs' claim for attorneys' fees at $15,000, resulting in a value for those two claims of $69,162.21. In order to reach the amount in controversy minimum, therefore, it is only necessary for the court to value the declaratory judgment at $5,837.79. The Non-Compete binds Plaintiff from directly or indirectly engaging in any business that Stock conducts within a 100 mile radius of Stock's Temple facility for two years. Any reasonable valuation of this restriction would exceed that figure.

   For all of the reasons stated above, Stock respectfully requests that this Court deny Plaintiff's Motion to Remand.

<div style="margin-left:40%">

Respectfully submitted,

**HUNTON & WILLIAMS LLP**

By:_____/s/ Bridget A. Blinn_____
       W. Stephen Cockerham
       Lead Attorney
       State Bar No. 04463300
       Bridget A. Blinn
       State Bar No. 24045510

Energy Plaza, 30th Floor
1601 Bryan Street
Dallas, Texas  75201
214.979.3000
214.880.0011 Fax

**ATTORNEYS FOR DEFENDANT**

</div>

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and exact copy of the foregoing Defendant's

Response to Plaintiffs' Motion to Remand via fax and U.S. mail, return receipt requested, this

12th day of January, 2006, addressed as follows:

> Bruce M. Partain
> WELLS, PEYTON, GREENBERG & HUNT, LLP
> 550 Fannin, Sixth Floor, Century Tower
> Beaumont, Texas 77704-3708

> /s/ Bridget A. Blinn
> Bridget A. Blinn

### AFFIDAVIT OF ALICIA DOWNEY

| | |
|---|---|
| STATE OF NORTH CAROLINA | § |
| | § |
| COUNTY OF WAKE | § |

I, Alicia Downey, testify and declare the following under the penalty of perjury:

My name is Alicia Downey and I am over 21 years of age, am competent to testify as a witness, and have personal knowledge of the facts set forth in this affidavit.

I am employed by Stock Building Supply, Inc., the general partner of Stock Building Supply of Texas, L.P. (together "Stock") as Payroll Director. My responsibilities include payroll management for Stock Building Supply of Texas, L.P.

Stock operates a millwork facility, including a lumberyard, door-mill and pre-hanging operation in Bell County, Texas.

Weldon Vybiral was employed by Stock as the general manager of its Bell County facility.

In 2003, Mr. Vybiral earned $161,137.67, including base pay and bonuses.

In 2004, Mr. Vybiral earned $116,890.72, including base pay and bonuses.

In 2005, Mr. Vybiral earned $100,623.27, including base pay and bonuses.

Mr. Vybiral resigned on November 30, 2005.

Mr. Vybiral's replacement as the general manager of the Bell County facility is Reagan Reed. Mr. Reed earns $68,800.00 per year in base salary.



EXHIBIT

A

I declare under the penalty of perjury under the laws of the State of Texas and the United States

of America that the foregoing is true and correct, and this affidavit was executed on January

12th, 2006.

<span style="float:right;">Alicia M Downey</span>

Alicia Downey

SWORN TO and SUBSCRIBED before me, the undersigned Notary Public on this /2

day of January 2006, to certify which witnessed my hand and official seal.



Michele D. Pickard

NOTARY PUBLIC

STATE OF NORTH CAROLINA

My Commission Expires August 21, 2010

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### BEAUMONT DIVISION

| | | |
|---|---|---|
| RAY MART, INC. D/B/A TRI-SUPPLY COMPANY and WELDON VYBIRAL, <br> *Plaintiffs* <br><br> v. <br><br> STOCK BUILDING SUPPLY OF TEXAS, L.P., <br> *Defendant* | § § § § § § § § § § | CIVIL ACTION NO. 1:05-cv-855 <br> (Judge M. Crone) |

## PLAINTIFF, WELDON VYBIRAL'S ANSWERS TO
## DEFENDANT'S FIRST SET OF INTERROGATORIES

TO:    Defendant, STOCK BUILDING SUPPLY OF TEXAS, L.P., by and through its attorney of record, W. Stephen Cockerham, Hunton & Williams, L.L.P., 1601 Bryan, 30th Floor, Dallas, Texas 75201, via Federal Express

Pursuant to Rule 33, Federal Rules of Civil Procedure, Plaintiff, WELDON VYBIRAL, provides the following answers to Defendant's First Set of Interrogatories to Plaintiff, Weldon Vybiral, which were served December 30, 2005.

Respectfully submitted,

By _____
Bruce M. Partain
Texas State Bar No. 15548400
Gary J. Linthicum
Texas State Bar No. 00794174

*Attorneys for Plaintiffs, Ray Mart, Inc. d/b/a*
*Tri-Supply Company and Weldon Vybiral*

OF COUNSEL:

WELLS, PEYTON, GREENBERG
    & HUNT, L.L.P.
P.O. Box 3708
Beaumont, Texas 77704
(409) 838-2644
Fax: (409) 838-0416

EXHIBIT
B

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing Plaintiff, Weldon Vybiral's Answers to

Defendant's First Set of Interrogatories has been provided as follows:

**VIA FEDERAL EXPRESS**
W. Stephen Cockerham
Hunton & Williams, L.L.P.
1601 Bryan, 30th Floor
Dallas, Texas 75201
*Attorney for Defendant,*
*Stock Building Supply of Texas, L.P.*


DATED this ___11th___ day of January, 2006.

_____
Bruce M. Partain

## PLAINTIFF, WELDON VYBIRAL'S ANSWERS TO
## DEFENDANT'S FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 1:**
Identify each fact that supports your claim in paragraphs IV(f) and XI of Plaintiffs' Complaint that Stock failed to pay you bonuses due under the Employment Agreement for the years 2004 and 2005.

**ANSWER:**   See Weldon Vybiral's affidavit in support of Plaintiffs' Motion to Remand.

**INTERROGATORY NO. 2:**
Identify the amount of the bonuses you allege you were entitled to receive in 2004 and 2005, including the method of calculation of those alleged amounts.

**ANSWER:**   See Weldon Vybiral's affidavit in support of Plaintiffs' Motion to Remand.

**INTERROGATORY NO. 3:** Identify the substance of any written or verbal agreement or understanding you have or have had with Tri-Supply, or other Stock competitor, to become employed by it or to act on its behalf as an agent, representative, owner, partner, or other capacity.

**ANSWER:**   Effective January 1, 2006, I became employed by Tri-Supply as the Operations Manager of Tri-Supply's Texas door mill operations. My salary is $105,000 per year.

**INTERROGATORY NO. 4:**
Identify your start date, or intended start date, with Tri-Supply as an employee, agent, manager, representative, owner, partner, or in some other capacity, and provide a description of your expected duties.

**ANSWER:**   Effective January 1, 2006, I became employed by Tri-Supply as the Operations Manager of Tri-Supply's Texas door mill operations.

**INTERROGATORY NO. 5:**
Identify each and every act you have taken, or directed another person or persons to take, on behalf of, or for the benefit of, Tri-Supply to assist it in starting operations or operating a business within 100 miles of Stock's Temple, Texas facility where you previously worked, including the date the acts were taken.

**ANSWER:**   After December 14, 2005, I assisted and consulted with John Raykovich, President of Tri-Supply about the selection of certain equipment for Tri-Supply's Texas Temple location. Effective January 1, 2006, I became employed by Tri-Supply as the Operations Manager of Tri-Supply's Texas door mill operations.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# BEAUMONT DIVISION

RAY MART, INC. D/B/A TRI-SUPPLY § 
COMPANY and WELDON VYBIRAL, §
        *Plaintiffs* §
         §
**v.** §
         §
STOCK BUILDING SUPPLY OF TEXAS, §
L.P., §
        *Defendant* §

CIVIL ACTION NO. 1:05-cv-855
(Judge M. Crone)

## VERIFICATION

STATE OF TEXAS §

COUNTY OF BELL §

    Before me, the undersigned notary, on this day, personally appeared WELDON VYBIRAL, a person whose identity is known to me. After I administered an oath to him and upon his oath, he said he has read Plaintiff, Weldon Vybiral's Answers to Defendant's First Set of Interrogatories to Plaintiff, Weldon Vybiral and that the facts stated in it are within his personal knowledge and are true and correct."

_____
WELDON VYBIRAL

    SWORN TO AND SUBSCRIBED before me by Weldon Vybiral on this __11__ day of January, 2006.

SHERYL LEA LINGO
Notary Public, State of Texas
My Commission Expires
August 20, 2006

_____
NOTARY PUBLIC, STATE OF TEXAS

-8-

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| **RAY MART, INC. D/B/A TRI-SUPPLY COMPANY and WELDON VYBIRAL** | § | |
| | § | |
| | § | |
| *Plaintiffs,* | § | **CIVIL ACTION NO. 1:05-cv-855** |
| | § | |
| **v.** | § | |
| | § | |
| **STOCK BUILDING SUPPLY OF TEXAS, L.P.,** | § | |
| | § | |
| | § | |
| *Defendant.* | § | |

**JOINT MOTION FOR AGREED PROTECTIVE ORDER**

Defendant Stock Building Supply Company and Plaintiffs Ray Mart, Inc. d/b/a Tri-Supply Company and Weldon Vybiral move this Court to enter the attached Agreed Protective Order, and would show the Court as follows:

1.      The parties have determined that discovery in this case may involve disclosure of confidential and/or proprietary information, and that such documents and information are unrelated to matters that have any adverse effect upon general public health or safety, or the administration of public office, or the operation of government.  That the parties have agreed to this Protective Order is in no way an admission that any of the information the parties exchange is in fact proprietary, confidential information or a trade secret.

2.      In order to protect the confidential and proprietary information to be disclosed in discovery, the parties have agreed upon the terms of the attached Agreed Protective Order.

For the reasons set forth above, Defendant and Plaintiffs respectfully request the Court to grant this motion and enter the attached Agreed Protective Order.

Respectfully Submitted,

HUNTON & WILLIAMS LLP

WELLS, PEYTON, GREENBERG
& HUNT, L.L.P.


By        /s/ Bridget A. Blinn
    W. Stephen Cockerham
    State Bar No. 04463300
    Bridget A. Blinn
    State Bar No. 24045510
    Energy Plaza, 30th Floor
    1601 Bryan Street
    Dallas, Texas 75201-3402
    Tel. (214) 979-3000
    Fax (214) 880-0011

**ATTORNEYS FOR DEFENDANT,
STOCK BUILDING SUPPLY
OF TEXAS, L.P.**

By        /s/ Bruce M. Partain
    Bruce M. Partain
    State Bar No. 15548400
    Gary J. Linthicum
    State Bar No. 00794174
    P.O. Box 3708
    Beaumont, Texas 77704-3708
    Tel. (409) 838-2644
    Fax. (409) 838-4713

**ATTORNEYS FOR PLAINTIFFS,
TRI-SUPPLY COMPANY, INC.
and WELDON VYBIRAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| RAY MART, INC. D/B/A TRI-SUPPLY COMPANY and WELDON VYBIRAL, *Plaintiffs* | § § § § | |
| v. | § § | CIVIL ACTION NO. 1:05-cv-855 (Judge M. Crone) |
| STOCK BUILDING SUPPLY OF TEXAS, L.P., *Defendant* | § § § § | |

PLAINTIFFS' RESPONSE IN OPPOSITION
TO DEFENDANT'S EXPEDITED MOTION TO TRANSFER VENUE

SYNOPSIS:

Subject to their Motion to Remand, Plaintiffs file this response in Opposition to Defendant's Expedited Motion to Transfer Venue. The parties will conduct oral depositions January 16 and 17th, 2006, and thereafter, will submit additional response materials. The Court should deny Defendant's motion to transfer venue because Defendant has a connection or tie to Beaumont, Jefferson County, Texas and the Eastern District; Jefferson County, Texas and Bell County, Texas are not so far apart as to substantially inconvenience key witnesses; the documents relevant to this controversy will be accessible in Jefferson County; a transfer of venue is not warranted when the effect is merely to shift the inconvenience from one side to the other; and there is no contractually-based reason for transferring this case from the Eastern District to the Western District.

A. Introduction

1.      Plaintiffs are RAY MART, INC., d/b/a TRI-SUPPLY COMPANY ("Tri-Supply") and WELDON VYBIRAL ("Vybiral"); Defendant is STOCK BUILDING SUPPLY OF TEXAS, L.P. ("Stock").

2.      Plaintiffs sued Defendant pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code, also known as the Texas Declaratory Judgment Act, in the 172nd Judicial District Court, Jefferson County, Texas.

3.     On December 19, 2005, Stock filed Defendant's Notice of Removal from state court to federal court.

4.     On December 19, 2005, Stock also filed its Expedited Motion to Transfer Venue and Brief in Support requesting that this suit be transferred from the United States District Court, Eastern District of Texas, Beaumont Division, to the United States District Court, Western District of Texas, Waco Division. Although Stock titled its motion "Expedited Motion to Transfer Venue and Brief in Support", Stock sets forth no factual or legal basis for an expedited motion.

5.     Plaintiffs file this response asking the Court to deny Stock's Motion to Transfer Venue.

**B.     Arguments in Support of Plaintiffs' Response In Opposition**

6.     Although the Court may transfer a suit to any other district or division where it might have been brought for the convenience of the defendant or its witnesses and in the interest of justice, this is not a case in which the Court should do so. 28 U.S.C. §1404(a). Plaintiff's choice of forum is given great weight and should not be rejected unless clearly outweighed by other considerations. *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996). The Court should deny Stock's Motion to Transfer for the following reasons:

      a.     Stock argues that Plaintiffs' causes of action have "absolutely no connection or tie to Jefferson County or the Eastern District." *Defendant's Expedited Motion to Transfer Venue and Brief in Support*, p. 4. However, in Part C., Section III of *Defendant's Answer and Affirmative Defenses*, Stock made the following admission: "Defendant (Stock) admits that Stock is transacting business in Texas, including in Beaumont, Jefferson County, Texas." *Stock's Answer*, p. 2. Therefore, Stock does have a connection or tie to Beaumont, Jefferson County,

-2-

Texas and the Eastern District of Texas.

b.   Stock asserts that the majority of the witnesses it will call at trial work and reside in Bell County, Texas. *Defendant's Expedited Motion to Transfer Venue and Brief in Support,* p. 5. Stock has not identified any "key" witnesses and has not provided a general description of their testimony. From preliminary discussions between counsel in conjunction with the Rule 26(f) status conference conducted between counsel on December 28, 2005, the primary "key witnesses" are former Stock employees who may now be employed by Tri-Supply. As Tri-Supply employees, Tri-Supply can make these individuals available for oral deposition and trial.

Courts have refused to allow the convenience-of-witnesses factor to become a "battle of the numbers," decided solely by who has the longer list of possible witnesses—it is "key" witnesses, *i.e.*, those who will actually be called to testify, that are to be considered. *Dupre v. Spanier Mar. Corp.*, 810 F.Supp. 823, 826 (S.D. Tex. 1993). The party seeking transfer cannot simply make a general allegation that witnesses will be necessary but must specify the identity and location of potential witnesses and provide a general description of their testimony. *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir.1992).

c.   Stock argues that Jefferson County, Texas and Bell County, Texas are 200 miles apart and the distance between the two counties would, among other things, inconvenience the witnesses. Specifically, Stock argues that it "will be forced to ask those witnesses to travel over 200 miles and incur additional costs to feed and house those witnesses over the course of the trial." *Defendant's Expedited*

-3-

*Motion to Transfer Venue and Brief in Support*, p. 6. Stock does not disclose the identity of these witnesses.

At least one court has held 200 miles to be insignificant in terms of additional expense, time or cost. *Leesona Corp. v. Duplan Corp.*, 317 F.Supp. 290, 200 (D. R.I.1970). Another court found a "measly three-hour plane ride" insufficient to justify a transfer. *Crystal Semiconductor Corp. v. OPTi, Inc.*, 44 U.S.P.Q.2d 1497, 1504 (W.D. Tex.1997). Jefferson and Bell counties are not so far apart as to impose a substantial inconvenience on any key witnesses.

d.   Stock argues that "any documents or other evidence relevant to the controversy would be more readily available near Bell County than in Beaumont." *Defendant's Expedited Motion to Transfer Venue and Brief in Support*, p. 6. Documents necessary for the defense of this suit are easily accessible. Today, advances in copying technology, electronic storage, and the Internet can make access to the information in this district convenient for all parties. *See Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992); *Mohamed v. Mazda Motor Corp.*, 90 F.Supp.2d 757, 778 (E.D. Tex. 2000). The documents relevant to this controversy will be as accessible in Jefferson County, Texas as they would be in Bell County, Texas.

e.   Stock argues that Plaintiffs filed their case in an improper venue in Texas state court. As Plaintiffs stated in Plaintiffs' Original Petition for Declaratory Judgment and Damages, this lawsuit arises from facts and events occurring in Beaumont, Jefferson County, Texas. Also, Stock has interjected itself into the stream of commerce in, and is transacting business in, Beaumont, Jefferson

County, Texas.

f.    Stock argues that the trial "can be conducted with more ease and at less expense in the Western District of Texas." *Defendant's Expedited Motion to Transfer Venue and Brief in Support*, p. 8. Mere inconvenience to the defendant is not sufficient to warrant changing the location of the suit. *Van Dusen v. Barrack*, 376 U.S. at 634 & n. 30, 84 S.Ct. at 818 & n. 30. Nor is a transfer warranted when the effect is merely to shift the inconvenience from one side to the other. *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir.1992).

g.    Stock argues that it appears that the Beaumont Division "has a significantly higher case load than the Waco Division." *Defendant's Expedited Motion to Transfer Venue and Brief in Support*, p. 7. Plaintiffs believe that this Court is capable of determining the capacity of its own docket.

h.    Although this case involves interpretation of duties under an Employment Agreement, the employment contract does not contain a forum-selection clause providing for resolution of this suit in Bell County, Texas. *See Northwestern Nat'l Ins. Co. v. Donavan*, 916 F.2d 372, 378 (7th Cir. 1990). Even if a forum-selection clause existed, in diversity actions, a forum-selection clause may be enforced by a motion to transfer under 28 U.S.C. §1404(a), but it is not decisive. *See Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29-31, 108 S.Ct. 2239, 2244 (1988). (emphasis added)   Therefore, there is no contractually-based reason for transferring this suit to the United States District Court for the Western District of Texas, Waco Division.

i.    Stock argues that there is a local interest in having the case decided in Bell

-5-

County, Texas. The Supreme Court has stated the courts **can** consider the local interest in adjudicating localized controversies and the unfairness of burdening citizens in an unrelated forum with jury duty. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509, 67 S.Ct. 839, 843 (1947) (emphasis added). Plaintiffs have not located any case law that suggests that the consideration of local interests is a decisive factor in a court's decision to grant or deny a motion to transfer venue.

## C. Conclusion

7.     Stock must support its Motion to Transfer with discovery, affidavits, or other proof containing detailed, factual statements supporting the grounds stated in the motion. *See, e.g., Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756-57 & n. 2 (3rd Cir. 1973). Stock has provided only conclusory assertions of inconvenience which will not justify a transfer. *Scheidt*, 956 F.2d 963, 966 (10th Cir.1992). Plaintiffs' right to choose the forum in which to prosecute this suit is well established. Stock has not met its burden to show that the chosen forum is so inconvenient as to justify a transfer. Accordingly, the Court must deny Stock's Motion to Transfer and retain the case on this Court's docket.

WHEREFORE, in consideration of the foregoing, Plaintiffs, Ray Mart, Inc. d/b/a Tri-Supply Company and Weldon Vybiral, respectfully request that this Court deny Defendant's Expedited Motion to Transfer Venue.

Respectfully submitted,

By_____
    Bruce M. Partain
    Texas Bar No. 15548400
    Gary J. Linthicum
    Texas Bar No. 00794174

ATTORNEY IN CHARGE FOR PLAINTIFFS,
RAY MART, INC. D/B/A TRI-SUPPLY
COMPANY AND WELDON VYBIRAL

OF COUNSEL:

WELLS, PEYTON, GREENBERG
    & HUNT, L.L.P.
P.O. Box 3708
Beaumont, Texas 77704-3708
Tel. (409) 838-2644
Fax. (409) 838-0416

-7-

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Plaintiffs' Response in Opposition to Defendant's Expedited Motion to Transfer Venue has been sent as follows:

VIA E-FILE NOTIFICATION and
FAX NO. (214) 880-0011
Mr. W. Stephen Cockerham
Ms. Bridget A. Blinn
Hunton & Williams LLP
Energy Plaza, 30th Floor
1601 Bryan Street
Dallas, Texas 75201-3402
*Attorney for Defendant,*
*Stock Building Supply of Texas, L.P.*

DATED this _9th_ day of January, 2006.

Bruce M. Partain

-8-

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

RAY MART, INC. D/B/A TRI-SUPPLY    §
COMPANY and WELDON VYBIRAL    §
     *Plaintiffs*           §
                               §
V.                            §
                               §     CIVIL ACTION NO. 1:05-CV-855
                               §        (Judge M. Crone)
STOCK BUILDING SUPPLY OF TEXAS,    §
L.P.                          §
     *Defendant*           §
                               §

PLAINTIFFS RAY MART, INC. D/B/A TRI-SUPPLY COMPANY
AND WELDON VYBIRAL'S MOTION TO REMAND

SYNOPSIS:

On December 14, 2005, Tri-Supply and Vybiral filed suit against Stock in the
District Court of Jefferson County, Texas, 172nd Judicial District, Cause No. E-
176,210 (the State Court Action). Plaintiffs' pleadings in the State Court Action
requested a Declaratory Judgment regarding the enforceability of the Covenant
Against Competition in Vybiral's Employment Contract with Stock. Vybiral
also alleged a cause of action for breach of contract arising from Stock's failure
to pay Vybiral additional amounts for bonuses due him under his Employment
Agreement. Pursuant to Rule 47(b), Texas Rules of Civil Procedure, the
Plaintiffs' pleading in the State Court Action did not specify the amount of
damages sought by Vybiral, or the attorney's fees sought by Tri-Supply and
Vybiral. On December 19, 2005, Stock filed its Notice of Removal asserting
diversity jurisdiction under 28 USC §§ 1332(a) and 1441(b) and removed the
State Court Action to this Court. Stock provided no evidence that at the time
the case was removed the amount in controversy exceeds $75,000. The face of
Tri-Supply and Vybiral's state court petition does not demonstrate that it is
more likely than not that this case exceeds the jurisdictional minimum of
$75,000. Included herewith as Exhibit 1 is the Affidavit of the Plaintiff Weldon
Vybiral. As set forth in Mr. Vybiral's Affidavit, the additional amounts he is
seeking for bonuses due him from Stock is $54,162.21. As set forth in Exhibit
2, Tri-Supply and Vybiral's attorney's fees in this matter will not exceed
$15,000.

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COME NOW Plaintiffs Ray Mart, Inc. d/b/a Tri-Supply Company (Tri-Supply) and Weldon Vybiral (Vybiral) and following the removal on December 19, 2005 of this case from the 172nd District Court of Jefferson County, Texas, and pursuant to 28 USC § 1447(c), file their Motion to Remand these proceedings to the 172nd District Court of Jefferson County, Texas, and in support thereof show the following:

<u>Factual Background</u>

1.       Tri-Supply, a builder supply company, operates door mills and pre-hanging shops at different locations in Texas. Doors are assembled and sold to residential and commercial builders and the public. Tri-Supply operates a door mill and pre-hanging shop in Temple, Texas. The Tri-Supply location in Temple, Texas does not sell framing lumber or operate as a lumberyard.

2.       Stock is a subsidiary of Stock Building Supply Holdings, Inc., which is a large publicly traded builder's supply enterprise. Stock has several locations in Texas. In Temple, Texas, Stock operates a lumberyard, which includes a door mill and pre-hanging shop.

3.       Vybiral has been in the door milling and door assembly business in excess of thirty (30) years. He has extensive experience in supervising the operations of a door mill. Prior to January 13, 2003, and for the preceding thirteen (13) years, Vybiral was employed by JELD-WEN, Inc. as the general manager of JELD-WEN, Inc.'s Temple, Texas door mill operations.

4.       On or about January 13, 2003, Stock purchased JELD-WEN, Inc., which included JELD-WEN, Inc.'s Temple, Texas location where Vybiral was employed.

5.       After the purchase, Vybiral became employed by Stock. As a requirement for his employment by Stock, Vybiral signed an Employment Agreement dated January 13, 2003. Stock's

-2-

Employment Agreement contains a Covenant Against Competition.  The Covenant Against Competition contained in the Employment Agreement restricts Vybiral for a two (2) year period, after the termination of his employment, for whatever reason, from engaging in any business that the Employer (Stock) conducts or enters into during the term of Vybiral's employment within a 100 mile radius of Employer's Temple, Texas branch.

      6.     At the time Vybiral signed the Employment Agreement, he was told that his work duties and conditions would remain the same as they had been with JELD-WEN, Inc.  This statement and others by Stock proved to be false.  Stock changed Vybiral's work duties, and made changes regarding the operations of the Temple, Texas location.  For example, Vybiral was assigned duties by Stock for operations in Austin and San Antonio.  Stock also micro-managed the Temple, Texas operations and Vybiral's duties.  Although sales increased at this location, Stock allocated costs from a centralized purchasing structure.  When these costs were assessed, the amount of Vybiral's bonuses for 2004 and 2005 were substantially reduced.  In addition to creating more stress for Vybiral, Stock failed to compensate Vybiral.  Therefore, Vybiral's bonuses for 2004 and 2005 were substantially reduced from the amounts Vybiral received from JELD-WEN, Inc. based on the profitability of the Temple location.

      7.     On November 30, 2005, Vybiral advised Stock that he was resigning and gave his two-week notice.  On December 1, 2005, Stock advised Vybiral that his services were no longer needed and effective that date, his employment by Stock was terminated.  After the termination of his employment, Vybiral was advised in a letter dated December 9, 2005 from Stock's attorney, that Vybiral had engaged in conduct which violated certain covenants in the Employment Contract.  Stock, through its counsel, threatened litigation in the event Vybiral did not respond to Stock's

attorney's letter.

8.      In a letter received by Tri-Supply on December 12, 2005, Stock, through its attorney, advised Tri-Supply of Mr. Vybiral's Employment Agreement with Stock.

9.      As of the date of the filing of it Original Petition, Vybiral was not employed by or affiliated with Tri-Supply.  Vybiral is not soliciting Stock customers on behalf of Tri-Supply. Vybiral is not soliciting Stock employees to quit their employment with Stock and/or come work for Tri-Supply.  Vybiral is not using Stock's trade secret information in performing work for or on behalf of Tri-Supply.

### Plaintiffs' Cause of Action for Declaratory Judgment

Tri-Supply and Vybiral filed suit against Stock pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code, also known as the Texas Declaratory Judgment Act. Tri-Supply and Vybiral seek a declaratory judgment, which establishes Vybiral's rights and obligations, if any, to Stock under the Employment Agreement. The Employment Agreement is unenforceable as a matter of law.  Alternatively, the Covenant Against Competition and the other restrictions in the Employment Agreement are unreasonable, overly broad, and impose a greater burden upon Vybiral than is necessary to protect the business interests or good will of Stock.  Stock has violated the Employment Agreement and as a result of said breach, Stock is precluded from seeking injunctive relief and the enforcement of the Covenant Against Competition.

Pursuant to Section 37.009 et seq. of the *Texas Declaratory Judgment Act*, Tri-Supply and Vybiral sued Stock for their reasonable and necessary attorneys' fees in the prosecution of this declaratory judgment action. Tri-Supply and Vybiral were forced to file this declaratory judgment

-4-

action because Tri-Supply and Vybiral believed that a lawsuit was imminent, as Stock threatened a lawsuit against Vybiral and Tri-Supply.

### Vybiral's Cause of Action for Breach of Employment Agreement

Stock failed to pay Vybiral the additional amount of $54,162.21 for bonuses due him under the Employment Agreement. As a result of Stock's breach of the Employment Agreement, Vybiral has sustained monetary damages ($54,162.21 plus attorney's fees) which together do not exceed $75,000 exclusive of interest and costs. Vybiral requests judgment against Stock for $54,162.21 as his monetary damages, including attorney's fees, which together do not exceed $75,000, exclusive of interest and costs.

### Procedural Background

On December 14, 2005, Tri-Supply and Vybiral filed suit against Stock in the District Court of Jefferson County, Texas, 172nd Judicial District, Cause No. E-176,210 (the State Court Action). Plaintiffs' pleadings in the State Court Action requested a Declaratory Judgment regarding the enforceability of the Covenant Against Competition in Vybiral's Employment Contract with Stock. Vybiral also alleged a cause of action for breach of contract arising from Stock's failure to pay Vybiral additional amounts for bonuses due him under his Employment Agreement. Pursuant to Rule 47(b), Texas Rules of Civil Procedure, the Plaintiffs' pleading in the State Court Action did not specify the amount of damages sought by Vybiral, or the attorney's fees sought by Tri-Supply and Vybiral.

On December 19, 2005, Stock filed its Notice of Removal asserting diversity jurisdiction under 28 USC §§ 1332(a) and 1441(b) and removed the State Court Action to this Court. Stock's Notice of Removal is deficient because it asserts that the amount in controversy exceeds $75,000

exclusive of interest and costs. Stock provided no evidence that at the time the case was removed the amount in controversy exceeds $75,000. As noted above, Plaintiffs' State Court pleading does not specify the amount of Vybiral's damages and it is not apparent on the face of the pleading that Vybiral's or Tri-Supply's damages, including attorney's fees, are likely to be above the $75,000 minimum amount. Within the time limits provided by 28 USC § 1447(c), Plaintiffs file this Motion to Remand this case back to the 172ᵒᵉ District Court because the amount in controversy is not in excess of $75,000 exclusive of interest and costs.

I.
Grounds for Remand

This Court may remand a case on the basis of any defect identified in a motion to remand made within thirty (30) days after the filing of the notice of removal under 28 USD § 1446(a). *See 28 USC § 1447(c)*. Tri-Supply and Vybiral's Motion to Remand is filed timely, i.e. within thirty (30) days after this case was removed to this Court.

This Court should remand this case to the 172ⁿᵈ District Court, Jefferson County, Texas because:

1. The amount in controversy is less than $75,000, excluding interest and costs. As set forth in Tri-Supply and Vybiral's Original Petition, Tri-Supply is seeking declaratory relief and attorney's fees as provided by § 37.009, Texas Civil Practice and Remedies Code. *See Plaintiff's Original Petition, pages 7 and 8*. Vybiral also asserts a cause of action for breach of employment contract as a result of Stock's failure to pay Vybiral additional amounts for bonuses due him under the Employment Agreement. Included herewith as Exhibit 1 is an Affidavit of Vybiral. As set forth in the Affidavit, Vybiral's damages, including his attorney's fees, are less than $75,000, exclusive

-6-

of interest and cost.

    2.     The sole question before this Court is whether the amount in controversy exceeds $75,000. Texas law provides that plaintiffs may not specify the numerical value of their damage claim. *See Tex. R. Civ. P. 47(b).* In accordance with this provision, Tri-Supply and Vybiral did not specify an amount in controversy in their state court petition. The Fifth Circuit has stated that, in such a situation, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. *See Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999); *DeAguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993). "The defendant may make this showing in either of two ways: (1) by demonstrating that it is 'facially apparent' that the claims are likely above $75,000 or (2) by setting forth the facts in controversy—preferably in the removal petition, but sometimes by affidavit—that support a finding of the requisite amount." *Luckett*, 171 F.3d at 298 (quoting *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

<div align="center">Facial Apparentness</div>

    The face of Tri-Supply and Vybiral's state court petition does not demonstrate that it is more likely than not that this case exceeds the jurisdictional minimum of $75,000. Vybiral has brought a breach of contract action against Stock. As set forth in Stock's answer and affirmative defenses filed December 21, 2005, Stock denies that Vybiral is entitled to any additional compensation, including bonuses. Vybiral seeks a judgment against Stock for his monetary damages exceeding the minimum jurisdictional limits of the state district court. The minimum jurisdictional limits of the state district court is $500. This damage claim, together with the nature of the breach of contract cause of action, does not establish that on the face of the Plaintiffs' state court petition that it is more likely than not that this case exceeds the jurisdictional minimum of $75,000.

<div align="center">-7-</div>

## Weldon Vybiral's Affidavit

Included herewith as Exhibit 1 is the Affidavit of the Plaintiff Weldon Vybiral. As set forth in Mr. Vybiral's Affidavit, the additional amounts he is seeking for bonuses due him from Stock is $54,162.21.

## Affidavit of Tri-Supply and Vybiral's Attorney

Attached hereto as Exhibit 2 is an Affidavit from Tri-Supply and Vybiral's Attorney in Charge. As set forth in Exhibit 2, Tri-Supply and Vybiral's attorney's fees in this matter will not exceed $15,000.

## PRAYER

For these reasons, Plaintiffs Ray Mart, Inc. d/b/a Tri-Supply Company and Weldon Vybiral request this Court to grant their Motion to Remand, remand this suit to the 172nd District Court, Jefferson County, Texas, the state court where it was originally filed, and award Plaintiffs their court costs, expenses, and attorney's fees.

Respectfully submitted,

By _____
Bruce M. Partain
Texas Bar No. 15548400
Gary J. Linthicum
Texas Bar No. 00794174

ATTORNEY IN CHARGE FOR PLAINTIFFS,
RAY MART, INC. D/B/A TRI-SUPPLY
COMPANY AND WELDON VYBIRAL

OF COUNSEL:

WELLS, PEYTON, GREENBERG
 & HUNT, L.L.P.
P.O. Box 3708
Beaumont, Texas 77704-3708
Tel. (409) 838-2644
Fax. (409) 838-0416

## CERTIFICATE OF CONFERENCE

Pursuant to Local Court Rule CV-7(h), I HEREBY CERTIFY that on January 5, 2006, I conferred about Plaintiffs' Motion to Remand by email with W. Stephen Cockerham, counsel for Defendant, Stock Building Supply of Texas. The Defendant opposes Plaintiffs, Ray Mart, Inc. d/b/a Tri-Supply Company and Weldon Vybiral's Motion to Remand.

_____
Bruce M. Partain

-9-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing document has been sent to opposing

counsel of record, in accordance with the Federal Rules of Civil Procedure as follows:

**VIA E-FILE NOTIFICATION and**
**FAX NO. (214) 880-0011**
Mr. W. Stephen Cockerham
Ms. Bridget A. Blinn
Hunton & Williams LLP
Energy Plaza, 30th Floor
1601 Bryan Street
Dallas, Texas 75201-3402
*Attorney for Defendant,*
*Stock Building Supply of Texas, L.P.*

DATED this **6th** day of January, 2006.

Bruce M. Partain

-10-

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

RAY MART, INC. D/B/A TRI-SUPPLY          §
COMPANY and WELDON VYBIRAL              §
                        Plaintiffs        §
                                          §
V.                                        §
                                          §     CIVIL ACTION NO. 1:05-CV-855
                                          §          (Judge M. Crone)
STOCK BUILDING SUPPLY OF TEXAS,           §
L.P.                                      §
                        Defendant         §

AFFIDAVIT OF WELDON VYBIRAL
IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND

STATE OF TEXAS          §

COUNTY OF BELL          §

BEFORE ME, the undersigned Notary Public, on this day personally appeared Weldon
Vybiral who after being duly sworn by me according to law stated under oath the following:

My name is Weldon Vybiral. I am over 18 years of age. I am one of the Plaintiffs in the
above captioned lawsuit. I have personal knowledge of each of the factual statements set forth in
this Affidavit. Each factual statement set forth herein is true and correct.

1.      I have been in the door milling and door assembly business in excess of thirty (30)
years. I have extensive experience in supervising the operations of a door mill. Prior to January 13,
2003, and for the preceding thirteen (13) years, I was employed by JELD-WEN, Inc. as the general
manager of JELD-WEN, Inc.'s Temple, Texas door mill operations.

2.      On or about January 13, 2003, Stock Building Supply of Texas, L.P. purchased JELD-
WEN, Inc., which included JELD-WEN, Inc.'s Temple, Texas location where I was employed.
Stock is a subsidiary of Stock Building Supply Holdings, Inc., which is a large publicly traded

EXHIBIT
1

builder's supply enterprise. Stock has several locations in Texas. In Temple, Texas, Stock operates a lumberyard, which includes a door mill and pre-hanging shop.

3. After the purchase, I became employed by Stock. As a requirement for my employment by Stock, I signed an Employment Agreement dated January 13, 2003. Stock's Employment Agreement contains a Covenant Against Competition. The Covenant Against Competition contained in the Employment Agreement restricts me for a two (2) year period, after the termination of my employment, for whatever reason, from engaging in any business that the Employer (Stock) conducts or enters into during the term of my employment within a 100 mile radius of Employer's Temple, Texas branch.

4. At the time I signed the Employment Agreement, I was told that my compensation, including the calculation of my bonus, work duties, and conditions would remain the same as they had been with JELD-WEN, Inc. This statement and others by Stock proved to be false. Stock changed my work duties, and made changes regarding the operations of the Temple, Texas location. For example, I was assigned duties by Stock for operations in Austin and San Antonio. Stock also micro-managed the Temple, Texas operations and my duties.

5. I received $48,500 as a bonus from JELD-WEN, Inc. based on the profitability of the Temple location for the fiscal year ending January 31, 2003 Although sales increased at the Temple location. Stock allocated costs from a centralized purchasing structure. When these costs were assessed, the amount of my bonuses for Stock's fiscal year ending July 31, 2004 was $31, 526 but only $11,311.79 for the Stock fiscal year ending July 31, 2005. Therefore, my bonuses for 2004 and 2005 were substantially reduced from the amounts JELD-WEN, Inc. fiscal year and before the purchase by Stock.

-2-

6.      I assert that an additional amount of $16,974 for the July 31, 2004 fiscal year should have been paid to me by Stock. This amount is the difference between $48,500 paid me by JELD-WEN and the $31,526 actual amount paid me by Stock.

7.      I also assert that for the July 31, 2005 fiscal year end, Stock should have paid me an additional amount of $37,188.21 ($48,500 - $11,311.79 (amount paid)).

8.      On November 30, 2005, I advised Stock that I was resigning and gave my two-week notice. On December 1, 2005, Stock advised me that my services were no longer needed and effective that date, my employment by Stock was terminated. After the termination of my employment, I was advised in a letter dated December 9, 2005 from Stock's attorney, that I had engaged in conduct which violated certain covenants in the Employment Contract. Stock, through its counsel, threatened litigation in the event I did not respond to Stock's attorney's letter.

9.      In a letter received by Tri-Supply on December 12, 2005, Stock, through its attorney, advised Tri-Supply of my Employment Agreement with Stock.

10.     Tri-Supply, a builder supply company, operates door mills and pre-hanging shops at different locations in Texas. Doors are assembled and sold to residential and commercial builders and the public. Tri-Supply operates a door mill and pre-hanging shop in Temple, Texas. The Tri-Supply location in Temple, Texas does not sell framing lumber or operate as a lumberyard.

11.     As of the date of the filing of the Original Petition in this case, I was not employed by or affiliated with Tri-Supply. I am not soliciting Stock customers on behalf of Tri-Supply. I am not soliciting Stock employees to quit their employment with Stock and/or come work for Tri-Supply. I am not using Stock's trade secret information in performing work for or act on behalf of Tri-Supply.

-3-

12.    Through my counsel, Tri-Supply and I filed suit against Stock to establish my rights and obligations, if any, to Stock under the Employment Agreement. In my opinion, the Covenant Against Competition and the other restrictions in the Employment Agreement are unreasonable, overly broad, and impose a greater burden upon me than is necessary to protect the business interests or good will of Stock. As set forth above, Stock violated the Employment Agreement.

13.    I was forced to file this declaratory judgment action because Tri-Supply and I believe that a lawsuit was imminent, as Stock threatened a lawsuit against me and Tri-Supply. I request reasonable and necessary attorney's fees to Tri-Supply and me in this action and any appeal because of the prosecution of this declaratory judgment.

14.    Stock failed to pay me the additional amount of $54,162.21 for bonuses due me under the Employment Agreement. As a result of Stock's breach of the Employment Agreement, I have sustained monetary damages of $54,162.21, which do not exceed $75,000 exclusive of interest and costs. I request judgment against Stock for my monetary damages of $54,162.21, including attorney's fees. These amounts do not exceed $75,000, exclusive of interest and costs.


                                            _____
                                            Weldon Vybiral

Sworn to and subscribed before me on ___January 3_____, 200_6_.

                                            _____
                                            NOTARY PUBLIC IN AND FOR
                                            THE STATE OF TEXAS

SHERYL LEA LINGO
Notary Public, State of Texas
My Commission Expires
August 20, 2008


-4-

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

RAY MART, INC. D/B/A TRI-SUPPLY     §
COMPANY and WELDON VYBIRAL,          §
                          Plaintiffs §
                                     §
V.                                   §
                                     §        CIVIL ACTION NO. 1:05-CV-855
STOCK BUILDING SUPPLY OF TEXAS,      §        (Judge M. Crone)
L.P.,                                §
                                     §
                          Defendant  §

## AFFIDAVIT OF BRUCE M. PARTAIN IN SUPPORT OF
## PLAINTIFFS' MOTION TO REMAND

THE STATE OF TEXAS        §
                          §
COUNTY OF JEFFERSON       §

BEFORE ME, the undersigned authority, on this day personally appeared the undersigned

affiant, who, being by me first duly sworn, upon oath stated:

"My name is Bruce Partain. I am over twenty-one (21) years of age, of sound
mind, capable of making this affidavit, and fully competent to testify to the matters
stated herein. I have personal knowledge of each of the matters stated herein, and the
factual statements contained in this affidavit are true and correct."

"Plaintiffs, Ray Mart, Inc. d/b/a Tri-Supply Company ("Tri-Supply") and
Weldon Vybiral ("Vybiral") retained my law firm, Wells, Peyton, Greenberg & Hunt,
L.L.P. to pursue a declaratory judgment regarding Mr. Vybiral's Employment
Contract with his former employer, Stock Building Supply of Texas, L.P. ("Stock")
and a breach of contract claim by Mr. Vybiral for additional compensation due him
by Stock. Prior to and after filing suit on December 14, 2005, this firm has performed
twenty (20) hours of work in this matter, including doing or causing to be done the
following:

   (1)    Receipt of file and review of Mr. Vybiral's Employment Agreement
          with Stock at issue in this case;

   (2)    Conferences with Mr. Vybiral and others concerning the factual
          background of this litigation and letters received from Stock's lawyer;

EXHIBIT
2

(3)   Preparation of Tri-Supply and Vybiral's Original Petition for Declaratory Judgment and Damages;

(4)   Preparation of letter to Stock's attorney regarding Plaintiffs' Original Petition for Declaratory Judgment and Damages

(5)   Receipt and review of Stock's Notice of Removal and other pleadings;

(6)   Telephone conferences with Stock's counsel regarding discovery and scheduling issues;

(7)   Prepare Plaintiffs' Motion to Remand and Response to Defendant's Motion to Transfer Venue;

(8)   Prepare Plaintiffs' Initial Disclosure responses;

(9)   Preparation for the oral deposition of Stock representative; and

(10)   Respond to Stock's interrogatories to Vybiral and Tri-Supply and Request for Production.

"I expect that at least an additional 50 hours of time will be required to complete pretrial discovery and the trial of this case. Furthermore, I expect that at least an additional three (3) hours of time will be required to perform post-judgment matters to implement this court's ruling."

"My hourly billing rate for performing legal services in this case and in cases similar to this one is $200.00."

"Since May 26, 1980, I have been licensed to practice law in the State of Texas. Since December 1985, I have been Board Certified in Civil Trial Law by the Texas Board of Legal Specialization. I am familiar with the usual, reasonable, and customary fees charged in Jefferson County, Texas by attorneys with the same or similar qualifications as myself and members of my firm."

"Based upon the amount in controversy and my qualifications, it is my opinion that $15,000 would be a reasonable attorneys' fee award for the above described legal services performed in this cause in the district court in connection with Plaintiffs' claims."

"I affirm that as set forth in Mr. Vybiral's affidavit filed herewith, the amount sought by Mr. Vybiral for his damages ($54,162.71) and the amount sought by the Plaintiffs for attorneys' fees ($15,000.00) do not exceed $75,000, exclusive of interest and costs."

2



Bruce M. Partain
Texas State Bar No. 15548400

*Attorney In Charge for Plaintiffs, Ray Mart, Inc.*
*d/b/a Tri-Supply Company and Weldon Vybiral*

SWORN TO AND SUBSCRIBED BEFORE ME on this **6th** day of January, 2006.

> CARY EDWARDS
> Notary Public, State of Texas
> My Commission Expires
> November 08, 2007

NOTARY PUBLIC, STATE OF TEXAS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Affidavit of Bruce M.

Partain in Support of Plaintiffs' Motion to Remand has been provided to the following as indicated

below:

**VIA E-FILE NOTIFICATION AND**
**FAX NO. (214) 880-0011**
Mr. W. Stephen Cockerham
Ms. Bridget A. Blinn
Hunton & Williams LLP
Energy Plaza, 30th Floor
1601 Bryan Street
Dallas, Texas 75201-3402
*Attorney for Defendant,*
*Stock Building Supply of Texas, L.P.*

DATED this **6th** day of January, 2006.

Bruce M. Partain

3

# UNITED STATES DISTRICT COURT
## Eastern District of Texas
### Beaumont Division

RAY-MART, INC.

VS.                                                     **NOTICE IN A CIVIL CASE**

STOCK BUILDING SUPPLY OF
TEXAS, L.P.                                             Case Number: 1:05cv855

❑ TAKE NOTICE that a **_STATUS CONFERENCE_** in this case has been set for the place, date and time set forth below:

| Place:   UNITED STATES DISTRICT COURT | Room: |
|---|---|
| Jack Brooks Federal Building<br>300 Willow<br>Beaumont, TX 77704 | **U. S. District Courtroom #3<br>(SECOND FLOOR)** |
| Before: **The Honorable Marcia A. Crone** | Date and Time: |

✔ TAKE NOTICE that the proceeding in this case has been continued/rescheduled as indicated below:

| Place: See Above | Date and Time Previously Scheduled | Continued/Rescheduled, Date and Time |
|---|---|---|
| Before: See Above | **January 12, 2006 at 2:00pm** | **January 13, 2006 at 2:00pm** |

**DAVID J. MALAND**
**U.S. Clerk of Court**

January 5, 2006                         /s/ Debbie Collazo
DATE                                    DEBBIE COLLAZO
                                        Court Administrator

To:   Judge Marcia A. Crone
      Don Bush
      Wesley Hinch
      Karen Spivey

# UNITED STATES DISTRICT COURT
## Eastern District of Texas
### Beaumont Division

RAY-MART, INC.

VS.                                          **NOTICE IN A CIVIL CASE**

STOCK BUILDING SUPPLY OF
TEXAS, L.P.                                  Case Number: 1:05cv855

❏  TAKE NOTICE that a **STATUS CONFERENCE** in this case has been set for
the place, date and time set forth below:

| | |
|---|---|
| Place:  UNITED STATES DISTRICT COURT<br>Jack Brooks Federal Building<br>300 Willow<br>Beaumont, TX 77704 | Room:<br>**U. S. District Courtroom #3**<br>**(SECOND FLOOR)** |
| Before: **The Honorable Marcia A. Crone** | Date and Time: |

✔  TAKE NOTICE that the proceeding in this case has been continued/rescheduled as
indicated below:

| Place: See Above | Date and Time Previously Scheduled | Continued/Rescheduled, Date and Time |
|---|---|---|
| Before: See Above | **January 12, 2006 at 2:00pm** | **January 13, 2006 at 2:00pm** |

**DAVID J. MALAND**
**U.S. Clerk of Court**

January 5, 2006                          /s/ Debbie Collazo
DATE                                     DEBBIE COLLAZO
                                         Court Administrator

To:   Judge Marcia A. Crone
      Bruce Partain
      Gary Linthicum
      William Cockerham, III
      Bridget Blinn

# UNITED STATES DISTRICT COURT
## Eastern District of Texas
### Beaumont Division

RAY-MART, INC.

V.                                          **NOTICE IN A CIVIL CASE**

STOCK BUILDING SUPPLY OF
TEXAS, L.P.

Case Number: 1:05cv855

✔ TAKE NOTICE that a **STATUS CONFERENCE** in this case has been set for the place, date and time set forth below:

| Place: | UNITED STATES DISTRICT COURT<br>Jack Brooks Federal Building<br>300 Willow<br>Beaumont, TX 77704 | Room:**U.S. District Courtroom #3<br>(SECOND FLOOR)** |
|---|---|---|
| Before: **The Honorable Marcia A. Crone** | | Date and Time: **January 12, 2006<br>@ 2:00 p.m.** |

⬓ TAKE NOTICE that the in this case has been continued/rescheduled as indicated below:

| Place: See Above | Date and Time Previously Set | Continued/Rescheduled, Date and Time |
|---|---|---|
| Before: See Above | | |

**DAVID J. MALAND**
**U.S. Clerk of Court**

January 4, 2006                    /s/ Faith Ann Laurents
DATE                               FAITH ANN LAURENTS
                                   Court Administrator

To:   Judge Marcia Crone
      Bruce Partain
      Gary Linthicum
      William Cockerham, III
      Bridget Blinn

UNITED STATES DISTRICT COURT
THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

RAY  MART,  INC.  D/B/A  TRI-SUPPLY §
COMPANY and WELDON VYBIRAL § 
§
*Plaintiffs,* §
§   CIVIL ACTION NO. 1:05-cv-855
v. §
§
STOCK BUILDING SUPPLY OF TEXAS, §
L.P., §
§
*Defendant.* §

## JOINT CONFERENCE REPORT

Pursuant to the Court's December 19, 2005 Order to Conduct Rule 26(f) Conference,

Plaintiffs Ray Mart, Inc. d/b/a/ Tri-Supply Company (Tri-Supply) and Weldon Vybiral (Vybiral)

and Defendant Stock Building Supply of Texas, L.P. (Stock) submit this Joint Conference

Report.

1.      The parties provide below a factual and legal description of the case that sets forth the

elements of each cause of action and each defense:

   a.      **Plaintiffs set forth their factual and legal description of the case as follows:**

Jurisdiction

On December 14, 2005, Tri-Supply and Vybiral filed suit against Stock in the District

Court of Jefferson County, Texas, 172nd Judicial District, Cause No. E-176,210 (the State Court

Action).   Plaintiffs' pleadings in the State Court Action requested a Declaratory Judgment

regarding the enforceability of the covenant against competition in Vybiral's Employment

Contract with Stock.   Vybiral also alleged a cause of action for breach of contract arising from

Stock's failure to pay Vybiral additional amounts for bonuses due him under his Employment

Agreement.  Pursuant to Rule 47(b), Texas Rules of Civil Procedure, the Plaintiffs' pleading in the State Court Action did not specify the amount of damages sought by Vybiral, or the attorney's fees sought by Tri-Supply and Vybiral.

On December 19, 2005, Stock filed its Notice of Removal asserting diversity jurisdiction under 28 USC §§ 1332(a) and 1441(b) and removed the State Court Action to this Court. Stock's Notice of Removal is deficient because it asserts that the amount in controversy exceeds $75,000 exclusive of interest and costs.  Stock provided no evidence that at the time the case was removed the amount in controversy exceeds $75,000.  As noted above, Plaintiffs' State Court pleading does not specify the amount of Vybiral's damages and it is not apparent on the face of the pleading that Vybiral's or Tri-Supply's damages, including attorney's fees, are likely to be above the $75,000 minimum amount.  Within the time limits provided by 28 USC § 1447(c), Plaintiffs will file their Motion to Remand this case back to the 172nd District Court because the amount in controversy is <u>not</u> in excess of $75,000 exclusive of interest and costs.

<u>Venue</u>

Venue is proper in this Court because this lawsuit arises from facts and events occurring in Beaumont, Jefferson County, Texas.  In its answer, Stock admits it is transacting business in Texas, including Beaumont, Jefferson County, Texas.  *See Paragraph 4, Stock's Answer and Affirmative Defenses.*

<u>Factual Background</u>

1.      Tri-Supply, a builder supply company, operates door mills and pre-hanging shops at different locations in Texas.  Doors are assembled and sold to residential and commercial builders and the public.  Tri-Supply operates a door mill and pre-hanging shop in Temple, Texas.

<u>JOINT CONFERENCE REPORT</u>--Page 2

The Tri-Supply location in Temple, Texas does not sell framing lumber or operate as a lumberyard.

2.      Stock is a subsidiary of Stock Building Supply Holdings, Inc., which is a large publicly traded builder's supply enterprise. Stock has several locations in Texas.  In Temple, Texas, Stock operates a lumberyard, which includes a door mill and pre-hanging shop.

3.      Vybiral has been in the door milling and door assembly business in excess of thirty (30) years. He has extensive experience in supervising the operations of a door mill. Prior to January 13, 2003, and for the preceding thirteen (13) years, Vybiral was employed by JELD-WEN, Inc. as the general manager of JELD-WEN, Inc.'s Temple, Texas door mill operations.

4.      On or about January 13, 2003, Stock purchased JELD-WEN, Inc., which included JELD-WEN, Inc.'s Temple, Texas location where Vybiral was employed.

5.      After the purchase, Vybiral became employed by Stock. As a requirement for his employment by Stock, Vybiral signed an Employment Agreement dated January 13, 2003. Stock's Employment Agreement contains a Covenant Against Competition.  The Covenant Against Competition contained in the Employment Agreement between Vybiral and Stock restricts Vybiral for a two (2) year period, after the termination of his employment, for whatever reason, from engaging in any business that the Employer (Stock) conducts or enters into during the term of Vybiral's employment within a 100 mile radius of Employer's Temple, Texas branch.

6.      At the time Vybiral signed the Employment Agreement, he was told that his work duties and conditions would remain the same as they had been with JELD-WEN, Inc.  This statement and others by Stock proved to be false.  Stock changed Vybiral's work duties, and

made changes regarding the operations of the Temple, Texas location. For example, Vybiral was assigned duties by Stock for operations in Austin and San Antonio. Stock also micro-managed the Temple, Texas operations and Vybiral's duties. Although sales increased at this location, Stock allocated costs from a centralized purchasing structure. When these costs were assessed, the amount of Vybiral's bonuses for 2004 and 2005 were substantially reduced. In addition to creating more stress for Vybiral, Stock failed to compensate Vybiral. Therefore, Vybiral's bonuses for 2004 and 2005 were substantially reduced from the amounts Vybiral received from JELD-WEN, Inc. based on the profitability of the Temple location.

7.     On November 30, 2005, Vybiral advised Stock that he was resigning and gave his two-week notice. On December 1, 2005, Stock advised Vybiral that his services were no longer needed and effective that date, his employment by Stock was terminated. After the termination of his employment, Vybiral was advised in a letter dated December 9, 2005 from Stock's attorney, that Vybiral had engaged in conduct which violated certain covenants in the Employment Contract. Stock, through its counsel, threatened litigation in the event Vybiral did not respond to Stock's attorney's letter.

8.     In a letter received by Tri-Supply on December 12, 2005, Stock, through its attorney, advised Tri-Supply of Mr. Vybiral's Employment Agreement with Stock.

9.     As of the date of the filing of it Original Petition, Vybiral was not employed by or affiliated with Tri-Supply. Vybiral is not soliciting Stock customers on behalf of Tri-Supply. Vybiral is not soliciting Stock employees to quit their employment with Stock and/or come work for Tri-Supply. Vybiral is not using Stock's trade secret information in performing work for or act on behalf of Tri-Supply.

<u>Plaintiffs' Cause of Action for Declaratory Judgment</u>

Tri-Supply and Vybiral filed suit against Stock pursuant to Chapter 37 of the Texas Civil

Practice and Remedies Code, also known as the Texas Declaratory Judgment Act.

Tri-Supply and Vybiral seek a declaratory judgment, which establishes Vybiral's rights and

obligations, if any, to Stock under the Employment Agreement.  The Employment Agreement is

unenforceable as a matter of law.  Alternatively, the Covenant Against Competition and the other

restrictions in the Employment Agreement are unreasonable, overly broad, and impose a greater

burden upon Vybiral than is necessary to protect the business interests or good will of Stock.

Stock has violated the Employment Agreement and as a result of said breach, Stock is precluded

from seeking injunctive relief and the enforcement of the Covenant Against Competition.

Tri-Supply and Vybiral are entitled to a declaratory judgment that the Covenant Against

Competition contained in the Employment Agreement between Vybiral and Stock is

unenforceable as a matter of law because the Covenant Against Competition is not ancillary to

an otherwise enforceable agreement.  The Employment Agreement between Vybiral and Stock is

an at-will employment relationship because it can be terminated by either party without cause.

The promises contained in the Employment Agreement are all illusory promises that cannot

support the Covenant Against Competition.  Because all of these promises for consideration are

dependant upon continued employment of Vybiral, and because this is an at-will employment

relationship, all of the alleged considerations based on Vybiral's continued employment are

illusory promises.  Illusory promises contained in an at-will Employment Agreement will not

support a covenant not to compete (against competition) because the covenant would not be

ancillary to an otherwise enforceable agreement.  See *Light v. Centel Cellular Company of

Texas*, 883 S.W.2d 642, 644 (Tex. 1994); See *Strickland v. Medtronic, Inc.,* 97 S.W.3d 835, 839

(Tex. App.–Dallas 2003, *pet denied*).

In the alternative, even if the consideration by Stock is not illusory promises, the claimed assertions of consideration by Stock is not ancillary to an otherwise enforceable agreement. Pursuant to Section 15.50 of the Texas Business and Commerce Code, in order to be ancillary to an otherwise enforceable agreement, the consideration given by the employer in an otherwise enforceable agreement must give rise to the employer's interest in restraining the employee from competing and the covenant must be designed to enforce the employee's consideration for agreeing to be restrained. *Tex. Bus. & Comm. Code* §15.50. The claimed considerations by Stock do not give rise to Stock's interest in restraining the employee from competing, and the Covenant is not designed to enforce Vybiral's consideration for the same promises. Furthermore, these promises are illusory, as this is an at-will employment relationship.

Tri-Supply and Vybiral also assert that the Covenant Against Competition in the Employment Agreement is unenforceable as a matter of law because it is an unreasonable restraint of trade. The Covenant Not to Compete is unreasonable with respect to the scope of the restrictions, the time restrictions, and geographic restrictions. A Covenant Not to Compete that is an unreasonable restraint of trade is unenforceable, as a matter of law, pursuant to Section 15.50 of the *Texas Business and Commerce Code*. Furthermore, the Covenant Not to Compete is unenforceable because it attempts to restrict Vybiral from supporting his family without advising Vybiral of the specific prohibited conduct which he must avoid.

Pursuant to Section 37.009 et seq. of the *Texas Declaratory Judgment Act*, Tri-Supply and Vybiral hereby sue Stock for their reasonable and necessary attorneys' fees in the prosecution of this declaratory judgment action. Tri-Supply and Vybiral were forced to file this declaratory judgment action because Tri-Supply and Vybiral believe that a lawsuit was imminent, as Stock recently threatened a lawsuit against Vybiral and Tri-Supply. This Court

<u>JOINT CONFERENCE REPORT</u>--Page 6

should award reasonable and necessary attorneys' fees to Tri-Supply and Vybiral in this action

and any appeal because the prosecution of this declaratory judgment became necessary based on

Stock's actions in trying to enforce an unenforceable covenant not to compete, and by

threatening legal action against Tri-Supply and Vybiral.

<u>Vybiral's Cause of Action for Breach of Employment Agreement</u>

Stock failed to pay Vybiral additional amounts for bonuses due him under the

Employment Agreement.  As a result of Stock's breach of the Employment Agreement, Vybiral

has sustained monetary damages (including attorney's fees) which do not exceed $75,000

exclusive of interest and costs.  Vybiral requests judgment against Stock for his monetary

damages, including attorney's fees, which do not exceed $75,000, exclusive of interest and costs.

    **b.**    **Defendant sets forth its factual and legal description of the case as follows:**

Defendant operates a lumberyard, which includes a door mill and pre-hanging shop in Temple,

Texas.  Until his resignation, effective December 1, 2005, Plaintiff Vybiral was employed by

Stock as the general manager of its Temple facility.  Vybiral signed an Employment Agreement

dated January 13, 2003 that was for a three-year term.  Defendant could not terminate Plaintiff

Vybiral except for cause, as defined in the Employment Agreement.  The Employment

Agreement, among other things, contains two covenants not-to-compete provisions, a covenant

against disclosure of trade secrets, a prohibition on soliciting customers, and a prohibition on

soliciting employees.  For instance, the employment agreement provides that "for a period of two

years from and after the termination of his employment hereunder…[from] directly or indirectly,

in any manner, as a sole proprietor, partner, officer, director, stockholder, advisor or employee,

engag[ing] in any business that the Employer currently conducts or enters into during the term of

the Employee's employment hereunder, within a 100 mile radius of the Employer's Temple.

<u>JOINT CONFERENCE REPORT</u>--Page 7

Texas Branch...." *See* Employment Agreement ¶ 7(a).  Plaintiffs seek a declaratory judgment

that Plaintiff Vybiral is not bound by the covenants not-to-compete contained in the Employment

Agreement.  Defendant asserts that the covenants not-to-compete competition comply with Tex.

Com. Code § 15.50 in that they are "ancillary to or part of an otherwise enforceable agreement at

the time the agreement is made to the extent that it contains limitations as to time, geographical

area, and scope of activity to be restrained that are reasonable and do not impose a greater

restraint than is necessary to protect the goodwill or other business interest of the promisee."

Tex. Com. Code § 15.50.

Defendant denies Plaintiff Vybiral's allegation that it breached the Employment

Agreement by failing to pay bonuses due him under that agreement.  The Employment

Agreement provides that Plaintiff Vybiral was entitled to participate in Defendant's "annual

bonus program, including [Defendant's] performance program, based upon an annual review and

commensurate with the programs made available to [Defendant's] other Branch Managers."  *See*

Employment Agreement ¶ 3 and Schedule A.  Defendant paid Plaintiff Vybiral all bonuses and

compensation to which he was entitled under the Employment Agreement.

2.      The Rule 26(f) conference was held on December 28, 2005.  Bruce M. Partain, lead

counsel for Plaintiffs, and W. Stephen Cockerham, lead counsel for Defendant, participated in

the conference.

3.      There are no related cases pending in any state or federal court.

4.      The parties were able to reach an agreement on a discovery/case management plan, which

is reflected in the attached proposed Scheduling Order.  In addition to the standard discovery

deadlines, the parties also agreed upon the following:  (a) the parties will submit Rule 26(a)(1)

Initial Disclosures on or before January 11, 2006; (b) the parties are to respond to Interrogatories

and Requests for Production within fourteen days of service; (c) the parties will work in good

faith to schedule the depositions of Plaintiff Vybiral, Plaintiff Tri-Supply's corporate

representative, and Defendant's corporate representative no later than January 17, 2006; and (d)

these depositions will take place in Austin, Texas.

5.      The parties suggest January 5, 2007 as the date for Docket Call.

6.      The parties expect the trial to take approximately four days.

7.      The parties do not consent to trial before a magistrate judge.

8.      The parties do not request a conference with the Court pursuant to FED. R. CIV. P. 16(b)

before entry of the Scheduling Order.

<div align="center">Respectfully submitted,</div>

**HUNTON & WILLIAMS LLP**

**WELLS, PEYTON, GREENBERG
& HUNT, L.L.P.**

By___/s/ Bridget A. Blinn_____
    W. Stephen Cockerham
    State Bar No. 04463300
    Bridget A. Blinn
    State Bar No. 24045510
    Energy Plaza, 30th Floor
    1601 Bryan Street
    Dallas, Texas 75201-3402
    Tel. (214) 979-3000
    Fax (214) 880-0011

By_____/s/ Bruce M. Partain_____
    Bruce M. Partain
    State Bar No. 15548400
    Gary J. Linthicum
    State Bar No. 00794174
    P.O. Box 3708
    Beaumont, Texas 77704-3708
    Tel. (409) 838-2644
    Fax. (409) 838-4713

**ATTORNEYS FOR DEFENDANT,
STOCK BUILDING SUPPLY
OF TEXAS, L.P.**

**ATTORNEYS FOR PLAINTIFFS,
TRI-SUPPLY COMPANY, INC.
and WELDON VYBIRAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| RAY MART, INC. D/B/A TRI-SUPPLY COMPANY and WELDON VYBIRAL | § § § | |
| *Plaintiffs,* | § § | CIVIL ACTION NO. 1:05-cv-855 |
| v. | § § | |
| STOCK BUILDING SUPPLY OF TEXAS, L.P., | § § § | |
| *Defendant.* | § | |

### DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES

Defendant Stock Building Supply of Texas, L.P. hereby files its Answer to the Original Petition filed by Plaintiffs Ray Mart, Inc. d/b/a Tri-Supply Company and Weldon Vybiral (collectively, "Plaintiffs"), as follows:

### I. RESPONSES TO ALLEGATIONS IN ORIGINAL PETITION

1.   Defendant admits that Plaintiffs have filed an Original Petition for Declaratory Judgment and Damages ("Original Petition") complaining of Defendant Stock Building Supply of Texas, L.P.

*A. Section I - Discovery Control Plan.*

2.   The allegation in Section I "Discovery Control Plan" of the Original Petition is inapplicable because the case has been removed to federal court.

*B. Section II - Parties.*

3.   Defendant admits the allegations in Section II "Parties" of the Original Petition.

*C. Section III - Venue and Jurisdiction.*

4.      Defendant admits that Stock is transacting business in Texas, including in Beaumont, Jefferson County, Texas. The allegation in Section III "Venue and Jurisdiction" that "this court has personal jurisdiction over said Defendant" is inapplicable because this case has been removed to federal court. Except as expressly admitted, Defendant denies the allegations in Section III "Venue and Jurisdiction."

*D. Section IV - Factual Background.*

5.      Defendant admits that Tri-Supply is a builder supply company that operates door mills and pre-hanging shops at different locations in Texas. Defendant admits that doors are assembled and sold to residential and commercial builders and the public. Defendant is without sufficient information to admit or deny the allegation that the Tri-Supply location in Temple, Texas does not sell framing lumber and does not operate as a lumber yard; accordingly, this allegation is denied. Except as expressly admitted, the allegations contained in paragraph a of Section IV "Factual Background" are denied.

6.      Defendant admits that Stock has several locations in Texas. Defendant admits that Stock operates a lumberyard, which includes a door mill and pre-hanging shop in Temple, Texas. Except as expressly admitted, the allegations contained in paragraph b of Section IV "Factual Background" are denied.

7.      Defendant admits that Vybiral has extensive experience in supervising the operations of a door mill. Defendant is without sufficient information to admit or deny the other allegations contained in paragraph c of Section IV "Factual Background;" accordingly, such allegations are denied. Except as expressly admitted, the allegations contained in paragraph c of Section IV "Factual Background" are denied.

8.    Defendant denies the allegations contained in paragraph d of Section IV "Factual Background."

9.    Defendant admits that Vybiral became employed by Stock.  Defendant admits that as a requirement for his employment with Stock, Vybiral signed an Employment Agreement dated January 13, 2003.  Defendant admits that the Employment Agreement contains a Covenant Against Competition.  Defendant admits that Plaintiffs attached a copy of Vybiral's Employment Agreement to the Original Petition as Exhibit A.  Except as expressly admitted, Defendant denies the allegations in Paragraph e of Section IV "Factual Background."

10.   Defendant admits that Stock changed Vybiral's work duties as allowed in the Employment Agreement and made changes regarding the operations of the Temple, Texas location.  Defendant admits that Vybiral was assigned duties by Stock at operations in Austin and San Antonio.  Except as expressly admitted, Defendant denies the allegations contained in paragraph f of Section VI "Factual Background."

11.   Defendant admits that on November 30, 2005, Vybiral advised Stock that he was resigning and gave his two week notice.  Defendant admits that on December 1, 2005, Stock accepted Vybiral's resignation and advised Vybiral that his services were no longer needed effective that date.  Defendant admits that its letter to Vybiral through its attorney stated that "If you fail to comply with [the directives laid out in the letter], Stock fully intends to pursue all remedies available to it by law, including injunctive relief to which, by the terms of the Employment Agreement, you have already admitted Stock is entitled."  Except as expressly admitted, Defendant denies the allegations contained in paragraph g of Section VI "Factual Background."

12.     Defendant admits that Stock's attorney sent a letter on December 9, 2005 to Tri-Supply advising Tri-Supply of Vybiral's Employment Agreement with Stock and requesting certain written assurances from Tri-Supply regarding any affiliation of Vybiral with Tri-Supply. Defendant admits that Plaintiffs attached a copy of Stock's attorney's December 9, 2005 letter to Tri-Supply to their Petition as Exhibit B.  Defendant is without sufficient information to admit or deny that Tri-Supply received the letter on December 12, 2005; accordingly, this allegation is denied.  Except as expressly admitted, Defendant denies the allegations in paragraph h of Section IV "Factual Background."

13.     Defendant denies the allegation contained in paragraph j of Section IV "Factual Background" that Vybiral is not soliciting Stock Employees to quit their employment with Stock and/or come work for Tri-Supply.  Defendant is without sufficient information to admit or deny the remaining allegations in paragraph i of Section IV "Factual Background;" accordingly, such allegations are denied.

14.     Defendant admits that Tri-Supply and Vybiral seek a declaratory judgment which establishes Vybiral's rights and obligations, if any, to Stock under the Employment Agreement. Except as expressly admitted, Defendant denies the allegations in paragraph j of Section IV "Factual Background."

*E.  Section V - Cause of Action for Declaratory Judgment*

15.     Defendant admits that Tri-Supply and Vybiral filed suit against Stock pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code, also known as the Texas Declaratory Judgment Act.  Defendant admits that Tri-Supply and Vybiral are suing Stock for a declaratory judgment that Vybiral is not bound by the Covenant Against Competition contained in an Employment Agreement between Vybiral and Stock.  Except as expressly admitted, Defendant denies the allegations in Section VI "Cause of Action for Declaratory Judgment."

*F. Section VI.*

16.    Defendant admits that the Covenant Against Competition contained in the
Employment Agreement between Vybiral and Stock restricts Vybiral "for a period of two years
from and after the termination of his employment hereunder…[from] directly or indirectly, in
any manner, as a sole proprietor, partner, officer, director, stockholder, advisor or employee,
engag[ing] in any business that the Employer currently conducts or enters into during the term of
the Employee's employment hereunder, within a 100 mile radius of the Employer's Temple,
Texas Branch…." *See* Employment Agreement ¶ 7(a).   Defendant further admits that the
Covenant Against Competition contained in the Employment Agreement between Vybiral and
Stock restricts Vybiral "for a period of three years from and after the date hereof [from] directly
or indirectly, in any manner, as a sole proprietor, lender, partner, officer, director, participant,
member, advisor, manager, trustee, employee or otherwise, engage in any business in which the
Division has been engaged during the two year period prior to the date hereof or in any business
which is competitive with any business now conducted by the Division anywhere in the state of
Texas or anywhere outside the State of Texas that is within a 100 mile radius of the Branch."
*See* Employment Agreement ¶ 7(b).   Except as expressly admitted, Defendant denies the
allegations in Section VI of the Original Petition.

*G. Section VII.*

17.    Defendant does not admit or deny that "illusory promises contained in an at-will
Employment Agreement will not support a covenant not to compete (against competition)
because the covenant would not be ancillary to an otherwise enforceable agreement" because this
statement is a legal conclusion rather than a factual assertion.  Defendant does not admit or deny
that the citations provided by Plaintiffs after this sentence support the legal conclusion Plaintiffs

assert.  Defendant denies the remaining allegations contained in Section VII of the Original Petition.

*H. Section VII.*

18.    Defendant does not admit or deny that "Pursuant to Section 15.05 of the Texas Business and Commerce Code, in order to be ancillary to an otherwise enforceable agreement must give rise to the employer's interest in restraining the employer from competing and the covenant must be designed to enforce the employee's consideration for agreeing to be restrained" because this statement is a legal conclusion rather than a factual allegation. Defendant does not admit or deny that the citation provided by Plaintiffs after this sentence support the legal conclusion Plaintiffs assert.  Defendant denies the remaining allegations contained in Section VIII of the Original Petition.

*I. Section IX.*

19.    Defendant admits that Tri-Supply and Vybiral assert that the Covenant Against Competition in the Employment Agreement is unenforceable as a matter of law because it is an unreasonable restraint of trade.  Except as expressly admitted, Defendant denies the allegations contained in Section IX of the Original Petition.

*J. Section X.*

20.    Defendant admits that Tri-Supply and Vybiral sued Stock pursuant to Section 37.009 of the Texas Declaratory Judgment Act for their reasonable and necessary attorneys' fees in the prosecution of a declaratory judgment action.  Except as expressly admitted, Defendant denies the allegations contained in Section X of the Original Petition.

*K. Section XI - Cause of Action for Breach of Employment Agreement.*

21.    Defendant admits that Vybiral re-pleads the allegations set forth in the factual background paragraphs set forth in the preceding paragraphs.  The allegations that Vybiral has

sustained money damages which greatly exceed the jurisdictional limits of the state court and

that Vybiral requests judgment against Stock for his money damages exceeding the minimum

jurisdictional limits of the court are inapplicable because this case has been removed to federal

court. Except as expressly admitted, Defendant denies the allegations contained in Section XI

"Cause of Action for Breach of Employment Agreement."

*L. Section XII - Plaintiffs' Request for Disclosure.*

22.    The allegations in Section XII "Plaintiffs' Request for Disclosure" are

inapplicable because this case has been removed to federal court.

*M. Conclusion.*

23.    Defendant admits that Plaintiffs pray that Defendant be cited to appear and

answer, and that on a final trial on the merits, that the Court enter a Declaratory Judgment that

Vybiral is not bound by the Covenant Against Competition contained in the Employment

Agreement between Vybiral and Stock because the Covenant Against Competition is

unenforceable and void as a matter of law; that Vybiral be awarded a monetary judgment against

Stock as requested in the Original Petition; and that Tri-Supply and Vybiral be awarded

reasonable and necessary attorney's fees in the trial court and by appeal; costs of court; interest

as permitted by Texas law; and that Tri-Supply and Vybiral be granted such other and further

relief, either at law or in equity, to which they may be justly entitled to receive. Except as

expressly admitted, Defendant denies the allegations contained in the final paragraph of the

Original Petition, which begins "WHEREFORE, PREMISES CONSIDERED...."

## II. AFFIRMATIVE AND ADDITIONAL DEFENSES OF DEFENDANT

1.    Defendant paid Plaintiff Vybiral all bonuses and compensation to which he was

entitled under the Employment Agreement.

2.    Plaintiffs are not entitled to attorneys' fees, costs, or expenses.

DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES - PAGE 7

3.    Defendant reserves the right to amend to add any additional defenses, counter-claims, or cross-claims which may become known during the course of discovery.

### III.  PRAYER FOR RELIEF

Wherefore, Defendant Stock Building Supply L.P. respectfully requests that Plaintiffs take nothing by their suit, that it recover its costs, and that it be awarded such other and further relief to which it may show itself to be entitled.


Respectfully submitted,

**HUNTON & WILLIAMS LLP**

By:___/s/ Bridget A. Blinn_____
       W. Stephen Cockerham
       Lead Attorney
       State Bar No. 04463300
       Bridget A. Blinn
       State Bar No. 24045510

Energy Plaza, 30th Floor
1601 Bryan Street
Dallas, Texas  75201
214.979.3000
214.880.0011 Fax

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and exact copy of the foregoing Defendant's

Answer and Affirmative Defenses via certified mail, return receipt requested, this 20th day of

December, 2005, addressed as follows:

> Bruce M. Partain
> WELLS, PEYTON, GREENBERG & HUNT, LLP
> 550 Fannin, Sixth Floor, Century Tower
> Beaumont, Texas 77704-3708

> _____/s/ Bridget A. Blinn_____
> Bridget A. Blinn

**UNITED STATES DISTRICT COURT**        **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| RAY MART, INC. d/b/a Tri-Supply<br>Company and WELDON VYBIRAL, | § <br> § <br> § | |
| Plaintiffs, | § <br> § | |
| *versus* | § <br> § | CIVIL ACTION NO. 1:05-CV-855 |
| STOCK BUILDING SUPPLY OF TEXAS,<br>L.P., | § <br> § <br> § | |
| Defendant. | § | |

### ORDER TO CONDUCT RULE 26(f) CONFERENCE

Having been informed by the clerk that one or more defendants in this case have appeared by filing an answer or otherwise, the court hereby directs the parties to confer as required by FED. R. CIV. P. 26(f) no later than January 20, 2006.

In addition to a discussion of the items set forth in Rule 26(f), the parties shall attempt in good faith to agree on certain matters, including deadlines for a proposed Scheduling Order, and shall file with the court a joint written report outlining their proposals no later than February 3, 2006.

The parties must include the following matters in the joint conference report:

1.      A factual and legal description of the case that sets forth the elements of each cause of action and each defense;

2.      The date the Rule 26(f) conference was held, the names of those persons who attended, and the parties they represented;

3.   A list of any cases related to this case pending in any state or federal court, identifying the case numbers and courts along with an explanation of the status of those cases;

4.   An agreed discovery/case management plan, if agreement can be reached, which will be used by the court to prepare a Scheduling Order (a sample Scheduling Order form is attached).   The parties are encouraged to submit a completed Scheduling Order with their joint conference report, including proposed deadlines for the following:

   a.   Joining additional parties;

   b.   Filing amended pleadings;

   c.   Disclosing expert testimony pursuant to FED. R. CIV. P. 26(a)(2) and Local Rule CV-26(b);

   d.   Completing all discovery;

   e.   Filing motions, including motions to transfer, to remand, to exclude or limit expert testimony, to dismiss, and for summary judgment;

5.   A suggested date for Docket Call (see attached list of the court's available Docket Call dates), at which time the final pretrial conference and the trial will be scheduled;

6.   The expected length of trial and whether it will be to a jury or the bench;

7.   Whether the parties jointly consent to trial before a magistrate judge; and

8.   Whether the parties request a conference with the court pursuant to FED. R. CIV. P. 16(b) before entry of the Scheduling Order.

2

The joint conference report must be signed by counsel for each party and by any unrepresented parties.

All parties should keep in mind that the failure to participate fully in the Rule 26(f) conference or to submit the joint conference report on a timely basis may result in the imposition of sanctions authorized by FED. R. CIV. P. 16(f).

SIGNED at Beaumont, Texas, this 19th day of December, 2005.

*Marcia A. Crone*

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

3

UNITED STATES DISTRICT COURT * * * * * * * EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

_____          §
                                   §
*versus*                           §          CIVIL ACTION NO. 1:0_-CV-____
                                   §
                                   §
_____          §

## SCHEDULING ORDER

The following schedule shall be followed.  All communications concerning the case shall be directed in writing to Debbie Collazo, Court Administrator for Judge Crone, P.O. Box 1470, Beaumont, TX 77704.  For urgent matters, Ms. Collazo may be contacted at (409) 654-2880.

1. _____  NEW PARTIES shall be joined, without leave of court, by this date.

2. _____  The pleadings shall be AMENDED, without leave of court, by this date.

3. _____  PLAINTIFF shall designate EXPERT WITNESSES in writing and provide expert reports by this date.

4. _____  DEFENDANT shall designate EXPERT WITNESSES in writing and provide expert reports by this date.

5. _____  DISCOVERY shall be completed by this date.

6. _____  MOTION CUT-OFF.  Aside from motions in limine, no motion, including motions to exclude or limit expert testimony, shall be filed after this date except for good cause shown.  Without leave of court, a party may file only one summary judgment motion.  (This date must be a least 2 weeks after the discovery completion date.)

7. _____  The JOINT PRETRIAL ORDER, including motions in limine and a proposed charge or proposed findings of fact and conclusions of law, shall be filed and proposed trial exhibits shall be exchanged on or before this date.  (This date must be at least 12 weeks after the motion cut-off.)

8. _____  OBJECTIONS TO proposed exhibits, witnesses, and deposition excerpts, as well as responses to motions in limine, shall be filed by this date.  (This date must be no more than 1 week after the Joint Pretrial Order is due.)

9. _____  DOCKET CALL at 10:00 a.m.  (Select a date from the attached list, which must be at least 2 weeks after the Joint Pretrial Order is due.)  The case will be set for Final Pretrial Conference and Trial at the docket call.  The parties should be prepared to try the case on the date of the docket call.

10. _____  Estimated time to try before a jury/the court.  (Underline one.)

SIGNED at Beaumont, Texas, on this _____ day of _____, 2005.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

**Docket Call Dates for Judge Marcia A. Crone**

(Select one of the dates listed below to complete Number 9 of the Scheduling Order)

| | |
|---|---|
| November 4, 2005 | December 8, 2006 |
| December 9, 2005 | January 5, 2007 |
| January 6, 2006 | February 9, 2007 |
| February 3, 2006 | March 9, 2007 |
| March 10, 2006 | April 6, 2007 |
| April 7, 2006 | May 4, 2007 |
| May 5, 2006 | June 8, 2007 |
| June 2, 2006 | July 6, 2007 |
| July 7, 2006 | August 3, 2007 |
| August 4, 2006 | September 7, 2007 |
| September 8, 2006 | October 5, 2007 |
| October 6, 2006 | November 2, 2007 |
| November 3, 2006 | December 7, 2007 |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| RAY MART, INC. D/B/A TRI-SUPPLY COMPANY and WELDON VYBIRAL<br><br>*Plaintiffs*,<br><br>v.<br><br>STOCK BUILDING SUPPLY OF TEXAS, L.P.,<br><br>*Defendant*. | §<br>§<br>§<br>§<br>§   CIVIL ACTION NO. 1:05-cv-855<br>§<br>§<br>§<br>§<br>§<br>§ |

## DEFENDANT'S NOTICE OF LEAD COUNSEL

Please take notice that W. Stephen Cockerham, State Bar No. 04463300 will serve as lead counsel for Defendant Stock Building Supply of Texas, L.P.  Bridget A. Blinn, State Bar No. 24045510 will remain counsel of record as well.

Respectfully submitted,

**HUNTON & WILLIAMS LLP**

By:   /s/ Bridget A. Blinn
        W. Stephen Cockerham
        Lead Attorney
        State Bar No. 04463300
        Bridget A. Blinn
        State Bar No. 24045510

Energy Plaza, 30th Floor
1601 Bryan Street
Dallas, Texas  75201
214.979.3000
214.880.0011 Fax

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and exact copy of the foregoing Defendant's

Notice of Lead Counsel via certified mail, return receipt requested, this 19th day of December,

2005, addressed as follows:

> Bruce M. Partain
> WELLS, PEYTON, GREENBERG & HUNT, LLP
> 550 Fannin, Sixth Floor, Century Tower
> Beaumont, Texas 77704-3708

> ___/s/ Bridget A. Blinn_____
> Bridget A. Blinn

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| **RAY MART, INC. D/B/A TRI-SUPPLY** | § | |
| **COMPANY and WELDON VYBIRAL** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | **CIVIL ACTION NO. 1:05-cv-855** |
| **v.** | § | |
| | § | |
| **STOCK BUILDING SUPPLY OF TEXAS,** | § | |
| **L.P.,** | § | |
| | § | |
| *Defendant.* | § | |

## DEFENDANT'S EXPEDITED MOTION
## TO TRANSFER VENUE AND BRIEF IN SUPPORT

Pursuant to 28 U.S.C. §1404(a), Defendant Stock Building Supply of Texas, L.P. ("Stock") hereby moves this Court to transfer venue to the Western District of Texas, Waco Division and to expedite its consideration of this motion. In support of this transfer, Defendant would show the court as follows:

### I. BACKGROUND

On December 14, 2005, Plaintiffs Ray Mart, Inc. d/b/a Tri-Supply Company and Weldon Vybiral filed Plaintiffs' Original Petition for Declaratory Judgment and Damages ("Plaintiffs' Petition") in the 172nd District Court in Jefferson County, Texas. Defendant removed this action to this Court on December 19, 2005.

Stock owns and operates a millwork facility, including a lumberyard, door-mill and pre-hanging operation in Bell County, Texas. *See* Affidavit of David Corna, attached Exhibit A ("Corna Affidavit") ¶ 3. Plaintiff Weldon Vybiral ("Vybiral") was employed by Stock as the general manager of this Bell County facility until his resignation on November 30, 2005. *Id.* at ¶¶ 4, 6. Vybiral worked under an Employment Agreement with Stock as the general manager of

Stock's Bell County facility. Employment Agreement, Exhibit A to Plaintiff's Petition; Corna

Affidavit ¶ 4. Vybiral's responsibilities did not include working in the Beaumont, Texas area.

Corna Affidavit ¶ 5.

Plaintiffs' Petition seeks a declaratory judgment establishing Vybiral's rights and

obligations to Stock under his Employment Agreement, including a Covenant Against

Competition restraining Vybiral from working for or being involved with a competitive business

within a 100 mile radius of Defendant's Temple facility. Plaintiffs' Petition, p. 4. Vybiral also

sues for breach of the Employment Agreement related to the alleged underpayment of certain

bonuses. Vybiral resides in Bell County, Texas. Plaintiffs' Petition, p. 1. Plaintiff Ray Mart,

Inc. d/b/a Tri-Supply Company ("Tri-Supply") operates a door mill and pre-hanging shop in

Temple, Bell County, Texas. *Id.* at p. 2. Tri-Supply denies, as of the date of the filing of the

Petition, that it employs or is affiliated with Vybiral. Plaintiffs' Petition, p. 4. Thus, it is unclear

what its connection or standing is to this lawsuit. The only apparent connection between

Plaintiffs' claims and Jefferson County, Texas is that Tri-Supply's principal place of business is

located there. Plaintiffs' Petition, p. 1.

Despite the above facts, Plaintiffs filed their suit in Jefferson County, Texas,

necessitating removal to this Court in the Eastern District of Texas rather than to the Western

District of Texas, where all facts underlying the dispute took place. It is in the interest of justice

that this case be transferred to the Western District of Texas, where the suit might have been

brought and where the events underlying the cause of action took place.

## II. ARGUMENT

Pursuant to 28 U.S.C. 1441(a), "for the convenience of parties and witnesses, in the

interest of justice, a district may transfer any civil action to any other district where it might have

been brought." In determining whether to grant a motion to transfer an action, the Court should

consider three primary factors: convenience of the parties, convenience of the witnesses, and the interests of justice. *TV-3, Inc. v. Royal Ins. Co. of Am.*, 28 F. Supp. 2d 407, 411 (E.D. Tex. 1998) (citing *Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988)).

These three primary factors break down into nine specific inquiries the Court should consider in making a transfer decision: (1) plaintiff's choice of forum; (2) the availability of compulsory process for the attendance of unwilling witnesses; (3) the cost of obtaining the attendance of willing witnesses; (4) accessibility of sources of proof; (5) location of counsel; (6) the relative congestion of the Court's dockets; (7) the relation of the community in which courts and the jurors are required to serve to the occurrence giving rise to the suit; (8) the determination of which state's law will apply when the law of two states could apply; and (9) the time, cost, and ease with which the trial can be conducted, and all other practical considerations relative to the trial and determination of the case. *Id.; see also Greiner v. American Motor Sales Corp.*, 645 F. Supp. 277, 278 (E.D. Tex. 1986) (citing *Coons v. American Horse Show Association, Inc.*, 533 F.Supp. 398 (S.D. Tex. 1982); *Morgan v. Illinois Central Railroad Co.*, 161 F.Supp. 119 (S.D. Tex. 1958)). Viewed together, these factors weigh heavily in favor of transferring venue to the Western District, and it is in the interest of justice for the court to transfer the case.

**A. Viewed together, the factors weigh heavily in favor of transfer.**

An evaluation of the nine specific inquiries demonstrates that six factors weigh heavily in favor of transfer.

*1. Plaintiff's choice of forum.*

Plaintiffs bring two causes of action against Stock: 1) declaratory judgment action asserting that Vybiral is not bound by the Covenant Against Competition in the Employment Agreement between Vybiral and Stock; and 2) breach of the same Employment Agreement between Vybiral and Stock for the alleged underpayments of bonuses. Plaintiffs' causes of

action have absolutely no connection or tie to Jefferson County or the Eastern District. Conversely, Plaintiffs' causes of action all relate to, and are connected to, Bell County and the Western District.

First, the only parties to the Employment Agreement, which is the basis for both Plaintiffs' causes of actions, are Vybiral and Stock. Employment Agreement, Exhibit A to Plaintiff's Petition. Vybiral is a resident of Bell County, Texas. Plaintiffs' Petition, p. 1. The Stock facility where Vybiral was employed is located in Bell County, Texas. Corna Affidavit ¶ 4; Plaintiffs' Petition, p. 2. Bell County is located in the Waco Division of the Western District of Texas.

Second, the Employment Agreement in question was being performed in the area covered by the Western District of Texas. In this regard, Vybiral worked at, and was general manager over, the Stock facility located in Bell County. Corna Affidavit ¶ 4. For example, the alleged bonus underpayments occurred in Bell County.

Third, the Covenant Against Competition Vybiral agreed to in his Employment Agreement places certain restrictions on Vybiral within a 100 mile radius of Stock's facility in Bell County. Employment Agreement, attached as Exhibit A to Plaintiffs' Petition. This radius does not touch the Eastern District. More specifically, this Covenant Against Competition would not prohibit Vybiral from working for Plaintiff Tri-Supply in Jefferson County or anywhere in the Eastern District.

Fourth, other than the bald and unsupported statement that "this lawsuit arises from facts and events occurring in Beaumont, Jefferson County, Texas," Plaintiffs plead no facts in their original petition that would support a finding that there is any connection between the causes of action in this suit and Jefferson County and the Eastern District.

DEFENDANT'S EXPEDITED MOTION TO TRANSFER VENUE - PAGE 4

Where none or few of the operative facts underlying the cause of action occur within the forum chosen by the plaintiff, the chosen forum is entitled to less consideration. *TV-3, Inc.*, 29 F. Supp. at 411 (citing *Fletcher v. Exxon Shipping Co.*, 727 F. Supp. 1086, 1087 (E.D. Tex. 1989); *Fletcher v. Southern Pacific Transp. Co.*, 648 F. Supp. 1400, 1404 (E.D. Tex. 1986). In the instant case, none of the operative facts underlying the cause of action occurred within the forum chosen by Plaintiffs. In *TV-3*, as in this case, the facts underlying the cause of action did not occur within the Eastern District. *Id.* Accordingly, the court afforded less deference to the plaintiff's choice of forum, and found that the favor weighed only "slightly" in favor of the Plaintiff, but it was "not the most important factor in regard to transfer..." *Id.* at 412.

*2. Availability of compulsory process for the attendance of unwilling witnesses.*

The availability of compulsory process for the attendance of unwilling witnesses, along with the cost of obtaining the attendance of willing witnesses, is very important to the court's determination. This Court has previously described them as "possibly the most important factors." *Fletcher*, 648 F. Supp. at 1401-02. Due to the nature of the causes of action asserted by Plaintiffs, it is apparent that the majority of the witnesses will be Plaintiff and employees and former employees of Defendant—who reside and work in Bell County, Texas. Defendant's Bell County facility in Temple, Texas is located more than 200 miles from Beaumont, Texas, where the trial would be held in this case should it remain in the Eastern District. Therefore, no witnesses residing in Temple, Texas would be within this Court's subpoena range. *See* FED. R. CIV. P. 45(b)(2). Thus, it would not be possible to compel them to appear at trial. Therefore, this factor weighs strongly in favor of transfer.

*3. Cost of obtaining the attendance of willing witnesses.*

Defendant's place of business and the majority of the witnesses Defendant anticipates calling at trial both work and reside in Bell County, Texas, over 200 miles from Beaumont.

Vybiral also resides in Bell County. Tri-Supply asserts that it does not employ Vybiral at its facility located in Bell County, but Tri-Supply's interest in doing so is its only logical connection to the case at hand. The only connection any of the parties have to Beaumont, Texas, is that Tri-Supply's principal place of business is located there. This connection is not related in any way to the facts underlying the causes of action in question. *See* Plaintiff's Petition, p. 1 (stating Tri-Supply's principal place of business). In order to produce witnesses at trial, Defendant will be forced to ask those witnesses to travel over 200 miles and incur additional costs to feed and house those witnesses over the course of the trial. Presumably, Plaintiffs would incur similar costs for any witnesses they would call from Bell County, Texas, including Vybiral. As in *TV-3*, "Since the majority of witnesses would have to travel a great distance [to the trial location], at potentially great cost in time and money, willing witnesses would be better able to testify [in the location where they work]....these considerations weigh strongly in favor of transfer." *Id.* at 412.

### 4. *The accessibility and location of sources of proof.*

Because the facts underlying this dispute took place and will take place entirely in Bell County, Texas, common sense indicates that any documents or other evidence relevant to the controversy would be more readily available near Bell County than in Beaumont. *See Id.* (noting that common sense dictates that documents would be more easily accessible near the site of the facts underlying the events).

### 5. *The location of counsel.*

Counsel for Defendant is located in Dallas, Texas. Counsel for Plaintiffs is located in Beaumont, Texas. Therefore, it is an advantage to counsel for Plaintiffs (if for no other interested parties) to maintain venue in the Eastern District. On the other hand, Waco is more convenient to counsel for Stock. Location of counsel is a factor to which the court should assign

little weight due to the slight inconvenience of finding local counsel. This factor should not weigh strongly in either direction. *See Id.* at 413 (noting that when either witnesses or attorneys will have substantial travel time, local counsel can help ease the burden on attorneys).

      *6. The relative congestion of the Court's dockets.*

      Counsel for Defendant has examined the docket for the Beaumont Division of the Eastern District of Texas and the docket for the Waco Division of the Western District of Texas. It appears that the Beaumont Division has a significantly higher case load than the Waco Division. Counsel is aware that the Court is in the best position to determine whether its own docket is full enough to weigh in favor of transfer.

      *7. The relation of the community in which courts and the jurors are required to serve to the occurrence giving rise to the suit.*

      As the court noted in *TV-3*, "Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation....There is a local interest in having localized controversies decided at home." *Id.* at 413. In this case, the entire employment relationship subject to the Employment Agreement took place in Bell County, Texas. The radius of the Covenant Against Competition centers in Temple, Texas, in Bell County. Both Defendant and Tri-Supply operate business locations in Bell County, which are the subject of the dispute. There is no local interest in Beaumont, Texas, whatsoever related to the subject matter of this suit. Therefore, this factor weighs in favor of transferring venue.

      *8. Determination of which state's law will apply.*

      This factor is not at issue in this case. The contract at issue explicitly states that the law of Texas will apply, and both the transferor and transferee courts would be located in Texas.

> 9. *The time, cost, and ease with which the trial can be conducted, and all other practical considerations relative to the trial and determination of the case.*

The trial can be conducted with more ease and at less expense in the Western District of Texas. Although both Plaintiffs' counsel and Defendant's counsel would have to travel to try the case there, most of the witnesses, including Vybiral, reside in the Western District of Texas. Unwilling witnesses would be subject to the court's subpoena power there. The events underlying the dispute took place there. Stock and Tri-Supply both operate facilities there. Witnesses would not have to travel and documents and other evidence would not have to be moved more than 200 miles to testify at trial if the trial took place in the Western District. The community of Bell County has a much greater interest in the determination of the case than does the community of Jefferson County. Therefore, this factor should weigh heavily in favor of transfer to the Western District of Texas. *See TV-3, Inc.*, 28 F. Supp. 2d at 420 (stating that when parties witnesses and documents are all located in the transferee district, transfer will result in significant savings in time and expense at trial and therefore this factor weighs heavily in favor of transfer).

## B. The suit might have been brought in the Western District of Texas.

This action could have been filed in federal court because the parties are diverse and the amount in controversy exceeds $75,000. *See* Defendant's Notice of Removal. Plaintiffs might have chosen to file in federal court, and then would have been bound by 28 U.S.C. §1391(a), which allows for a suit to be filed in a district (1) where defendant resides, (2) where a substantial part of the events or omissions giving rise to the claim occurred, or (3) if there is no other district where suit may be brought, in any district where defendant is subject to personal jurisdiction. Defendant resides in Bell County, in the Western District of Texas, and the Employment Agreement—which is the center of both causes of action—covered Vybiral's

employment by Defendant in Bell County in the Western District of Texas. Accordingly, this suit might have been brought in the Western District of Texas.

**C. The interests of justice weigh in favor of transfer.**

Plaintiffs filed their case in an improper venue in Texas state court under Texas general venue statute. TEX. CIV. PRAC. & REM. CODE § 15.002. *See* Defendant's Motion to Transfer Venue, filed in state court action, attached at Exhibit B. The venue chosen by Plaintiffs is completely unrelated to the events underlying the cause of action. It will place a considerable burden on the witnesses required to testify, as well as on Defendant, to try this case in the Eastern District of Texas. It is in the interest of justice that Plaintiffs be prevented from being able to take advantage of their improper choice of venue in the state court action and that this case be transferred to the Western District of Texas, where the events underlying the cause of action took place.

**D.   Stock requests that the Court expedite its consideration of this motion.**

Stock requests that the Court expedite its consideration of this motion. Although Tri-Supply asserts that it does not currently employ Vybiral, apparently it anticipates doing so in the near future (or it would not have brought this suit). *See* Plaintiffs' Petition p. 4 ("As of the date of the filing of this Original Petition, Vybiral is not employed by or affiliated with Tri-Supply..."). Stock believes it would be a breach of the Covenant Against Competition for Vybiral to go to work for Tri-Supply in its Temple facility and that Stock is entitled to injunctive relief to prevent that occurrence. Therefore, it is important that this Motion be considered expeditiously so that Stock is in position to seek injunctive relief to which it may be entitled. Tri-Supply should not be allowed to preemptively file suit in Jefferson County over an employment agreement to which it is not a party to place Stock in a catch-22 of having to choose

between accepting venue in a location that has no connection to the Plaintiffs' claims and having to delay in seeking injunctive relief.

## III. CONCLUSION

Wherefore, in consideration of the foregoing, Defendant respectfully requests that the Court grant its Expedited Motion to Transfer Venue and that the Court expedite its consideration of this motion.

Respectfully submitted,

**HUNTON & WILLIAMS LLP**

By:___/s/ Bridget A. Blinn_____
      W. Stephen Cockerham
      Lead Attorney
      State Bar No. 04463300
      Bridget A. Blinn
      State Bar No. 24045510

Energy Plaza, 30th Floor
1601 Bryan Street
Dallas, Texas  75201
214.979.3000
214.880.0011 Fax

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF CONFERENCE

The undersigned has conferred with opposing counsel, Bruce M. Partain, in order to determine whether he opposes this Defendant's Expedited Motion to Transfer Venue.  Plaintiffs oppose the motion.

    __/s/ W. Stephen Cockerham_____
    W. Stephen Cockerham

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and exact copy of the foregoing Defendant's

Expedited Motion to Transfer Venue via certified mail, return receipt requested, this 19th day of

December, 2005, addressed as follows:

> Bruce M. Partain
> WELLS, PEYTON, GREENBERG & HUNT, LLP
> 550 Fannin, Sixth Floor, Century Tower
> Beaumont, Texas 77704-3708
>
>
> ___/s/ Bridget A. Blinn_____
> Bridget A. Blinn

# AFFIDAVIT OF DAVID CORNA

STATE OF TEXAS             §
                           §
COUNTY OF TRAVIS           §

I, David Corna, testify and declare the following under the penalty of perjury:

1.   My name is David Corna I am over 21 years of age, am competent to testify as a witness, and have personal knowledge of the facts set forth in this affidavit.

2.   I am employed by Stock Building Supply of Texas, L.P. ("Stock") as District Manager. My responsibilities include operations management oversight in Texas.

3.   Stock operates a millwork facility, including a lumberyard, door-mill and pre-hanging operation in Bell County, Texas.

4.   Weldon Vybiral was employed by Stock as the general manager of its Bell County facility.  Mr. Vybiral reported to me during his employment with Stock.

5.   Mr. Vybiral's responsibilities did not include working in the Beaumont, Texas area.

6.   Mr. Vybiral resigned on November 30, 2005.

7.   Stock conducts operations at its Temple, Bell County, Texas location, including a lumberyard, door mill, and pre-hanging shop.

8.   Stock's principal office in Texas is not located in Jefferson County, and the decision makers for Stock do not conduct its daily affairs in Jefferson County.



EXHIBIT
A

I declare under the penalty of perjury under the laws of the State of Texas and the United States

of America that the foregoing is true and correct, and this affidavit was executed on December

_16_, 2005.

David Corna

SWORN TO and SUBSCRIBED before me, the undersigned Notary Public on this _16_

day of December 2005, to certify which witnessed my hand and official seal.

DEBBIE LYNN LAFRANCE
NOTARY PUBLIC
State of Texas
Comm. Exp. 11-15-2008

NOTARY PUBLIC, STATE OF TEXAS

### AFFIDAVIT OF DAVID CORNA

STATE OF TEXAS       §
                              §
COUNTY OF TRAVIS     §

      I, David Corna, testify and declare the following under the penalty of perjury:

      1.   My name is David Corna I am over 21 years of age, am competent to testify as a witness, and have personal knowledge of the facts set forth in this affidavit.

      2.   I am employed by Stock Building Supply of Texas, L.P. ("Stock") as District Manager. My responsibilities include operations management oversight in Texas.

      3.   Stock operates a millwork facility, including a lumberyard, door-mill and pre-hanging operation in Bell County, Texas.

      4.   Weldon Vybiral was employed by Stock as the general manager of its Bell County facility.  Mr. Vybiral reported to me during his employment with Stock.

      5.   Mr. Vybiral's responsibilities did not include working in the Beaumont, Texas area.

      6.   Mr. Vybiral resigned on November 30, 2005.

      7.   Stock conducts operations at its Temple, Bell County, Texas location, including a lumberyard, door mill, and pre-hanging shop.

      8.   Stock's principal office in Texas is not located in Jefferson County, and the decision makers for Stock do not conduct its daily affairs in Jefferson County.



EXHIBIT
A

I declare under the penalty of perjury under the laws of the State of Texas and the United States

of America that the foregoing is true and correct, and this affidavit was executed on December

_16_, 2005.

David Corna

SWORN TO and SUBSCRIBED before me, the undersigned Notary Public on this _16_

day of December 2005, to certify which witnessed my hand and official seal.

DEBBIE LYNN LAFRANCE
NOTARY PUBLIC
State of Texas
Comm. Exp. 11-15-2008

NOTARY PUBLIC, STATE OF TEXAS

CAUSE NO. E176210

| | | |
|---|---|---|
| RAY MART, INC., D/B/A TRI-SUPPLY COMPANY and WELDON VYBIRAL, | § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § § § § | |
| v. | § § | JEFFERSON COUNTY, TEXAS |
| STOCK BUILDING SUPPLY OF TEXAS, L.P., | § § § | |
| Defendant | § | 172ND JUDICIAL DISTRICT |

## DEFENDANT'S MOTION TO TRANSFER VENUE

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant Stock Building Supply of Texas, L.P. ("Defendant Stock") moves the Court to transfer venue to Bell County and would show the Court as follows:

## I. BACKGROUND

1.      On December 14, 2005, Plaintiffs Ray Mart, Inc. D/B/A Tri-Supply Company ("Plaintiff Ray Mart") and Weldon Vybiral ("Plaintiff Vybiral") filed Plaintiffs' Original Petition for Declaratory Judgment and Damages ("Plaintiffs' Petition").

2.      Defendant Stock owns and operates a millwork facility, which includes a lumberyard. door-mill and pre-hanging operation in Bell County, Texas. *See* Affidavit of David Corna ¶ 3, attached as Exhibit A ("Corna Affidavit"). Plaintiff Vybiral was employed by Defendant Stock as the general manager of this facility until his resignation on November 30. 2005. *See* Corna Affidavit ¶¶ 4, 6. Plaintiff Vybiral worked under an Employment Agreement with Defendant Stock. Employment Agreement, Exhibit A to Plaintiff's Petition.



3.     Plaintiffs' Petition seeks a declaratory judgment establishing Plaintiff Vybiral's rights and obligations to Defendant Stock under his Employment Agreement, including a Covenant Against Competition restraining Vybiral from working for or being involved with a competitive business within a 100 mile radius of Defendant's Bell County facility. Plaintiffs' Petition, p. 4. Plaintiff Vybiral also sues for breach of the Employment Agreement related to the alleged underpayment of certain bonuses.

4.     Plaintiff Vybiral resides in Bell County, Texas. Plaintiffs' Petition, p. 1.

5.     Plaintiff Ray Mart, Inc. D/B/A Tri-Supply Company operates a door mill and pre-hanging shop in Temple, Bell County, Texas. Plaintiffs' Petition, p. 2. Plaintiff Ray Mart denies, as of the date of the filing of the Petition, that it employs or is affiliated with Plaintiff Vybiral. Plaintiffs' Petition, p. 4. Thus, it is unclear what its connection or standing is to this lawsuit.

6.     The only apparent connection between Plaintiffs' claims and Jefferson County, Texas is that Plaintiff Ray Mart's principal place of business is located there. Plaintiffs' Petition, p. 1.

## II. ARGUMENT AND AUTHORITIES

Tex. Civ. Prac. & Rem. Code § 15.002 details the standard for proper venue. All lawsuits *shall* be brought "(1) in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred; (2) in the county of defendant's residence at the time the cause of action accrued if defendant is a natural person; (3) in the county of defendant's principal office in this state, if defendant is not a natural person; or (4) if Subdivisions (1), (2), and (3) do not apply, in the county in which the plaintiff resided at the time of the accrual of the cause of action." Tex. Civ. Prac. & Rem. Code § 15.002(a).

**A. Jefferson County is not the proper venue for this suit.**

Jefferson County fails to meet any of the mandatory criteria for venue set forth in TEX.
CIV. PRAC. & REM. CODE § 15.002(a), thus venue is improper in Jefferson County.

*1.  The events or omissions giving rise to Plaintiffs' claims did not occur in Jefferson
County.*

Plaintiffs bring two causes of action against Defendant Stock:  1) declaratory judgment
action that Plaintiff Vybiral is not bound by the Covenant Against Competition in the
Employment Agreement between Plaintiff Vybiral and Defendant Stock; and 2) breach of the
same Employment Agreement between Plaintiff Vybiral and Defendant Stock for the alleged
underpayments of bonuses.  Plaintiffs' causes of action have no connection or tie to Jefferson
County.

First, the only parties to the Employment Agreement, which is the basis for both
Plaintiffs' causes of actions, are Plaintiff Vybiral and Defendant Stock.  Employment Agreement,
Exhibit A to Plaintiff's Petition.  Plaintiff Vybiral is a resident of Bell County, and he worked at,
and was general manager over, Defendant Stock's facility located in Bell County.  *See* Plaintiffs'
Petition, p. 1, Corna Affidavit ¶¶ 4, 6.

Second, the Covenant Against Competition Plaintiff Vyribal agreed to in his Employment
Agreement places certain restrictions on him within a 100 mile radius of Defendant Stock's
facility in Bell County, and would not restrict him for working for a competitor in Jefferson
County.  Employment Agreement, Exhibit A to Plaintiffs' Petition.

Third, the alleged underpayment of bonuses did not occur in Jefferson County because
Plaintiff did not work there.  *See* Corna Affidavit ¶ 5.

Finally, other than the bald and unsupported statement that "this lawsuit arises from facts
and events occurring in Beaumont, Jefferson County, Texas," Plaintiffs plead no facts in their

original petition that would support a finding that there is any connection between the causes of action in this suit and Jefferson County. *See* Plaintiffs' Petition, p. 2.

2. *Defendant Stock does not maintain its principal office in Jefferson County.*

When the defendant is not a natural person, venue is proper in the county where defendant's principal office is located. TEX. CIV. PRAC. & REM. CODE § 15.002(3). "Principal office" refers to the office of a partnership where "the decision makers for the organization" within Texas "conduct the daily affairs of the organization." TEX. CIV. PRAC. & REM. CODE § 15.001(a). Plaintiffs do not plead nor allege that Defendant Stock's principal office is in Jefferson County. Moreover, Defendant Stock's principal office is not located in Jefferson County. *See* Corna Affidavit ¶ 8. In this regard, the decision makers for Defendant Stock do not conduct its daily affairs in Jefferson County. *Id.*

Because all or a substantial part of the events or omissions giving rise to Plaintiffs' claims did not occur in Jefferson County, but did occur in Bell County as discussed below, and because Defendant Stock does not maintain its principal office in Jefferson County, venue is improper in Jefferson County.

**B. Bell County is the proper venue for this suit.**

Pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002(a), venue is proper in Bell County. All pertinent events giving rise to this dispute arose in Bell County, Texas. Plaintiff Vybiral worked as a general manager at Defendant Stock's Bell County location under the Employment Agreement upon which both of Plaintiffs' claims are based. *See* Corna Affidavit ¶ 4. The Covenant Against Competition, from which Plaintiffs seek relief, is in effect within a 100 mile radius of Defendant Stock's branch in Bell County. *See* Employment Agreement, Exhibit A to Plaintiffs' Petition. Plaintiffs' breach of contract claim is rooted in the employment relationship between Plaintiff Vybiral and Defendant Stock. As mentioned, Plaintiff Vybiral worked in Bell



County, and was compensated in Bell County. *See* Corna Affidavit ¶ 4. Plaintiff Vybiral's claims for monetary damages stem from work performed in Bell County.

For the foregoing reasons, Defendant Stock objects to venue in Jefferson County and respectfully requests that the Court transfer venue to Bell County.

## III. REMOVAL

Defendant Stock has removed this matter to federal district court pursuant to 28 U.S.C. §§ 1332(a), 1441(a) and (b), and 1446. In the event that this matter is remanded to this Court, Defendant Stock requests that the Court consider, act upon and grant this Motion to Transfer Venue.

WHEREFORE, PREMISES CONSIDERED, Defendant Stock respectfully requests that the Court grant Defendant's Motion to Transfer Venue to Bell County, Texas.

Respectfully submitted,

HUNTON & WILLIAMS

By: _____
W. Stephen Cockerham
State Bar No. 04463300
Bridget A. Blinn
State Bar No. 24045510

Energy Plaza, 30th Floor
1601 Bryan Street
Dallas, Texas 75201-3402
214.979.3000
214.880.0011 (fax)

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF CONFERENCE

The undersigned has conferred with opposing counsel, Bruce M. Partain, and Plaintiffs

oppose this Motion to Transfer Venue.

W. Stephen Cockerham

*by permission Blinn*

## CERTIFICATE OF SERVICE

This will certify that a true and correct copy of Defendant's Motion to Transfer Venue

was delivered to Plaintiff at the following address via certified mail, return receipt requested, on

this 19th day of December, 2005:

> Bruce M. Partain
> Wells, Peyton, Greenberg & Hunt, L.L.P.
> 550 Fannin, Sixth Floor, Century Tower, 77701
> Beaumont, Texas 77704-3708

Bridget A. Blinn

  

## AFFIDAVIT OF DAVID CORNA

STATE OF TEXAS     §
                     §
COUNTY OF TRAVIS   §

I, David Corna, testify and declare the following under the penalty of perjury:

1. My name is David Corna I am over 21 years of age, am competent to testify as a witness, and have personal knowledge of the facts set forth in this affidavit.

2. I am employed by Stock Building Supply of Texas, L.P. ("Stock") as District Manager. My responsibilities include operations management oversight in Texas.

3. Stock operates a millwork facility, including a lumberyard, door-mill and pre-hanging operation in Bell County, Texas.

4. Weldon Vybiral was employed by Stock as the general manager of its Bell County facility. Mr. Vybiral reported to me during his employment with Stock.

5. Mr. Vybiral's responsibilities did not include working in the Beaumont, Texas area.

6. Mr. Vybiral resigned on November 30, 2005.

7. Stock conducts operations at its Temple, Bell County, Texas location, including a lumberyard, door mill, and pre-hanging shop.

8 Stock's principal office in Texas is not located in Jefferson County, and the decision makers for Stock do not conduct its daily affairs in Jefferson County.



EXHIBIT

A

I declare under the penalty of perjury under the laws of the State of Texas and the United States

of America that the foregoing is true and correct, and this affidavit was executed on December

16 , 2005.

David Corna

SWORN TO and SUBSCRIBED before me, the undersigned Notary Public on this 16

day of December 2005, to certify which witnessed my hand and official seal.

NOTARY PUBLIC, STATE OF TEXAS

DEBBIE LYNN LAFRANCE
NOTARY PUBLIC
State of Texas
Comm. Exp. 11-15-2008

# ATTENTION ATTORNEYS

**<u>DO NOT E-MAIL THE FOLLOWING DOCUMENT</u>:**
"CONSENT TO PROCEED BEFORE THE UNITED STATES
MAGISTRATE JUDGE." This document must be submitted to the Clerk in
**<u>paper form</u>.**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

Ray Mart, Inc                                                          1:05cv855
v.

Stock Building Supply of TX, LP


CONSENT TO PROCEED BEFORE UNITED STATES MAGISTRATE JUDGE


In accordance with the provisions of 28 U.S.C. Section 636( c), you are hereby notified that a United States magistrate judge of this district court is available to conduct any or all proceedings in this case, including a jury or nonjury trial, and to order the entry of a final judgment. Exercise of this jurisdiction by a magistrate judge is, however, permitted only if all parties voluntarily consent. You may, without adverse substantive consequences, withhold your consent, but this will prevent the court's trail jurisdiction from being exercised by a magistrate judge.

An appeal from a judgement entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgement of a district court.


NOTICE


In accordance with the provisions of 28 U.S.C. 636 ( c) , the parties in this case hereby voluntarily consent to have a United States magistrate judge conduct any and all further proceedings in the case, including trial, order the entry of a final judgement and conduct all post-judgement proceedings.

| Signatures | Party Represented | Date |
|------------|-------------------|------|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

Dated: _____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

FILED - CLERK
U.S. DISTRICT COURT

2005 DEC 19 PM 2: 16

TX EASTERN-BEAUMONT

BY _____

**1:05CV0855**

| | |
|---|---|
| RAY MART, INC. D/B/A TRI-SUPPLY COMPANY and WELDON VYBIRAL<br><br>        *Plaintiffs*,<br><br>v.<br><br>STOCK BUILDING SUPPLY OF TEXAS, L.P.,<br><br>        *Defendant.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

CIVIL ACTION NO. _____

**Judge Crone**

## DEFENDANT'S NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332(a), 1441(a) and (b), and 1446, Defendant Stock Building Supply of Texas, L.P. hereby gives notice of the removal to this Court of an action commenced against it in the District Court of Jefferson County, Texas, 172nd Judicial District, styled <u>Ray Mart, Inc. d/b/a Tri-Supply Company and Weldon Vybiral</u>, Cause No. E176210 ("the State Court Action"). In support of this removal, Defendant states as follows:

1.     On December 14, 2005, Ray Mark, Inc. and Weldon Vybiral (collectively, "Plaintiffs") filed the State Court Action.

2.     Plaintiffs have not yet served their Original Petition for Declaratory Judgment and Damages ("Petition") on Defendant. Plaintiffs' counsel provided a courtesy copy to Defendant on December 14, 2005.

3.     Removal is proper because there is complete diversity of citizenship between the parties, in that the parties are citizens and residents of different states and the amount in controversy is in excess of $75,000 exclusive of interest and costs. 28 U.S.C. §§ 1332(a), 1441(b). Plaintiff Weldon Vybiral is a citizen and resident of Texas. Plaintiff Ray Mart, Inc. is a

Texas Corporation with its principal place of business in Texas. *See* Plaintiff's Original Petition. Defendant is a limited partnership. It has two partners. Its general partner, Stock Building Supply, Inc., a North Carolina corporation with its principal place of business in North Carolina. Its limited partner, Stock Building Supply West, Inc., a Utah corporation with its principal place of business in North Carolina. Defendant, therefore, is not a resident or citizen of the state of Texas for diversity purposes.

4.     This Notice of Removal is timely filed because it precedes the expiration of 30 days following service of Plaintiff's Original Petition on Defendant.

5.     Removal to this Court is proper under 28 U.S.C. § 1441(a) because the United States District Court for the Eastern District of Texas, Beaumont Division, embraces Jefferson County, Texas, where the State Court Action is pending.

6.     The information required by Local Rule CV-81(c)(1), (3)-(5) is attached as Exhibit 3. The information required by Local Rule CV-81(c)(2) is attached as Exhibits 1 and 2. In this regard, a copy of Plaintiff's Original Petition is attached as Exhibit 1. A certified copy of the state court docket sheet is attached as Exhibit 2.

7.     Pursuant to 28 U.S.C. § 1446(d), the Defendant will promptly file a copy of this Notice of Removal with the clerk of the state court where the action has been pending.

WHEREFORE, Defendant requests that this Court assume jurisdiction of this action and make such further orders as may be required to properly determine this controversy.

DEFENDANT'S NOTICE OF REMOVAL - PAGE 2

Respectfully submitted,

**HUNTON & WILLIAMS LLP**

By: _____
W. Stephen Cockerham
State Bar No. 04463300
Bridget A. Blinn
State Bar No. 24045510

Energy Plaza, 30th Floor
1601 Bryan Street
Dallas, Texas  75201
214.979.3000
214.880.0011 Fax

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and exact copy of the foregoing Notice of Removal via certified mail, return receipt requested, this 19th day of December, 2005, addressed as follows:

Bruce M. Partain
WELLS, PEYTON, GREENBERG & HUNT, LLP
550 Fannin, Sixth Floor, Century Tower
Beaumont, Texas 77704-3708

_____
Bridget A. Blinn

CAUSE NO. E176210

| | | |
|---|---|---|
| RAY MART, INC. D/B/A TRI-SUPPLY | § | IN THE DISTRICT COURT |
| COMPANY and WELDON VYBIRAL, | § | |
| *Plaintiffs* | § | |
| | § | JEFFERSON COUNTY, TEXAS |
| V. | § | |
| | § | |
| STOCK BUILDING SUPPLY | § | |
| OF TEXAS, L.P. | § | |
| *Defendant* | § | 172 nd JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION FOR
## DECLARATORY JUDGMENT AND DAMAGES

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Plaintiffs, RAY MART, INC., d/b/a TRI-SUPPLY COMPANY ("Tri-Supply") and WELDON VYBIRAL ("Vybiral"), and file their Original Petition for Declaratory Judgment and Damages, complaining of Defendant, STOCK BUILDING SUPPLY OF TEXAS, L.P. (hereinafter, "Stock"), and for cause of action show the following:

I.

### Discovery Control Plan

This case involves a dispute in which discovery is intended to be conducted under Level 2 of Rule 190, Texas Rules of Civil Procedure.

II.

### Parties

Plaintiff, Ray Mart, Inc. d/b/a Tri-Supply Company, a Texas Corporation, is a builder supply company, and has a principal place of business in Beaumont, Jefferson County, Texas.

Plaintiff, Weldon Vybiral, is an individual who resides in Moody, Bell County, Texas.

Defendant, Stock Building Supply of Texas, L.P., is a Delaware limited partnership which is doing business in Texas. As set forth in more detail below, Stock is a builder supply enterprise.



EXHIBIT
1

Pursuant to Rule 108, T.R.C.P., Stock may be served with a citation and a copy of this pleading by serving Mr. Fenton N. Ford, its Chief Executive Officer and President, or Bryan Yeazel at Stock's place of business or its registered agent, CT Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

III.

### Venue and Jurisdiction

Venue is proper in Jefferson County, Texas because this lawsuit arises from facts and events occurring in Beaumont, Jefferson County, Texas. Stock has interjected itself into the stream of commerce in Beaumont, Jefferson County, Texas. Stock is transacting business in Texas and this court has personal jurisdiction over said Defendant.

IV.

### Factual Background

a. Tri-Supply, a builder supply company, operates door mills and pre-hanging shops at different locations in Texas. Doors are assembled and sold to residential and commercial builders and the public. Tri-Supply operates a door mill and pre-hanging shop in Temple, Texas. The Tri-Supply location in Temple, Texas does not sell framing lumber or operate as a lumberyard.

b. Stock is a subsidiary of Stock Building Supply Holdings, Inc., which is a large publicly traded builder's supply enterprise. Stock has several locations in Texas. In Temple, Texas, Stock operates a lumberyard, which includes a door mill and pre-hanging shop.

c. Vybiral has been in the door milling and door assembly business in excess of thirty (30) years. He has extensive experience in supervising the operations of a door mill. Prior to January 13, 2003, and for the preceding thirteen (13) years, Vybiral was employed by JELD-WEN, Inc. as the general manager of JELD-WEN, Inc.'s Temple, Texas door mill operations.

-2-

DEC-14-2005  15:45     PEYTON                                           409 P.07

d.      On or about January 13, 2003, Stock purchased JELD-WEN, Inc., which included

JELD-WEN, Inc.'s Temple, Texas location where Vybiral was employed.

e.      After the purchase, Vybiral became employed by Stock.  As a requirement for his

employment by Stock, Vybiral signed an Employment Agreement dated January 13, 2003.  Stock's

Employment Agreement contains a Covenant Against Competition.  Attached hereto as *Exhibit A*

is a copy of Vybiral's Employment Agreement.

f.      At the time Vybiral signed the Employment Agreement, he was told that his work

duties and conditions would remain the same as they had been with JELD-WEN, Inc. This statement

and others by Stock proved to be false.  Stock changed Vybiral's work duties, and made changes

regarding the operations of the Temple, Texas location.  For example, Vybiral was assigned duties

by Stock for operations in Austin and San Antonio.  Stock also micro-managed the Temple, Texas

operations and Vybiral's duties. Although sales increased at this location, Stock allocated costs from

a centralized purchasing structure. When these costs were assessed, the amount of Vybiral's bonuses

for 2004 and 2005 were substantially reduced.  In addition to creating more stress for Vybiral, Stock

failed to compensate Vybiral.  Therefore, Vybiral's bonuses for 2004 and 2005 were substantially

reduced from the amounts Vybiral received from JELD-WEN, Inc. based on the profitability of the

Temple location.

g.      On November 30, 2005, Vybiral advised Stock that he was resigning and gave his

two-week notice.  On December 1, 2005, Stock advised Vybiral that his services were no longer

needed and effective that date, his employment by Stock was terminated.  After the termination of

his employment, Vybiral was advised in a letter dated December 9, 2005 from Stock's attorney, that

Vybiral had engaged in conduct which violated certain covenants in the Employment Contract.

-3-

Stock, through its counsel, threatened litigation in the event Vybiral did not respond to Stock's attorney's letter.

      h.    In a letter received by Tri-Supply on December 12, 2005, Stock, through its attorney, advised Tri-Supply of Mr. Vybiral's Employment Agreement with Stock. Attached hereto and incorporated herein as *Exhibit B* is a copy of Stock's attorney's December 9, 2005 letter to Tri-Supply. As set forth in *Exhibit B*, Stock requested certain written assurances from Tri-Supply regarding any affiliation of Vybiral with Tri-Supply.

      i.    As of the date of the filing of this Original Petition, Vybiral is not employed by or affiliated with Tri-Supply. Vybiral is not soliciting Stock customers on behalf of Tri-Supply. Vybiral is not soliciting Stock employees to quit their employment with Stock and/or come work for Tri-Supply. Vybiral is not using Stock's trade secret information in performing work for or act on behalf of Tri-Supply.

      j.    Tri-Supply and Vybiral seek a declaratory judgment, which establishes Vybiral's rights and obligations, if any, to Stock under the Employment Agreement. As set forth herein, the Employment Agreement is unenforceable as a matter of law. Alternatively, the Covenant Against Competition and the other restrictions in the Employment Agreement are unreasonable, overly broad, and impose a greater burden upon Vybiral than is necessary to protect the business interests or good will of Stock. Stock has violated the Employment Agreement and as a result of said breach, Stock is precluded from seeking injunctive relief and the enforcement of the Covenant Against Competition.

V.

## Cause of Action for Declaratory Judgment

Tri-Supply and Vybiral hereby file suit against Stock pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code, also known as the Texas Declaratory Judgment Act. Tri-Supply and Vybiral are suing Stock for a declaratory judgment that Vybiral is not bound by the Covenant Against Competition contained in an Employment Agreement between Vybiral and Stock. The Covenant Against Competition contained in the Employment Agreement is void and unenforceable as a matter of law; therefore, Tri-Supply and Vybiral are entitled to a declaratory judgment that Vybiral is not bound by the unenforceable Covenant Against Competition.

VI.

The Covenant Against Competition contained in the Employment Agreement between Vybiral and Stock restricts Vybiral for a two (2) year period, after the termination of his employment, for whatever reason, from engaging in any business that the Employer (Stock) conducts or enters into during the term of Vybiral's employment within a 100 mile radius of Employer's Temple, Texas branch.

VII.

Tri-Supply and Vybiral are entitled to a declaratory judgment that the Covenant Against Competition contained in the Employment Agreement between Vybiral and Stock is unenforceable as a matter of law because the Covenant Against Competition is not ancillary to an otherwise enforceable agreement. The Employment Agreement between Vybiral and Stock is an at-will employment relationship because it can be terminated by either party without cause. The promises contained in the Employment Agreement are all illusory promises that cannot support the Covenant

Against Competition. Because all of these promises for consideration are dependant upon continued employment of Vybiral, and because this is an at-will employment relationship, all of the alleged considerations based on Vybiral's continued employment are illusory promises. Illusory promises contained in an at-will Employment Agreement will not support a covenant not to compete (against competition) because the covenant would not be ancillary to an otherwise enforceable agreement. See *Light v. Centel Cellular Company of Texas*, 883 S.W.2d 642, 644 (Tex. 1994); See *Strickland v. Medtronic, Inc.*, 97 S.W.3d 835, 839 (Tex. App.–Dallas 2003, *pet denied*).

VIII.

In the alternative, even if the consideration by Stock is not illusory promises, the claimed assertions of consideration by Stock is not ancillary to an otherwise enforceable agreement. Pursuant to Section 15.50 of the Texas Business and Commerce Code, in order to be ancillary to an otherwise enforceable agreement, the consideration given by the employer in an otherwise enforceable agreement must give rise to the employer's interest in restraining the employee from competing and the covenant must be designed to enforce the employee's consideration for agreeing to be restrained. *Tex. Bus. & Comm. Code* §15.50. The claimed considerations by Stock do not give rise to Stock's interest in restraining the employee from competing, and the Covenant is not designed to enforce Vybiral's consideration for the same promises. Furthermore, these promises are illusory, as this is an at-will employment relationship.

IX.

Tri-Supply and Vybiral also assert that the Covenant Against Competition in the Employment Agreement is unenforceable as a matter of law because it is an unreasonable restraint of trade. The Covenant Not to Compete is unreasonable with respect to the scope of the restrictions, the time

-6-

restrictions, and geographic restrictions. A Covenant Not to Compete that is an unreasonable restraint of trade is unenforceable, as a matter of law, pursuant to Section 15.50 of the *Texas Business and Commerce Code*. Furthermore, the Covenant Not to Compete is unenforceable because it attempts to restrict Vybiral from supporting his family without advising Vybiral of the specific prohibited conduct which he must avoid.

## X.

Pursuant to Section 37.009 et seq. of the *Texas Declaratory Judgment Act*, Tri-Supply and Vybiral hereby sue Stock for their reasonable and necessary attorneys' fees in the prosecution of this declaratory judgment action. Tri-Supply and Vybiral were forced to file this declaratory judgment action because Tri-Supply and Vybiral believe that a lawsuit was imminent, as Stock recently threatened a lawsuit against Vybiral and Tri-Supply. This Court should award reasonable and necessary attorneys' fees to Tri-Supply and Vybiral in this action and any appeal because the prosecution of this declaratory judgment became necessary based on Stock's actions in trying to enforce an unenforceable covenant not to compete, and by threatening legal action against Tri-Supply and Vybiral.

## XI.

### Cause of Action for Breach of Employment Agreement

Vybiral re-pleads the allegations set forth in the factual background paragraphs set forth above. Stock failed to pay Vybiral the bonuses due him under the Employment Agreement. As a result of Stock's breach of the Employment Agreement, Vybiral has sustained monetary damages which greatly exceed the jurisdictional limits of this court. Vybiral requests judgment against Stock for his monetary damages exceeding the minimum jurisdictional limits of this court.

-7-

## XII.

### Plaintiffs' Request for Disclosure

Pursuant to Rule 194.1, *Texas Rules of Civil Procedure*, Tri-Supply and Vybiral request Stock to disclose the information and materials required by this rule and listed in Rule 194.2, *T.R.C.P.* Stock's responses to Plaintiffs' Request for Disclosure are due on the fiftieth (50th)day following service of process and this request. See *T.R.C.P.*, Rule 194.3(a).

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, Ray-Mart, Inc. d/b/a Tri-Supply Company and Weldon Vybiral pray that Defendant, Stock Building Supply of Texas, L.P. be cited to appear and answer, and that on a final trial on the merits, that Court enter a Declaratory Judgment that Vybiral is not bound by the Covenant Against Competition contained in the Employment Agreement between Vybiral and Stock because the Covenant Against Competition is unenforceable and void as a matter of law; that Vybiral be awarded a monetary judgment against Stock as requested herein; and that Tri-Supply and Vybiral be awarded reasonable and necessary attorney's fees in the trial court and by appeal; costs of court; interest as permitted by Texas law; and that Tri-Supply and Vybiral be granted such other and further relief, either at law or in equity, to which they may be justly entitled to receive.

Respectfully submitted,

WELLS, PEYTON, GREENBERG
&amp; HUNT, L.L.P.

By _____

Bruce M. Partain
Texas State Bar No. 15548400
Gary J. Linthicum
Texas State Bar No. 00794174
P. O. Box 3708
Beaumont, Texas 77704
(409)838-2644
Fax: (409)838-0416

ATTORNEYS FOR PLAINTIFFS,
TRI-SUPPLY COMPANY, INC.
and WELDON VYBIRAL

## EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT, dated as of the _13_ day of January, 2003 by and between STOCK BUILDING SUPPLY OF TEXAS, L.P., a Delaware limited partnership (the Employer), and Weldon Vybiral (the Employee) provides:

1.  Employment and Term. The Employer agrees to employ the Employee for a period of three years commencing on the date hereof and the Employee agrees to be employed by the Employer for such period.

2.  Duties. The Employee agrees to devote his full time and efforts to the performance of his duties as an employee of the Employer and to perform all such duties as may be reasonably assigned to him from time to time by the board of directors and authorized officers of the Employer. The Employee further agrees that he will strictly obey all written rules, procedures and standards of conduct adopted from time to time by the Employer or by Wolseley plc.

3.  Compensation. The Employer agrees to pay the Employee for his services hereunder from the date hereof the compensation set out in Schedule A attached hereto.

4.  Benefits and Perquisites. The Employee shall be entitled to participate in such standard benefit and vacation programs as the Employer may in its discretion make available to its employees generally from time to time. In particular, the Employee shall be entitled to the benefits and perquisites, if any, listed on Schedule A attached hereto.

5.  Termination. The Employer shall be entitled to terminate the Employee's employment hereunder during the term of this Employment Agreement for "good cause" (as

EXHIBIT

A

hereinafter defined) by giving written notice thereof to the Employee. For purposes of this Employment Agreement, "good cause" shall mean (i) willful breach by the Employee of this Agreement; (ii) failure by the Employee to perform his duties hereunder in a reasonably satisfactory manner; (iii) misappropriation by the Employee of any funds or property of the Employer; or (iv) conduct on the part of the Employee, even if not in connection with the performance of his business duties, which would, in the Employer's reasonable discretion result in prejudice to the interest of the Employer if he were retained as an employee. In the event of the Employee's voluntary resignation or a termination of the Employee's employment hereunder for good cause during the term of this Employment Agreement, the Employee shall be entitled to receive only the compensation payable to him on a pro rata basis to the date of termination, including accrued vacation time.

      6.    <u>Mitigation of Damages</u>. If the Employee's employment hereunder is terminated by the Employer otherwise than for good cause, the Employee will be obligated to seek and to accept other appropriate employment (subject to the restrictions in this Agreement), and any compensation received will be a credit against the compensation provided for in this Agreement. The Employee agrees to notify the Employer promptly of any new employment and of any compensation received.

      7.    <u>Covenant Against Competition</u>.

        (a)    In consideration of Employer's execution of this Employment Agreement and his employment and compensation hereunder, the Employee hereby agrees that during the term of his employment hereunder and for a period of two years from and after the termination of his employment hereunder he shall not, directly or indirectly, in any manner, as a sole

-2-

proprietor, partner, officer, director, stockholder, advisor or employee, engage in any business that the Employer currently conducts or enters into during the term of the Employee's employment hereunder, within a 100 mile radius of the Employer's Temple, Texas branch (the Branch).

(b)    In consideration of certain direct and indirect benefits the Employee will receive from a distribution of a certain employee stock ownership plan (ESOP) in connection with the transactions contemplated by the Agreement for the Purchase and Sale of Assets dated as of the date hereof (the Agreement) between the Employer and JELD-WEN, inc. (JELD-WEN) providing for the acquisition by Employer of JELD-WEN's distribution business operated from various locations in Texas under the trade names WENCO Distributors of Texas and Walker Lumber Company (the Division), the Employee agrees that for a period of three years from and after the date hereof he shall not, directly or indirectly, in any manner, as a sole proprietor, lender, partner, officer, director, participant, member, advisor, manager, trustee, employee or otherwise, engage in any business in which the Division has been engaged during the two year period prior to the date hereof or in any business which is competitive with any business now conducted by the Division anywhere in the State of Texas or anywhere outside the State of Texas that is within a 100-mile radius of the Branch.

8.    Covenants Against Solicitation of Customers and Employees.

(a)    The Employee agrees that during the term of his employment hereunder and for a period of two years from and after the termination of his employment hereunder he shall not, other than on behalf of the Employer, solicit the customers of the Employer or

-3-

interfere, either directly or indirectly, in any manner, with any relationship between the Employer and any of its customers.

(b)     The Employee further agrees that during the term of his employment hereunder and for a period of two years from and after the termination of his employment hereunder he shall not solicit the employees of the Employer or interfere, either directly or indirectly, in any manner, with their employment by the Employer.

9.     Covenant Against Disclosure of Trade Secrets. The Employee agrees that he shall always keep confidential any and all information obtained by him as an employee of the Employer regarding any trade secrets or conditions and methods of operation of the Employer which are not generally known throughout the industry.

10.     Enforceability and Severability.

(a)     If any provision of the foregoing covenants is deemed invalid by a court of competent jurisdiction, the covenant shall be applicable and enforceable for such lesser period of time, within such more limited geographic area and for such lesser activity as such court may then or thereafter determine to be reasonable and proper under the circumstances.

(b)     In the event that any of the foregoing covenants is deemed to be unenforceable, the remainder of such covenants shall not be affected thereby and each provision hereof shall be valid and enforced to the fullest extent permitted by law.

11.     Injunctive Relief. The Employee hereby acknowledges that the damages the Employer would sustain in the event of any violation of the provisions of the foregoing covenants are difficult or impossible to ascertain. Accordingly, the Employee hereby agrees that the Employer shall be entitled, in addition to any other remedy or damages available to it in the

-4-

DEC-14-2005 15:58    4838328417                                                                P.18/21
01/06/2006  19:47    4838328417

event of any such violation, to injunctive relief to restrain such violation by the Employee and

any person or entity acting for or with him.

   12.   Assignment. The Employee hereby acknowledges that inasmuch as this

Employment Agreement is a contract for his personal services, it is not assignable by him. The

Employer may assign this Employment Agreement to its affiliates and successors.

   13.   Governing Law. This Employment Agreement shall be construed and governed

by the laws of the State of Texas.

   WITNESS the following signatures.

                                               STOCK BUILDING SUPPLY OF TEXAS, L.P.

                                         By: _____
                                               Fenton N. Hord
                                               President and CEO


                                         _____
                                               Weldon Vybiral


                                            -5-

## Schedule A

### Compensation and Benefits

| | |
|---|---|
| Base Annual Salary | $75,000 per year (payable in 24-bimonthly installments in accordance with Employer's normal payroll schedule). |
| Annual Bonus | Participation in Employer's annual bonus program, including the Employer's performance program, based upon an annual review and commensurate with the programs made available to the Employer's other Branch Managers. |
| Paid Vacation | Four (4) weeks paid vacation annually, accrued and vesting in Accordance with the Employer's written vacation policy Applicable to the Employer's other Branch Managers. |
| Automobile | Throughout the employment term: a monthly auto allowance or auto will be provided for the Employee's sole and exclusive use. Employee will be reimbursed for fuel and maintenance of automobile for business use. |
| Other Benefits | Immediate vesting and eligibility to participate in the Employer's benefits program made available to the Employer's other Branch Managers, including but not limited to the Employer's 401 (k) plan, investment retirement account plan, life insurance, health insurance and disability insurance. Reimbursement of business travel in accordance with the Employer's reimbursement policies applicable to its Branch Managers. |



HUNTON&
WILLIAMS

RECEIVED
DEC 1 2 2005
BY:

HUNTON & WILLIAMS LLP
ENERGY PLAZA
30TH FLOOR
1601 BRYAN STREET
DALLAS, TEXAS 75201-3402

TEL     214 • 979 • 3000
FAX     214 • 880 • 0011

W. STEPHEN COCKERHAM
DIRECT DIAL  214-979-3005
EMAIL:  scockerham@hunton.com

December 9, 2005

FILE NO:

**Via Overnight Delivery**

Ray Mart, Inc.
Tri-Supply
7410 Eastex Pwy
Beaumont, TX 77726
Attention: President

Bruce Partain
Registered Agent
Ray Mart, Inc.
d/b/a/ Tri Supply of Beaumont
550 Fannin Street 600
Beaumont, Texas 77701

**Via U.S. Mail**

Ray Mart, Inc.
d/b/a/ Tri Supply of Beaumont
P.O. Box 5548
Beaumont, Texas 77726
Attention: President

Re:   Weldon Vybiral

Dear Sir or Madam:

This firm represents Stock Building Supply Holdings, Inc. and its subsidiaries, including Stock Building Supply of Texas, L.P. (collectively, "Stock"). We understand that a former Stock employee, Weldon Vybiral, has gone to work for, or is now acting on behalf of, Ray Mart, Inc. and or Tri-Supply ("Tri-Supply"). I am writing to place Tri-Supply on notice of certain ongoing covenants that Mr. Vybiral owes Stock under his Employment Agreement with Stock and to raise Stock's concerns about Mr. Vybiral's compliance with those covenants.

ATLANTA  AUSTIN  BANGKOK  BRUSSELS  CHARLOTTE  DALLAS  HONG KONG  KNOXVILLE
LONDON  McLEAN  MIAMI  NEW YORK  NORFOLK  RALEIGH  RICHMOND  SINGAPORE  WASHINGTON
www.hunton.com

EXHIBIT
B

DEC-14-2005  15:37                                                           P.21
01/06/2005  14:47     4039925417

# HUNTON & WILLIAMS

Ray Mart, Inc.
Tri-Supply
Bruce Partain
December 9, 2005
Page 2

Mr. Vybiral's Employment Agreement with Stock is attached hereto. It contains various covenants including covenants against competition, against solicitation of customers, against solicitation of employees, and against disclosing trade secrets. Stock has information that leads it to believe that Mr. Vybiral may have violated these covenants by: 1) working for, or acting on behalf of, Tri-Supply; 2) soliciting Stock customers on behalf of Tri-Supply; and 3) soliciting Stock employees to quit their employment with Stock and come work for Tri-Supply. Stock is also investigating whether Mr. Vybiral has taken any of its confidential and/or trade secret information with him.

Stock requests that Tri-Supply investigate and address its concerns immediately. Stock seeks written assurance that Mr. Vybiral is not working for, or acting on behalf of, Tri-Supply. If he is, then Stock seeks an explanation of how Mr. Vybiral could work for, or act on behalf of, Tri-Supply without violating his Employment Agreement. Furthermore, Stock seeks written assurance from Tri-Supply that Mr. Vybiral: 1) is not soliciting Stock customers on behalf of Tri-Supply; 2) is not soliciting Stock employees to quit their employment with Stock and/or come work for Tri-Supply and 3) is not using Stock's trade secret information in performing work for, or act on behalf of, Tri-Supply. Our client also seeks written assurance from Tri-Supply that it has not assisted or knowingly allowed Mr. Vybiral to engage in conduct in violation of his Employment Agreement.

Thank you in advance for your cooperation regarding these important matters. As you realize, time is a critical factor in this regard and a response by Thursday, December 15, 2005 would be appreciated and establish what if any further action on the part of Stock is necessary.

Sincerely,

W. Stephen Cockerham

cc:    Bryan J. Yeazel

# CIVIL DOCKET, DISTRICT COURT

CASE NO E-0176210-

| NUMBER OF CASE | NAMES OF PARTIES | ATTORNEYS | KIND OF ACTION | DATE OF FILING |
|---|---|---|---|---|
| E-0176210- | RAX MART INC<br>VS<br>STOCK BUILDING SUPPLY OF TEXAS LP | PARTAIN, BRUCE MANUEL PLFT<br>NO ATTORNEY AT THIS TIME DEFT | DECLARATORY JUDGMEN | 12/14/2005 |
| | | | DISPOSITION DATE | JURY FEE | DATE |

| DATE OF ORDERS | ORDERS OF THE COURT | | PROCESS |
|---|---|---|---|

EXHIBIT
_2_

I CERTIFY THIS AS A TRUE COPY
Witness my Hand and Seal of Office

DEC 1 5 2005

LOLITA RAMOS, DISTRICT CLERK
JEFFERSON COUNTY, TEXAS
BY _____ DEPUTY

EXHIBIT 3

Local Rule CV-81(c)(1):  A list of all parties in the case, their party type (e.g., plaintiff, defendant, intervenor, receiver, etc.) and current status of the removed case (pending, dismissed):

Plaintiffs:  Ray Mart, Inc. d/b/a Tri-Supply Company and Weldon Vybiral

Defendant:  Stock Building Supply of Texas, L.P.

Status of Case:  Pending

Local Rule CV-81(c)(3):  A complete list of attorneys involved in the action being removed, including each attorney's bar number, address, telephone number and party or parties represented by him/her:

Bruce M. Partain
State Bar No. 15548400
Gary J. Linthicum
State Bar No. 00794174
WELLS, PEYTON, GREENBERT & HUNT, LLP
P.O. Box 3708
Beaumont, Texas 77704
409.838.0416
Attorneys for Plaintiffs

W. Stephen Cockerham
State Bar No. 04463300
Bridget A. Blinn
State Bar No. 24045510
HUNTON & WILLIAMS LLP
1601 Bryan Street, 30th Floor
Dallas, Texas 75201
214.979.3039
Attorneys for Defendant

Local Rule CV-81(c)(4): A record of which parties have requested trial by jury:

None.

Local Rule CV-81(c)(5): The name and address of the court from which this case is removed:

District Court of Jefferson County, Texas, 172nd Judicial District
1001 Pearl Street
Beaumont, TX 77701



48117.005126 DALLAS 178662v1